**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

--------------------------------------------------------------------X

ARCH REAL ESTATE HOLDINGS LLC, ARCH ASSET MANAGEMENT LLC, and ARCH PROPERTY MANAGEMENT LLC,

Plaintiffs,

– against –

YJ SIMCO LLC, 1055 PARK AVE 1 LLC, 1055 PARK AVE PH LLC, 1055 PARK AVE ST LLC, 1055 PARK AVE 4 LLC, 266 WMTR LLC, YAEL SIMPSON, BECKER, GLYNN, MUFFLY, CHASSIN & HOSINSKI, LLP, and JANE DOES #1 – 10,

Defendants.

--------------------------------------------------------------------X

**MOTION SEQ. 002**

**HON. JOEL M. COHEN, J.S.C.**

**Index No.: 653216/2026**

# DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

FKB Furman Kornfeld & Brennan LLP

*Attorneys for Defendant*
Becker, Glynn, Muffly, Chassin & Hosinski, LLP

Wall Street Plaza
88 Pine Street, 32nd Floor, New York, NY 10005
Tel: 212-867-4100 Fax: 212-867-4118
www.fkblaw.com

Rachel Aghassi <raghassi@fkblaw.com>
Benjamin M. Oxenburg <boxenburg@fkblaw.com>

# TABLE OF CONTENTS

Page

**TABLE OF AUTHORITIES** ........ iii

**INTRODUCTION** ........ 1

**PRELIMINARY STATEMENT** ........ 1

**LEGAL STANDARD** ........ 3

**A. CPLR §3211(a)(1)** ........ 3

**B. CPLR §3211(a)(7)** ........ 3

**ARGUMENT** ........ 4

**POINT I:**
**THE DECLARATORY JUDGMENT CLAIM MUST BE DISMISSED BECAUSE PLAINTIFFS DO NOT ALLEGE A JUSTICIABLE CONTROVERSY** ........ 4

**POINT II:**
**PLAINTIFFS' DEBTOR & CREDITOR LAW CLAIMS MUST BE DISMISSED BECAUSE PLAINTIFFS ARE NOT CREDITORS UNDER THE STATUTE** ........ 6

**POINT III:**
**PLAINTIFFS' FOURTH CAUSE OF ACTION FAILS TO STATE A CLAIM UNDER DCL §273(a)(1)** ........ 9

**POINT IV:**
**PLAINTIFFS' CLAIM UNDER DCL §273(a)(1) SEPARATELY FAILS BECAUSE BECKER GLYNN TOOK SECURITY INTERESTS IN GOOD FAITH AND FOR REASONABLY EQUIVALENT VALUE** ........ 12

**A. Good Faith** ........ 12

**B. Reasonably Equivalent Value** ........ 13

**POINT V:**
**PLAINTIFFS' FIFTH AND SIXTH CAUSES OF ACTION FAIL TO STATE A CLAIM BECAUSE NOTHING SUPPORTS THE CONCLUSORY ALLEGATION THAT PARK ST WAS RENDERED INSOLVENT** ........ 14

**POINT VI:**
**PLAINTIFFS ARE NOT ENTITLED TO ATTORNEYS' FEES UNDER DCL §276-a** ........ 16

**CONCLUSION** ....................18

**CERTIFICATION OF COMPLIANCE WITH 22 N.Y.C.R.R. §202.8-b** ....................18

## TABLE OF AUTHORITIES

Page(s)

*269 W. 87th St. Apartment Corp. v. QSB 267 Prop. Co, LLC*,
88 Misc. 3d 1246(A), 253 N.Y.S.3d 542 (N.Y. Sup. 2026) ....................16

*Ackerman v. 305 East 40th Owners Corp.*,
189 A.D.2d 665, 592 N.Y.S.2d 365 (1st Dept. 1993)....................3

*Airball Cap. LLC v. Rosenthal & Rosenthal Inc.*,
73 Misc.3d 1218(A), 155 N.Y.S.3d 61 (N.Y. Sup. 2021) ....................6

*Ashley Builders Corp. v. Town of Brookhaven*,
39 A.D.3d 442, 833 N.Y.S.2d 230 (2d Dept. 2007) ....................5, 6

*Bd. of Managers of the 165 E. 62nd Street Condominium v. Churchill E 62nd LLC*,
No. 656401/2022, 2023 WL 3725042 (N.Y. Sup. Ct. May 25, 2023)....................10

*Beattie v. Brown & Wood*,
243 A.D.2d 395, 663 N.Y.S.2d 19 (1st Dept. 1997)....................4

*Bishop v. Maurer*,
33 A.D.3d 497, 823 N.Y.S.2d 366 (1st Dept. 2006)....................4

*CBO Funding LLC v. Azrak*,
89 Misc.3d 1210(A), 258 N.Y.S.3d 494 (N.Y. Sup. Ct. 2026)....................4, 15, 16

*County of Suffolk v. MHC Greenwood Vil., LLC*,
91 A.D.3d 587, 937 N.Y.S.2d 89 (2d Dept. 2012) ....................4

*Delran v. Prada USA, Corp.*,
23 A.D.3d 308, 804 N.Y.S.2d 243 (1st Dept. 2005)....................4

*Eagle Eye Collection Corp. v. Shariff*,
190 A.D.3d 600, 141 N.Y.S.3d 27 (1st Dept 2021)....................16

*First Keystone Consultants, Inc. v Schlesinger Elec. Contrs., Inc.*,
871 F.Supp.2d 103 (E.D.N.Y. 2012) ....................6

*Friedgood v. Axelrod*,
593 F.Supp. 395 (S.D.N.Y. 1984) ....................13

*Gersh v. Nixon Peabody LLP*,
No. 155668/2016, 2017 WL 748829 (Sup. Ct. N.Y. County Feb. 27, 2017) ....3

*Godfrey v. Spano*,
13 N.Y.3d 358 (2009) ....4

*Goshen v. Mut. Life Ins. Co. of N.Y.*,
98 N.Y.2d 314 (2002) ....3

*Grit Bxng at Home, Inc. v. Sweatworks LLC*,
No. 655267/2024, 2026 WL 780981 (N.Y. Sup. Ct. Mar. 16, 2026) ....9

*In re Endo Int'l PLC*,
No. 22-22549 (DSJ), 2026 WL 1534328 (Bankr. S.D.N.Y. May 29, 2026) ....14

*Kassirer v. Gotlib*,
248 A.D.3d 472, 254 N.Y.S.3d 66 (1st Dept. 2026) ....8

*Lebedev v. Blavatnik*,
193 A.D.3d 175, 142 N.Y.S.3d 511 (1st Dept. 2021) ....8

*M & B Joint Venture, Inc. v. Laurus Master Fund, Ltd.*,
12 N.Y.3d 798 (2009) ....4

*Ostrolenk Faber LLP v. Taub*,
No. 657300/2019, 2021 WL 5850035 (N.Y. Sup. Ct. Dec. 08, 2021) ....12

*Precious Care Mgmt., LLC v. Monsey Care, LLC*,
221 A.D.3d 922, 201 N.Y.S.3d 104 (2d Dept. 2023) ....15

*Ray v. Ray*,
108 A.D.3d 449, 970 N.Y.S.2d 9 (1st Dept. 2013) ....11

*Riback v Margulis,*
43 A.D.3d 1023, 43 A.D.3d 1023 (2d Dept. 2007) ....16

*Rosenberg v. OSG, LLC*,
224 A.D.3d 466, 203 N.Y.S.3d 88 (1st Dept. 2024) ....8

*Rosenfeld v. Brody*,
238 A.D.3d 1084, 236 N.Y.S.3d 191 (2d Dept. 2025) ....17

*RPH Hotels 51st Street Owner, LLC v. Icon Parking Holdings, LLC*,
No. 654030/2021, 2023 WL 3075269 (N.Y. Sup. Ct. Apr. 25, 2023) ....17

*Scott v. Bell Atl. Corp.*,
282 A.D.2d 180, 726 N.Y.S.2d 60 (1st Dept. 2001)....4

*Silber Inv. Props., Ltd. v. BJG Islandia Realty, LLC*,
236 A.D.3d 953, 230 N.Y.S.3d 612 (2d Dept. 2025)....17

*Sillam v. Labaton Sucharow LLP*,
No. 21-cv-6675 (CM), 2022 WL 1036635 (S.D.N.Y. Apr. 5, 2022)....12, 13

*Swartz v. Swartz*,
145 A.D.3d 818, 44 N.Y.S.3d 452 (2d Dept. 2016)....8

*Szypula v. Szypula*,
42 N.Y.3d 620 (2024)....13

*Touro Coll. v. Novus Univ. Corp.*,
146 A.D.3d 679, 45 N.Y.S.3d 458 (1st Dept. 2017)....5

*Unique Logistics Intern. (NYC), LLC v. Steptoe LLP*,
No. 650976/2025, 2026 WL 967793 (N.Y. Sup. Ct. Apr. 08, 2026)....11

*West Houston Property, LLC v. New York Pilates NYC, LLC*,
No. 161131/2020, 2021 WL 5014485 (N.Y. Sup. Ct. Oct. 27, 2021)....10

*White Oak Commercial Finance, LLC v. EIA Inc.*,
No. 650346/2023, 2023 WL 6314634 (N.Y. Sup. Ct. Sep. 27, 2023)....15

*Zorse v. Gitter*,
134 A.D.3d 408, 21 N.Y.S.3d 39 (1st Dept. 2015)....9

**STATUTORY LAWS**

CPLR §3001....5

CPLR §3013....15

CPLR §3016(b)....10, 11, 12, 15

CPLR §3211(a)(1)....3

CPLR §3211(a)(7)....3-4

DCL §273(a)(1)....9, 10, 12

DCL §273(a)(2)....14-15

DCL §274(a) ........ 6, 14, 15

DCL §276-a ........ 16, 17

DCL §277 ........ 12

**OTHER SOURCES**

James Gadsden and Alan Kolod, 2020 Supplementary Practice Commentaries, Debtor Creditor Law § 276-a. ........ 17

## INTRODUCTION

Defendant BECKER, GLYNN, MUFFLY, CHASSIN & HOSINSKI, LLP ("Becker Glynn") respectfully submits this memorandum of law in support of its motion to dismiss all claims asserted against it in the First Amended Complaint ("FAC") with prejudice. This memorandum of law is supported by the Affirmation of Benjamin M. Oxenburg, Esq. ("Oxenburg Aff."), and the exhibits annexed thereto.[1]

## PRELIMINARY STATEMENT[2]

This case represents a transparent attempt to relitigate in state court issues that were fully disclosed to, scrutinized by, and resolved in the bankruptcy court. After Plaintiffs failed to prevent Becker Glynn from being retained as counsel to J. Simpson in his personal bankruptcy proceeding, Plaintiffs now seek to invalidate the security instruments that were disclosed to the bankruptcy court and formed part of the record supporting that retention. Having been unsuccessful in the forum charged with supervising the bankruptcy process, Plaintiffs resort to a state-law fraudulent transfer action to achieve indirectly what they could not achieve directly.

The FAC suffers from a fundamental defect: Plaintiffs have not plausibly alleged that they are creditors of Park ST or YJ Simco at all. Their purported right to payment rests on a strained reading of an operating agreement that neither names nor binds any of the defendants from whom payment is sought, while their alternative unjust enrichment theory is supported only by conclusory allegations devoid of factual substance. Without a cognizable claim to payment, Plaintiffs do not qualify as creditors and may not pursue the Debtor and Creditor Law claims asserted in their pleading.

[1] Citations to "Ex. ____" refer to the exhibits annexed to the Oxenburg. Aff. Citations to "Dkt. ____" refer to the numbered filings on the NYSCEF docket for this action.

[2] For the sake of simplicity, all undefined capitalized terms used herein shall have the same meanings ascribed to them in the FAC.

Even if Plaintiffs could establish creditor status, the challenged transactions are not remotely indicative of fraud. The Mortgage and Guaranty were executed openly, negotiated with the involvement of independent counsel, supported by sworn representations, and created for a single disclosed purpose: securing legal representation for a debtor in a bankruptcy proceeding. Those arrangements were repeatedly disclosed to the bankruptcy court, challenged by interested parties, subjected to judicial scrutiny, and ultimately left undisturbed when the court authorized Becker Glynn's retention. Plaintiffs' conclusory allegations of fraudulent intent cannot overcome the documentary record.

Nor have Plaintiffs plausibly alleged that the Mortgage and Guaranty rendered Park ST insolvent, that Becker Glynn lacked good faith, or that any actual injury has occurred. Becker Glynn has not foreclosed on the Mortgage, enforced the Guaranty, or even sought court approval of fees giving rise to any payment obligation. Indeed, the terms of Becker Glynn's retention plainly provide that they will be compensated from the bankruptcy estate first. Plaintiffs instead ask this Court to adjudicate speculative future harms and ownership disputes affecting absent parties based on allegations that are contradicted by judicial records, sworn declarations, and the bankruptcy court's own proceedings.

Beyond this, the FAC must also be dismissed for additional reasons. *First*, Plaintiffs are not entitled to a declaratory judgment because there is no real and justiciable controversy; their interests in Park ST and YJ Simco are too remote and they have not been prejudiced in any way by the Mortgage and Guaranty. *Second*, the Mortgage and Guaranty's clearly stated purpose of securing representation for J. Simpson in his personal bankruptcy proceeding negates Plaintiffs' claim that the Instruments were made with actual intent to hinder, delay, or defraud any creditor. *Third*, Becker Glynn took the Mortgage and Guaranty in good faith and for reasonably equivalent

value under the circumstances. *Fourth*, Plaintiffs' claim that Park ST was rendered insolvent by the Mortgage and Guaranty is purely conclusory and unsupported by the record. Finally, Plaintiffs are plainly not entitled to attorneys' fees because the DCL's very limited circumstances for awarding such fees do not apply here.

Because the FAC is premised on an inapplicable contract, conjecture, conclusory assertions, and an improper collateral attack on the Instruments already disclosed and examined in bankruptcy court, all claims against Becker Glynn should be dismissed in their entirety.

## LEGAL STANDARD

### A. CPLR §3211(a)(1)

Under CPLR §3211(a), "[parties] may move for judgment dismissing one or more causes of action asserted against [them] on the ground that: 1. a defense is founded upon documentary evidence… ." CPLR §3211(a)(1). A motion under CPLR §3211(a)(1) "may be granted 'only where the documentary evidence utterly refutes [the complaint's] factual allegations, conclusively establishing a defense as a matter of law.'" *Gersh v. Nixon Peabody LLP*, No. 155668/2016, 2017 WL 748829, at *5 (Sup. Ct. N.Y. County Feb. 27, 2017), *quoting Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 326 (2002) (other citations omitted).

### B. CPLR §3211(a)(7)

Pursuant to CPLR §3211(a)(7), a defendant may move to dismiss one or more claims against it for failure to state a cause of action. Upon such a motion, the Court must determine whether the factual allegations "taken together manifest any cause of action cognizable at law." *Ackerman v. 305 East 40th Owners Corp.*, 189 A.D.2d 665, 666 (1st Dept. 1993). However, the Court is not required to accept factual allegations that are plainly contradicted by the documentary evidence or to accept legal conclusions that are unsupportable based upon the undisputed facts.

*See Bishop v. Maurer*, 33 A.D.3d 497, 498 (1st Dept. 2006). In assessing a motion under CPLR §3211(a)(7), affidavits and other evidentiary material may also be considered to establish conclusively that the claimant does not have a cause of action. *See M & B Joint Venture, Inc. v. Laurus Master Fund, Ltd.*, 12 N.Y.3d 798, 800 (2009).

Where it has been shown that a material fact as alleged by the pleader is not a fact at all, and no significant dispute exists regarding it, a movant under CPLR §3211(a)(7) will prevail. *See County of Suffolk v. MHC Greenwood Vil., LLC*, 91 A.D.3d 587, 590 (2d Dept. 2012); *Scott v. Bell Atl. Corp.*, 282 A.D.2d 180 (1st Dept. 2001). Moreover, it is proper for the court to grant dismissal where a claim is premised upon allegations that "consist of bare legal conclusions," as well as factual claims either inherently incredible or flatly contradicted by documentary evidence. *Beattie v. Brown & Wood*, 243 A.D.2d 395, 395 (1st Dept. 1997); *see also Godfrey v. Spano*, 13 N.Y.3d 358, 373 (2009) ("[C]onclusory allegations – claims consisting of bare legal conclusions with no factual specificity – are insufficient to survive a motion to dismiss."); *Delran v. Prada USA, Corp.*, 23 A.D.3d 308 (1st Dept. 2005). Further, where a complaint contains contradictory allegations which negate an essential element of the cause of action asserted, dismissal under CPLR §3211(a)(7) is proper. *See, e.g., CBO Funding LLC v. Azrak*, 89 Misc.3d 1210(A), 258 N.Y.S.3d 494 (N.Y. Sup. Ct. 2026).

## ARGUMENT

### POINT I: THE DECLARATORY JUDGMENT CLAIM MUST BE DISMISSED BECAUSE PLAINTIFFS DO NOT ALLEGE A JUSTICIABLE CONTROVERSY

The Third Cause of Action seeking a declaratory judgment must be dismissed because Plaintiffs have failed to present a real and justiciable controversy which requires this Court to exercise its discretion. As pleaded in the FAC, Plaintiffs' interests as possible creditors of Park ST

are too hypothetical and remote to qualify for a declaratory judgment. More importantly, Plaintiffs have not suffered a concrete injury or been prejudiced in any way by the Mortgage and Guaranty.

CPLR §3001 provides in relevant part that "[t]he supreme court may render a declaratory judgment having the effect of a final judgment as to the rights and other legal relations of the parties to a justiciable controversy whether or not further relief is or could be claimed." To qualify as a justiciable controversy, the plaintiff must "have an interest sufficient to constitute standing to maintain the action but also [ ] the controversy [must] involve present, rather than hypothetical, contingent or remote, prejudice to plaintiffs." *Touro Coll. v. Novus Univ. Corp.*, 146 A.D.3d 679, 680 (1st Dept. 2017) (internal citation omitted); *see also Ashley Builders Corp. v. Town of Brookhaven*, 39 A.D.3d 442, 443 (2d Dept. 2007) ("The dispute must be real, definite, substantial, and sufficiently matured so as to be ripe for judicial determination.") (internal citation omitted).

First, Plaintiffs are seeking a proposed declaration regarding YJ Simco and Park ST's ownership rights despite Plaintiffs not having an ownership stake in either of those entities. The declaration that Plaintiffs seek simply does not impact any of Plaintiffs' direct rights. Plaintiffs' interest in being a potential creditor of Park ST or YJ Simco – especially where they have failed to plausibly allege any right to payment from them (*see* Point II, *infra*) – is too contingent and remote to represent a justiciable controversy.

Second, Plaintiffs have not suffered any present prejudice from the Mortgage and Guaranty. Becker Glynn has not applied to the bankruptcy court for approval of any fees, foreclosed on the Mortgage, or enforced the Guaranty. The Engagement also specifies that Becker Glynn will first and foremost seek compensation for its services from the bankruptcy estate to the greatest extent permitted by law. Ex. G. If and only if those services are not compensable from the estate will Becker Glynn be compensated from other sources. The Mortgage and Guaranty are

merely security interests which have not actually and concretely harmed Plaintiffs in any way. As such, there is no real, substantial, and sufficiently matured dispute between Plaintiffs and Becker Glynn so as to be ripe for judicial determination. *See Ashley Builders, supra*.

For these reasons, Plaintiffs' Third Cause of Action should be dismissed.

## POINT II: PLAINTIFFS' DEBTOR & CREDITOR LAW CLAIMS MUST BE DISMISSED BECAUSE PLAINTIFFS ARE NOT CREDITORS UNDER THE STATUTE

It is well-settled that "[i]n order for a party to challenge a conveyance as fraudulent pursuant to the NYDCL, the party must be a creditor within the meaning of that statute." *Airball Cap. LLC v. Rosenthal & Rosenthal Inc.*, 73 Misc.3d 1218(A), 155 N.Y.S.3d 61 (N.Y. Sup. 2021) (Reed, J.), *quoting First Keystone Consultants, Inc. v Schlesinger Elec. Contrs., Inc.*, 871 F.Supp.2d 103, 116 (E.D.N.Y. 2012). Under the DCL, a creditor is defined as a person having a "claim," which is "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." DCL §270(c)-(d). Each cause of action Plaintiff asserts under the DCL requires that it be a creditor. *See* DCL §§273(a), 274(a), 276-a. Here, Plaintiffs have not plausibly alleged any enforceable right to payment from either YJ Simco or Park ST and therefore do not qualify as creditors under the DCL.

Plaintiffs allege that their right to payment comes from a single contract, the AREH Operating Agreement. However, the AREH Operating Agreement language relied on by Plaintiffs, on its face, does not create any such right. Plaintiffs claim that under a single subsection of AREH's Operating Agreement, Section 7.1.3(x), each Contract Defendant is an "Affiliate" of AREH required to pay "market rate" for Plaintiff AREH's services, and that the Contract Defendants

breached the Agreement by failing to pay those amounts. FAC, ¶18, ¶63, ¶66. Section 7.1.3(x) of the AREH Operating Agreement provides:

> 7.1.3. Notwithstanding anything to the contrary contained in this Agreement, if Managing Member[3] desires to cause the Company or a Subsidiary to take any of the following decisions or actions (each a "Major Decision"), Managing Member shall provide written notice thereof to the Members with such additional information as the non-Managing Member may reasonably request. Any Major Decision shall be undertaken only with the prior written consent of all Members (and, for the avoidance of doubt, any action or decision that would constitute a Major Decision if made or taken by the Company shall be a Major Decision if made or taken by any Subsidiary), which consent shall be deemed granted by a Member if such Member fails to object to such action within fifteen (15) days of Managing Member's written request therefor:
>
> …
>
> (x) enter into any agreement with Managing Member and/or any Affiliate thereof, on the one hand, and the Company on the other hand; except as provided in Section 7.3 and for transactions where the compensation paid to Managing Member or any such Affiliate shall be at market rates charged by comparable unaffiliated service providers of at least equal qualification and experience in arms-length transactions;

Dkt. 11, p. 19-20.

This language simply does not create a right to payment running from either YJ Simco or Park ST to Plaintiff AREH. For one, neither YJ Simco, Park ST, nor any other Contract Defendant appears anywhere in the text of the AREH Operating Agreement, nor are they signatories to it. The FAC does not allege how or why YJ Simco or Park ST qualify as an Affiliate of AREH under the AREH Operating Agreement.[4] None of the alleged services provided by AREH are described. Adding to Plaintiffs' pleading deficiencies, the FAC also fails to allege why AREH's supposed claim constitutes a "Major Decision" under the Operating Agreement or whether and when the

[3] The AREH Operating Agreement identifies the Managing Member as JJ ARCH LLC, of which J. Simpson was its managing member. The other member of AREH under its Operating Agreement was OAK. Dkt. 11, p. 1, 36

[4] The other two Plaintiffs make no allegations whatsoever concerning their supposed right to payment under the AREH Operating Agreement. As with AREH, Plaintiffs ARCH Asset Management LLC and ARCH Property Management LLC include no allegations indicating how or why they are "Affiliates" of YJ Simco or Park ST.

Managing Member provided the appropriate notice to the AREH Members. More fundamentally, any claim AREH could possibly have under Section 7.1.3(x) is against the Managing Member, rather than YJ Simco, Park ST, or any Contract Defendant.

Further, even if a Contract Defendant somehow does qualify as an Affiliate, which is not conceded, the very text of Section 7.1.3(x) provides that AREH would be entering into a *separate* agreement with an Affiliate. Here, Plaintiff AREH does not allege the existence of any such separate agreement; the FAC only alleges that the Contract Defendants breached the AREH Operating Agreement itself and not any other contract. FAC, ¶63-66. The very first element in a breach of contract cause of action is the existence of a contract (*see e.g., Lebedev v. Blavatnik*, 193 A.D.3d 175, 182 (1st Dept. 2021)), and Plaintiffs have unmistakably failed to plausibly allege the existence of any breached contract which gives them a right to payment from YJ Simco, Park ST, or any other Contract Defendant. Because the AREH Operating Agreement on its face creates no right to payment, and Plaintiffs allege no other contract creating such a right, Plaintiffs have not plausibly alleged that they are creditors under the DCL.

Plaintiffs' alternative theory of a right to payment based on a claim of unjust enrichment (FAC, ¶68-74) also does not work. Pleading an unjust enrichment claim requires a plaintiff to "show that the other party was enriched, at plaintiff's expense, and that it is against equity and good conscience to permit [the other party] to retain what is sought to be recovered." *Kassirer v. Gotlib*, 248 A.D.3d 472, 473 (1st Dept. 2026) (internal citation omitted). An unjust enrichment plaintiff is required to set forth that a defendant "possessed property or assets of the plaintiff." *Swartz v. Swartz*, 145 A.D.3d 818, 829 (2d Dept. 2016). Conclusory allegations are insufficient to state a cause of action for unjust enrichment. *See Rosenberg v. OSG, LLC*, 224 A.D.3d 466, 467

(1st Dept. 2024); *Grit Bxng at Home, Inc. v. Sweatworks LLC*, No. 655267/2024, 2026 WL 780981, at *4 (N.Y. Sup. Ct. Mar. 16, 2026).

Here, the FAC contains no specific, non-conclusory allegations indicating how YJ Simco or Park ST was enriched at Plaintiffs' expense. FAC, ¶69-74. Plaintiffs do not provide any allegations indicating, as to each, the management and/or bookkeeping services provided to YJ Simco or Park ST, what "several expenses" (FAC, ¶72) each incurred in addition to the cost of its services or why it is against equity and good conscience to allow the defendants to retain these supposed benefits. Additionally, Plaintiffs expressly base their claim for unjust enrichment damages on the AREH Operating Agreement. FAC, ¶74. An unjust enrichment claim is a quasi-contract theory of recovery, imposed in the *absence* of an actual agreement between the parties. *See Georgia Malone & Co., Inc. v. Rieder*, 86 A.D.3d 406, 408 (1st Dept. 2011). As such, Plaintiffs cannot establish a right to payment on an unjust enrichment theory under these circumstances. *See, e.g., Zorse v. Gitter*, 134 A.D.3d 408, 409 (1st Dept. 2015) (dismissing unjust enrichment and DCL fraudulent conveyance claims where challenged transaction covered by a written agreement).

Because Plaintiff has failed to plausibly allege a right to payment based on any contract or a theory of unjust enrichment, Plaintiff's Fourth, Fifth, Sixth, and Seventh Causes of Action should be dismissed.

## POINT III: PLAINTIFFS' FOURTH CAUSE OF ACTION FAILS TO STATE A CLAIM UNDER DCL §273(a)(1)

Even if Plaintiffs qualify as creditors, their DCL §273(a)(1) claim still fails because the Mortgage and Guaranty did not hinder, delay, or defraud Plaintiffs in any way.

DCL §273(a)(1) provides that a "transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made

or the obligation was incurred, if the debtor made the transfer or incurred the obligation (1) with actual intent to hinder, delay or defraud any creditor of the debtor" (emphasis supplied). DCL §273(b) contains a set of factors "constituting an inexhaustive list to be considered in determining 'actual intent' under section 273 (a)(1)." *Bd. of Managers of the 165 E. 62nd Street Condominium v. Churchill E 62nd LLC*, No. 656401/2022, 2023 WL 3725042, at *7 (N.Y. Sup. Ct. May 25, 2023). Further, claims brought pursuant to DCL §273(a)(1), including any of the factors in DCL §273(b), must be pleaded with particularity in accordance with CPLR §3016(b).[5] *See Bd. of Managers*, 2023 WL 3725042, at *7; *West Houston Property, LLC v. New York Pilates NYC, LLC*, No. 161131/2020, 2021 WL 5014485, at *3 (N.Y. Sup. Ct. Oct. 27, 2021).

Plaintiffs' Fourth Cause of Action must be dismissed because it is evident that the Mortgage and Guaranty were not created with actual intent to hinder, delay, or defraud any creditor. The purpose of these Instruments is clearly and plainly stated on their face – to secure J. Simpson's promise to pay Becker Glynn legal fees for its representation of him in his personal bankruptcy proceeding. Plaintiffs' pleading expressly acknowledges that the Guaranty and Mortgage's purpose was to guarantee payment of Becker Glynn's legal fees incurred in J. Simpson's bankruptcy but then contradicts itself by including the conclusory allegation that the Instruments were made with intent to hinder, delay, or defraud. FAC, ¶31, ¶41. Park ST was represented by counsel in connection with the Mortgage and Guaranty (Ex. J) and both were fully

[5] §273(b) provides that "[i]n determining actual intent under paragraph one of subdivision (a) of this section, consideration may be given, among other factors, to whether: (1) the transfer or obligation was to an insider; (2) the debtor retained possession or control of the property transferred after the transfer; (3) the transfer or obligation was disclosed or concealed; (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; (5) the transfer was of substantially all the debtor's assets; (6) the debtor absconded; (7) the debtor removed or concealed assets; (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and (11) the debtor transferred the essential assets of the business to a lienor that transferred the assets to an insider of the debtor."

disclosed to the bankruptcy court, which was satisfied that they did not negate Becker Glynn's disinterestedness (Ex. V).

The Mortgage and Guaranty clearly represent an arms-length transaction, made solely for the purpose of ensuring J. Simpson could be represented in his bankruptcy proceeding and his counsel be paid. The Instruments on their face demonstrate the absence of any intent to hinder, delay or defraud Plaintiffs and whatever attenuated and remote alleged interest they claim to have in Park ST. Significantly, the FAC is devoid of any allegation even attempting to challenge (much less with specificity) the expressly disclosed purpose of the Mortgage and Guaranty.

Moreover, the §273(b) factors are either not present or not pleaded with the particularity required by CPLR §3016(b). Specifically, Becker Glynn is not an "insider"; Park ST did not retain possession or control over the Instruments after they were given; the Instruments were fully disclosed and not concealed in any way; Park ST had not been sued or threatened with suit prior to making the Instruments; Park ST did not transfer substantially all of its assets or abscond; Park ST did not remove or conceal assets; Park ST did not incur a substantial debt shortly before or after the Instruments were made; and Park ST's essential assets were not transferred to and from Becker Glynn. And "payment of legal fees to attorneys does not demonstrate circumstances so commonly associated with fraudulent transfers." *Unique Logistics Intern. (NYC), LLC v. Steptoe LLP*, No. 650976/2025, 2026 WL 967793, at *2 (N.Y. Sup. Ct. Apr. 08, 2026), *citing Ray v. Ray*, 108 A.D.3d 449, 451-452 (1st Dept. 2013).

Finally, Plaintiffs' claim that Park ST was rendered insolvent by the Mortgage and Guaranty is conclusory and not pleaded with particularity. FAC, ¶87. The insolvency allegation is based solely on the Simco Trustee's December 2025 estimation – made "upon information and belief" only – that Park ST's assets had a fair market value that was not less than $200,000. FAC,

¶60. §273(b) factors pleaded "upon information and belief" do not satisfy CPLR §3016(b) as a matter of law. *See Ostrolenk Faber LLP v. Taub*, No. 657300/2019, 2021 WL 5850035, at *8 (N.Y. Sup. Ct. Dec. 08, 2021) (claim under former DCL §276 dismissed in part where intent and badges of fraud largely made upon information and belief and source of information not disclosed).

For these reasons, Plaintiffs' Fourth Cause of Action must be dismissed.

## POINT IV: PLAINTIFFS' CLAIM UNDER DCL §273(a)(1) SEPARATELY FAILS BECAUSE BECKER GLYNN TOOK SECURITY INTERESTS IN GOOD FAITH AND FOR REASONABLY EQUIVALENT VALUE

Plaintiffs' claim under DCL §273(a)(1) fails for independent reasons, namely that Becker Glynn is a transferee who took the Mortgage and Guaranty in good faith and for reasonably equivalent value under the circumstances. *See* DCL §277(a) (providing that a "transfer or obligation is not voidable under [DCL §273(a)(1)] against a person that took in good faith and for a reasonably equivalent value given the debtor or against any subsequent transferee or obligee.").

### A. Good Faith

Becker Glynn's good faith in taking the Mortgage and Guaranty is demonstrable. Becker Glynn and Attorney Ostrow reasonably relied on multiple sworn statements supporting Y. Simpson's full ownership claim in Park ST: Y. Simpson's Affidavit, the Lerman Declaration, and J. Simpson's various representations. For instance, Y. Simpson's Affidavit represented that: (i) she was the sole member of Park ST, (ii) had full authority and power to enter into the Guaranty and Mortgage on behalf of Park ST, (iii) no liens, judgments, or security interests had been filed against the Property, (iv) and that no bankruptcy or insolvency proceedings had been instituted against Park ST or Y. Simpson. *See Sillam v. Labaton Sucharow LLP*, No. 21-cv-6675 (CM), 2022 WL 1036635, at *7 (S.D.N.Y. Apr. 5, 2022) (commenting on a declaration made under penalty of perjury that "[a]s a matter of law, it is reasonable to rely on a sworn statement."); Ex. K. Y.

Simpson also acknowledged that Becker Glynn would be materially relying on her representations and agreed to indemnify Becker Glynn for "all loss, cost or damage which it may sustain as a result of any statements in this affidavit being false or fraudulent." *Id.* at p. 2. The Y. Simpson Declaration, made under penalty of perjury to the bankruptcy court, further confirmed that she had been the sole member of Park ST since its formation, which she did not acquire from J. Simpson or any other person. Ex. U. Park ST was also represented by separate counsel with respect to the Mortgage and Guaranty (Ex. J), further demonstrating that the Instruments represented a negotiated arms-length transaction.

Becker Glynn also acted reasonably in relying on its client J. Simpson's representations and sworn declarations that the Contribution Agreements were never effectuated, especially where supported by other sworn statements. *See e.g., Friedgood v. Axelrod*, 593 F.Supp. 395, 398 (S.D.N.Y. 1984); *Sillam*, 2022 WL 1036635, at *7.

## B. Reasonably Equivalent Value

Additionally, the Mortgage and Guaranty also represent reasonably equivalent value given the debtor under the circumstances. Here, the stated purpose of the Mortgage and Guaranty was to further secure Becker Glynn's services in representing J. Simpson in his personal bankruptcy proceeding. The Mortgage and Guaranty were given by Park ST, which various documents and sworn statements confirm is 100% owned by Y. Simpson, the spouse of J. Simpson. A marriage is a recognized "economic partnership" (*Szypula v. Szypula*, 42 N.Y.3d 620, 626 (2024)), and a spouse is entitled to use their own assets to protect the economic interests of their spouse. That is precisely what occurred with Y. Simpson deploying her assets to ensure Becker Glynn could be retained to protect her husband's economic interests. Y. Simpson through Park ST realized an indirect benefit by helping to ensure J. Simpson's legal representation in his bankruptcy case. *See*

*In re Endo Int'l PLC*, No. 22-22549 (DSJ), 2026 WL 1534328, at *7 (Bankr. S.D.N.Y. May 29, 2026) (evaluating the term "reasonably equivalent value" under the Bankruptcy Code and noting that it is "not one of mathematical precision" and that "courts consider both the direct and indirect benefits flowing to the debtor to determine the relative comparability of the consideration exchanged between the transacting parties.").

Given this particular debtor, Park ST, the Mortgage and Guaranty represented reasonably equivalent value under the circumstances. Becker Glynn received security interests further ensuring that it could be compensated only in the event J. Simpson's bankruptcy estate did not have sufficient funds, and Park ST's owner received the benefit of knowing that her husband would be represented by counsel in his bankruptcy proceeding.

For these independent reasons, Plaintiffs' Fourth Cause of Action must be dismissed.

## POINT V: PLAINTIFFS' FIFTH AND SIXTH CAUSES OF ACTION FAIL TO STATE A CLAIM BECAUSE NOTHING SUPPORTS THE CONCLUSORY ALLEGATION THAT PARK ST WAS RENDERED INSOLVENT

Plaintiffs' claims under DCL §273(a)(2) and §274(a) (Fifth and Sixth Causes of Action, respectively) also fail as a matter of law and require dismissal. That is because Plaintiffs do not allege, and the documents demonstrate that they cannot allege, that the Mortgage and Guaranty rendered Park ST insolvent.

Under DCL §273(a)(2):

> (a) A transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
> …
> (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, <u>and</u> the debtor:

> (i) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>
> (ii) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due (emphasis supplied).

DCL §274(a) provides a transfer made or obligation incurred by a debtor will be voidable if the transfer was made "without receiving a reasonably equivalent value in exchange for the transfer… and the debtor was insolvent at the time…or became insolvent as a result of the transfer" (emphasis supplied). DCL §273(a)(2) and DCL §274(a) are commonly known as "constructive" fraudulent conveyance provisions. *See e.g., CBO Funding LLC v. Azrak*, 89 Misc.3d 1210(A), 258 N.Y.S.3d 494 (N.Y. Sup. Ct. 2026).

These provisions "can be distilled into the following legal principal [*sic*]: to state [a] claim under either DCL §273(a)(2) or §274(a), a plaintiff must essentially allege that the transfer was without fair consideration and rendered the debtor insolvent or without the ability to pay its debts." *White Oak Commercial Finance, LLC v. EIA Inc.*, No. 650346/2023, 2023 WL 6314634, at *10 (N.Y. Sup. Ct. Sep. 27, 2023) (emphasis supplied). Although constructive fraudulent conveyance claims under DCL §273(a)(2) or §274(a) are not subject to the heightened pleading requirements of CPLR §3016(b), "they must still satisfy the notice pleading requirements of [CPLR] §3013, and purely conclusory allegations are insufficient to sustain them. *CBO Funding*, 89 Misc.3d 1210(A), at *5, *citing Precious Care Mgmt., LLC v. Monsey Care, LLC*, 221 A.D.3d 922, 924 (2d Dept. 2023).

As previously demonstrated, Park ST received reasonably equivalent value under the circumstances for the Instruments, which alone mandates the dismissal of the Fifth and Sixth Causes of Action. *See* Point IV.B, *supra*.

As a separate basis for dismissal, Plaintiffs allege only in a purely conclusory fashion on the basis of "information and belief" that Park ST was insolvent or became insolvent as a result of the Mortgage and Guaranty. *See* FAC, ¶92 ("that…Park ST were insolvent or rendered insolvent on account of the creation of the Mortgage and Guaranty… ."), ¶97 ("and that YJ Simco and Park ST were insolvent or rendered insolvent on account of the creation of the Mortgage and Guaranty."). Again, Plaintiffs' insolvency allegation is wholly based on the Simco Trustee's December 2025 estimation that "[u]pon information and belief, the current fair market value of [Park ST's asset] is not less than $200,000.00." Ex. E, ¶76; FAC ¶60. Plaintiffs provide no financial data, balance sheet information or any factual support for this once-removed estimation provided solely upon information and belief. *See CBO Funding*, 89 Misc.3d 1210(A), at *5, *citing Eagle Eye Collection Corp. v. Shariff*, 190 A.D.3d 600, 602 (1st Dept 2021); *Riback v Margulis,* 43 A.D.3d 1023 (2d Dept. 2007). That is reason alone for dismissal of Plaintiffs' Fifth and Sixth Causes of Action. *See e.g., 269 W. 87th St. Apartment Corp. v. QSB 267 Prop. Co, LLC*, 88 Misc.3d 1246(A), 253 N.Y.S.3d 542 (N.Y. Sup. 2026) (dismissing constructive fraudulent conveyance claims where relevant allegations were made upon information and belief).

In any event, the Simco Trustee's estimation states that Park ST's asset is worth "not less than" $200,000. In other words, Park ST's fair market value could very well exceed the secured values stated in the Guaranty and Mortgage.

Under these circumstances, the Fifth and Sixth Causes of Action should be dismissed.

## POINT VI: PLAINTIFFS ARE NOT ENTITLED TO ATTORNEYS' FEES UNDER DCL §276-a

By DCL §276-a's plain terms, attorneys' fees are available only in limited circumstances, not one of which is applicable here. The statute provides:

> In an action or special proceeding under this article in which a *judgment creditor who has been awarded by court order* or agreement or has waived attorney's fees available to prevailing parties by the terms of the statute under which the creditor's underlying claim arose, or representative asserting the rights of such judgment creditor, recovers judgment avoiding any transfer or obligation, the justice or surrogate presiding at the trial shall fix the reasonable attorney's fees of the creditor, or creditor representative, incurred in such action or special proceeding under this article as an additional amount required to satisfy the creditor's claim, and the creditor, or creditor representative, shall have judgment therefor against the debtor and, subject to the defenses and protections in section two hundred seventy-seven of this article, against any transferee (or person for whose benefit the transfer was made) against whom relief is ordered, in addition to the other relief granted by the judgment. The fee so fixed shall be without regard, or prejudice, to any agreement, express or implied, between the creditor, or the creditor representative, and his or her attorney with respect to the compensation of such attorney.

DCL §276-a (emphasis added).

Legal fees are thus only available to a *judgment* creditor who recovers judgment avoiding a transfer "(i) where the underlying claim was based on a statute that provided for an award of attorney's fees to the prevailing party and (ii) such party has waived attorney's fees or been awarded them by court order or agreement." *RPH Hotels 51st Street Owner, LLC v. Icon Parking Holdings, LLC*, No. 654030/2021, 2023 WL 3075269, at *7 (N.Y. Sup. Ct. Apr. 25, 2023), *quoting* James Gadsden and Alan Kolod, 2020 Supplementary Practice Commentaries, Debtor Creditor Law § 276-a. Plaintiffs are not judgment creditors and do not cite to a statute that provides for an award of legal fees. FAC, ¶98-99.

Moreover, DCL §276–a does not set forth an independent cause of action, and claims asserted pursuant to it must be dismissed when other DCL claims have been dismissed. *See Rosenfeld v. Brody*, 238 A.D.3d 1084, 1087 (2d Dept. 2025); *Silber Inv. Props., Ltd. v. BJG Islandia Realty, LLC*, 236 A.D.3d 953, 957 (2d Dept. 2025).

Because Plaintiffs fail to state a claim under the plain text of the statute and because their other DCL claims are fatally defective, the Seventh Cause of Action must be dismissed.

## CONCLUSION

For the foregoing reasons, Defendant BECKER, GLYNN, MUFFLY, CHASSIN & HOSINSKI, LLP respectfully requests that the Court grant its motion to dismiss the First Amended Complaint in its entirety, with prejudice, together with such other and further relief as this Court deems just and proper.

Dated: September 8, 2026
New York, New York

Respectfully Submitted,
**FURMAN KORNFELD & BRENNAN LLP**

By: /s/ *Benjamin M. Oxenburg*

Rachel Aghassi
Benjamin M. Oxenburg
*Attorneys for Defendant*
Becker, Glynn, Muffly, Chassin & Hosinski, LLP
Wall Street Plaza
88 Pine Street, 32nd Floor
New York, New York 10005
Tel.: (212) 867-4100
Fax: (212) 867-4118
Email: <raghassi@fkblaw.com>
<boxenburg@fkblaw.com>

## CERTIFICATION OF COMPLIANCE WITH 22 N.Y.C.R.R. §202.8-b

I certify that this Memorandum of Law in Support Defendant's Motion to Dismiss complies with 22 N.Y.C.R.R. §202.8-b. This Memorandum contains, exclusive of the caption, table of contents, table of authorities, and signature block, **5,636** words as calculated by Microsoft Word.

Dated: September 8, 2026
New York, New York

Respectfully Submitted,

**FURMAN KORNFELD & BRENNAN LLP**

By: /s/ *Benjamin M. Oxenburg*
Benjamin M. Oxenburg