OLSHAN

1325 AVENUE OF THE AMERICAS ▪ NEW YORK, NEW YORK 10019
TELEPHONE: 212.451.2300 ▪ FACSIMILE: 212.451.2222

EMAIL: JKOEVARY@OLSHANLAW.COM
DIRECT DIAL: 212.451.2265

September 28, 2026

**VIA ECF**

Honorable Lisa G. Beckerman
United States Bankruptcy Judge
United States Bankruptcy Court for the Southern District of New York
One Bowling Green
New York, New York 10004

**Re:** ***Simpson v. Arch Real Estate Holdings LLC, et al.*****, Adv. Pro. No. 26-01097 (LGB): Arch Entities' Letter in Opposition to Temporary Restraining Order**

Dear Judge Beckerman:

Olshan Frome Wolosky LLP represents defendants Arch Real Estate Holdings LLC ("AREH"), Arch Asset Management LLC, and Arch Property Management LLC (collectively, the "Arch Entities"), which are the plaintiffs in *Arch Real Estate Holdings LLC, et al. v. YJ Simco LLC, et al*., Index No. 653216/2026 (Sup. Ct. N.Y. Cty.) (the "State Court Action"). We write in opposition to the request of Jeffrey Solomon Simpson (the "Debtor"), through his chapter 11 counsel Becker, Glynn, Muffly, Chassin & Hosinski LLP ("Becker Glynn"), for a temporary restraining order enjoining the Arch Entities from prosecuting the State Court Action, in connection with Plaintiff's Motion for a Preliminary Injunction [Adv. ECF No. 2] (the "Motion"), filed on Friday, September 25, 2026, together with the Complaint [Adv. ECF No. 1] (the "Complaint").[1]

Given the timing, this letter addresses a single, dispositive issue for purposes of interim relief: the Debtor has not shown, and cannot show, imminent irreparable harm to the estate. The Arch Entities reserve all rights with respect to this and every other issue raised by the Motion, which they will address in opposition to the preliminary injunction on an appropriate schedule.

## The Governing Standard

Federal Rule of Bankruptcy Procedure 7065 incorporates Federal Rule of Civil Procedure 65 in adversary proceedings. *In re AMR Corp*., 502 B.R. 23, 32 (Bankr. S.D.N.Y. 2013). Under that standard, emergency injunctive relief[2] is an "extraordinary and drastic remedy" available only upon a "clear showing" that the movant has "carrie[d] the burden of persuasion." *Id*. (internal quotation marks omitted); *see also In re Wolf Fin. Grp., Inc.,* No. 94-8884A, 1994 WL 913278, at

[1] The Arch Entities do not consent to entry of final orders or judgment by the Bankruptcy Court.
[2] "It is well established that the standard for an entry of a temporary restraining order is the same as for a preliminary injunction." *AFA Dispensing Grp. B.V. v. Anheuser-Busch, Inc*., 740 F. Supp. 2d 465, 471 (S.D.N.Y. 2010).

*3 (Bankr. S.D.N.Y. Dec. 15, 1994) ("Movant must establish a clear and unequivocal right" to emergency injunctive relief).

The Debtor concedes that emergency injunctive relief is available only upon a showing of "imminent irreparable harm to the estate in the absence of an injunction." Motion ¶ 51; *see In re Roman Cath. Diocese of Rockville Ctr., New York*, 651 B.R. 622, 654 (Bankr. S.D.N.Y. 2023). Irreparable harm is "the most important prerequisite for injunctive relief." *In re: AMR Corp.*, 502 B.R. at 33. The asserted harm must be actual and imminent, not remote or speculative, and the movant must make a specific and concrete showing that such harm will occur absent an injunction. *Daileader v. Certain Underwriters at Lloyd's London - Syndicate 1861*, 670 F. Supp. 3d 12, 35 (S.D.N.Y. 2023), *aff'd sub nom. Daileader v. Certain Underwriters at Lloyds London Syndicate 1861*, No. 23-690-CV, 2023 WL 7648381 (2d Cir. Nov. 15, 2023), and *aff'd sub nom. Daileader v. Certain Underwriters at Lloyds London Syndicate 1861*, 96 F.4th 351 (2d Cir. 2024). Despite acknowledging that irreparable harm is a prerequisite to the extraordinary relief he seeks, Debtor devotes only a single sentence of his memorandum to the issue. Motion ¶ 53.

And because the Debtor asks this Court to halt litigation against non-debtors, he must also overcome the rule that such relief is reserved for circumstances in which the non-debtor litigation will have "an immediate adverse economic consequence for the debtor's estate." *Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282, 287 (2d Cir. 2003) (cited at Motion ¶ 43).

The Debtor cannot meet his burden for at least eight reasons.

**1. There Is No Emergency.**

First, there is no emergency because the defendants have chosen not to defend the lawsuit and have defaulted. There is no irreparable harm. They can appear and seek relief in state court. They have chosen not to do so.

Second, nothing will happen in the State Court Action before this Court can consider the Motion on a regular schedule. The defaults of the non-Becker Glynn defendants have already occurred. The Arch Entities' motion for a default judgment is not returnable until October 6, 2026—a date Becker Glynn itself negotiated by stipulation, twice. Motion ¶ 41. If Becker Glynn needs more time, it can ask the state court for it.

Moreover, even if the state court grants the default motion on October 6, no enforceable money judgment will follow for some time. The damages sought—a "market rate" management fee and, alternatively, unjust enrichment (Complaint ¶ 34 (quoting FAC ¶ 18))—are not a "sum certain," and therefore cannot be entered by the clerk; they require an application to the court and, in all likelihood, an inquest. See N.Y. C.P.L.R. 3215(a); *Reynolds Sec., Inc. v. Underwriters Bank & Tr. Co.*, 44 N.Y.2d 568, 572 (1978). A defaulting defendant admits liability but not damages, *see Rokina Optical Co. v. Camera King, Inc.*, 63 N.Y.2d 728, 730 (1984), and the state court must still satisfy itself that the complaint states a viable cause of action before granting a default. *See Woodson v. Mendon Leasing Corp.*, 100 N.Y.2d 62, 71 (2003). The defaulting defendants also retain their remedies under New York law, including a motion to extend their time to appear upon a reasonable excuse, N.Y. C.P.L.R. 3012(d), and a motion to vacate any default judgment for

excusable default, N.Y. C.P.L.R. 5015(a)(1). The prospect of a judgment months from now, subject to further proceedings and to vacatur, is neither "actual" nor "imminent." *See Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009).

**2. Any Urgency Is of the Debtor's Own Making.**

The Arch Entities commenced the State Court Action on June 1, 2026 and filed the First Amended Complaint on June 5, 2026. Complaint ¶ 33. At the very latest, the non-Becker Glynn defendants' time to respond expired on July 9, 2026. The default motion was filed nearly two months after that date on September 3, 2026. Motion ¶ 40. The Debtor waited nearly four months after the State Court Action was filed, and more than three weeks after the default motion was filed, to seek emergency relief. Such delay "undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury." *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 277 (2d Cir. 1985) (internal quotation marks omitted). "Any harm they may now face is a result of their own dilatory conduct." *In re BGI, Inc.*, 504 B.R. 754, 767 (S.D.N.Y. 2014) (internal alteration and quotation marks omitted) (denying stay pending appeal where no irreparable harm).

Nor can the defaults themselves supply the emergency. The defaulting defendants could simply have answered. Yael Simpson, for example, was free to appear and answer on her own behalf at no cost. See N.Y. C.P.L.R. 321(a). The Debtor's assertion that the entity defendants lacked funds to retain counsel (Complaint ¶ 39) is an explanation for the default to be presented, if at all, to the state court and not a harm to this estate.

**3. A Money Judgment or a Declaratory Judgment Against Non-Debtors Is Not Irreparable Harm.**

The proposed default judgment would (i) impose a money judgment of $550,000 on the "Contract Defendants," which constitute YJ Simco LLC ("YJ Simco") and 1055 Park Ave ST LLC ("Park ST"); 1055 Park Ave 4 LLC ("Park 4"), 1055 Park Ave PH LLC ("Park PH"), 1055 Park Ave 1 LLC ("Park 1"), and 266 WMTR LLC ("WMTR") and (ii) grant declaratory relief concerning the ownership of Park ST and of Park 4 and the transfers of those interests to Yael Simpson. Motion ¶ 42. None of those defendants is the Debtor. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm. *Sampson v. Murray*, 415 U.S. 61, 90 (1974). A money judgment against a non-debtor is the paradigm of compensable harm, and a declaratory judgment against non-debtors concerning non-debtor property—remediable in the ordinary course of state-court practice and appeal—is no different.

**4. The Relevant Harm Must Be to the Estate, and the Debtor Is Not a Party to the State Court Action.**

As a general matter, the Debtor risks no harm because under New York law, an issue resolved by default is not "actually litigated" and carries no issue-preclusive effect on other parties.

*See Kaufman v. Eli Lilly & Co.*, 65 N.Y.2d 449, 456–57 (1985). The remaining harms the Debtor identifies are personal, not estate harms: that litigation against his wife has affected his "ability and desire to devote his energy to his reorganization efforts" and his ability "to support and protect his wife and his family." Complaint ¶¶ 45–46. The Debtor is not being asked to do anything in the State Court Action—no discovery has been sought from him and a default proceeding requires nothing of him. As to Yael Simpson, she is an independent non-debtor defendant whom AREH is entitled to sue, and the Debtor's personal stress or distraction associated with that litigation cannot justify enjoining claims against her. *See In re Roman Cath. Diocese of Rockville Ctr., New York*, 651 B.R. at 662-64.

**5. The Debtor Cannot Show an Identity of Interest Under *Queenie*.**

The Motion claims the underlying action "puts the Debtor at risk of losing the value of his direct and indirect equity interests in the estate." Motion ¶ 49. However, this threadbare allegation does not meet the *Queenie* standard of "an immediate adverse economic consequence for the debtor's estate." *Queenie, Ltd.*, 321 F.3d at 287. The Debtor cannot even make a prima facie case.

The default judgment motion seeks money damages against the Contract Defendants, which again are YJ Simco, Park ST, Park PH, Park 1, Park 4, & WTMR. The Debtor claims a fifty percent interest in YJ Simco and in WMTR (although the Arch Entities' position is YJ Simco owns WMTR). The Debtor's schedules and subsequent testimony in connection with Becker Glynn's retention disclaims any interest in Park ST and Park 4. Indeed, the Debtor obtained approval of Becker Glynn's retention on the representation—supported by Yael Simpson's sworn declaration—that Park ST is "a limited liability company owned by [the Debtor's] wife, Yael Simpson," of which she is the "sole member." Complaint ¶¶ 22, 25–26.

As set forth by Mr. Ostrow in his declaration on reply to the objections to Becker Glynn's retention application:

> The disputed ownership of [Park ST] does not change the fact that [Park ST] is the entity that signed the guaranty owns the unit on which the mortgage was granted. The mortgage was not on the membership interests of the entity. The entity itself is not in bankruptcy. No one has contended that I or my firm represents the entity or any owner of the entity or that I or my firm owes any duty to the entity or to any owner of the entity.

*Reply Declaration of Alec P. Ostrow in Further Support of Application of Debtor and Debtor in Possession to Retain Becker, Glynn, Muffly, Chassin & Hosinski LLP as Counsel to Debtor and Debtor in Possession as of the Date of the Petition* dated April 3, 2026 [ECF No. 41] (the "Ostrow Reply Decl.") ¶ 11.

Having told this Court that he holds no interest in entities claimed to be held by Yael Simpson through schedules and in support of Becker Glynn's retention, the Debtor cannot now contend that his estate will be irreparably harmed by a state-court determination concerning their

ownership. *Cf. New Hampshire v. Maine,* 532 U.S. 742, 749–51 (2001) (judicial estoppel bars a party from taking a position contrary to one on which it previously prevailed).

As set forth in prior motion practice in this Court, the Debtor does not own the interest in Park PH and Park 1, as this Court has previously recognized that those interests have been foreclosed upon.

Thus, the Debtor's interests are limited to his claimed equity interests in YJ Simco and WMTR. In the YJ Simco bankruptcy case dismissed earlier this year, the Chapter 7 Trustee had found "substantial uncertainty" that he could sell "the properties owned by 1055 Park Ave 4 LLC, 1055 Park Ave ST LLC, and 266 WMTR LLC. Assuming arguendo the Trustee had the legal authority to sell such real properties, there is additional uncertainty as to the potential tax consequences and the debt of the entities that would need to be paid before distribution to the Debtor as equity." YJ Simco Trustee Report dated 12/15/25 ¶ 86. *In re* YJ Simco, No. 25-10437 ECF No. 80.

As such, the Debtor cannot show that a monetary default judgment against any of these entities would amount to "an immediate adverse economic consequence for the debtor's estate."

Meanwhile, the nonmonetary relief sought: avoidance by declaration or otherwise of any transfers of Park ST's and Park 4's membership interests from YJ Simco to Yael Simpson, can ***enhance*** the estate, subject to the Arch Entities' money judgment against YJ Simco. The Debtor claims a fifty percent interest in YJ Simco. The underlying lawsuit seeks to unwind YJ Simco's transfers to the Debtor's spouse. If judgment is entered as proposed, YJ Simco would wholly own Park 4 and Park ST and the Debtor would have a 50 percent indirect interest.

At the time of its retention, the Debtor and Becker Glynn represented Park ST's separateness as a reason for its engagement to show disinterestedness. Now, in order to suit a different purpose, the same parties seek to conflate and entangle the relationship. Whatever interest the Debtor's wife may have in Park ST and Park 4, harm to a non-debtor spouse's property is not harm to the estate.

**6. Becker Glynn Will Not Be Harmed.**

To the extent the Motion is really concerned with Becker Glynn—the only defendant that appeared in the State Court Action and whose motion to dismiss remains pending—any conceivable prejudice has already been addressed. The Arch Entities offered to include in any order resolving the default motion a provision that, as to Becker Glynn, the claims against it will be treated as though adjudicated in a subsequent proceeding, which would effectively meant that the Arch Entities may not invoke res judicata, collateral estoppel, or issue preclusion against Becker Glynn based on the default judgment, except that the Arch Entities preserve the right to claim that Becker Glynn lacks standing to challenge the Debtor/Creditor relationship between the Arch Entities and the Contract Defendants. Becker Glynn will be heard on the merits in the state court. The Arch Entities are advised that Oak would provide similar protections to the Debtor and his estate concerning any claim that may be made by Oak.

Under the CPLR, the clerk must sever the action against Becker Glynn. *See* N.Y. C.P.L.R. 3215(a). Once severed, Becker Glynn's situation if the default judgments were entered as proposed would be akin to a subsequent transferee defendant under Bankruptcy Code section 550, who is entitled to assert any defense to avoid the original transfers. *See, e.g., Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 501 B.R. 26, 35 (S.D.N.Y. 2013).

**7. Becker Glynn Transferring the Risk it Assumed to the Estate is Not Irreparable Harm Caused by the Underlying Suit.**

The Debtor suggests that invalidation of the Mortgage and Guaranty "puts the Debtor at risk of losing his chapter 11 counsel." Complaint ¶ 44; Motion ¶ 47. But neither he, nor his counsel, offer evidence that Becker Glynn would withdraw if the Mortgage and Guaranty were avoided, or that substitute counsel could not be retained.

Regardless, any position hinting that Becker Glynn may withdraw if the Mortgage or Guaranty is subject to avoidance, cannot be squared with the basis on which Becker Glynn was retained, which the Court, the parties, and the estate relied upon in granting Becker Glynn's retention.

The objections to Becker Glynn's retention centered on the Mortgage and Guaranty and the well documented ownership dispute that covers Park ST. Complaint ¶ 24. This Court overruled those objections and found Becker Glynn disinterested on the understanding that any dispute concerning the validity of the Mortgage or Guaranty would be at Becker Glynn's own risk.

At the first hearing on Becker Glynn's retention, this Court addressed three scenarios: (i) that Park ST was owned by Yael Simpson as asserted; (ii) that the estate had an interest in Park ST; or (iii) that YJ Simco owned Park ST. The Court scheduled a second hearing after raising concern over the second scenario: the potential disinterestedness issues if the estate had an interest in Park ST. The Court further observed that neither of the other two scenarios raised disinterestedness concerns: if Park ST belonged to Yael Simpson, then it was not an estate issue because Yael Simpson is not a debtor; and if Park ST belonged to YJ Simco, then that was simply a risk that Becker Glynn agreed to take on.

And taking on the risk is just what Becker Glynn represented it was prepared to do: "***I and my firm have taken a risk in going forward with the retention*, *including the ST LLC guaranty and mortgage.*** If this arrangement is impermissible, the Debtor will likely be left without counsel and without a readily available means of obtaining counsel." Ostrow Reply Decl. ¶14 (emphasis added).

The Court, the parties, the estate, and the Debtor were all entitled to reasonably rely upon Becker Glynn assuming this risk and not turning the dispute into an issue that would impact the estate. Now after having put eight months and over half a million dollars of work into the case, the Debtor claims that Becker Glynn's inability to get paid threatens the viability of Debtor's ability to confirm a plan.

This raises serious concerns regarding disinterestedness and otherwise. Becker Glynn agreed to the retention, and acceptance of the Mortgage and Guaranty with actual notice that Park ST's ownership was subject to dispute. If somehow Becker Glynn just did not fully appreciate what that meant for the Mortgage and Guaranty when it accepted it, it certainly must have realized the concerns last March upon reviewing the objections to its retention application. Becker Glynn could have at that time sought to withdraw or tried to find another solution. Instead, Becker Gynn leaned in, declared it accepted the risk, proceeded to incur over half a million of dollars in fees and ***now*** apparently has warned the Debtor that it cannot continue without stunting the lawsuit? And ***now*** the Debtor is going to incur even more fees to pursue this new Complaint for the benefit of Becker Glynn?

By directing the estate's limited resources to this new adversary proceeding under threat of withdrawal, Becker Glynn is clearly not disinterested. If Becker Glynn's position truly is that it will be forced to alter its duties or seek withdrawal, then it has a duty to supplement its disclosures. *See generally In re Granite Partners, L.P.*, 219 B.R. 22 (Bankr. S.D.N.Y. 1998).

Meanwhile, just last month, Mr. Ostrow claimed to the Court:

- I believe there has been a total breakdown of the attorney- client relationship…
- And the client fails to cooperate in the representation or otherwise renders the representation unreasonably difficult for the lawyer to carry out employment effectively
- I do not take this step lightly. I have endeavored to try to work things out. But I have reached the point where I have concluded that it's impossible to go forward.

8/17/26 Hr'g Trans. at 9:17-19; 10:3-6,13-15. (Attached as Exhibit A hereto).

The Debtor too has made clear his frustrations with Becker Glynn: "$600,000 incurred and nothing to show for it and I haven't reviewed the bills yet and I guess we will see how they will be paid but I am not incurring another dollar for someone that won't fight for me and stand up for me and do what's necessary so that I can move on and get a fresh start." 9/11/2026 Email of Jeffrey Simpson to Your Honor's Chambers, Alec Ostrow, the Honorable Judge Lane, the Office of the United States Trustee and Daniel Rudewicz of that office. ECF 165-1 Ex. 1. at 13.

The relationship between the Debtor and its counsel is clearly rocky, and it appears that Becker Glynn has made multiple threats to withdraw: first to this Court at the August 17 hearing and now implied by the newly filed adversary proceeding. Uneasy as their relationship may be, they now join in an attempt to manufacture irreparable harm as a means to preserve it for another day.

Regardless, having secured its retention on that basis, Becker Glynn cannot now—having performed work and accrued fees—recharacterize the very risk it accepted as irreparable harm to the estate. Becker Glynn's compensation from the estate remains subject to allowance under

section 330 of the Bankruptcy Code regardless of the outcome of the State Court Action. A professional's concern about the collateral securing its own fees is not harm to the estate, and the Arch Entities respectfully submit that the use of this adversary proceeding, brought in the estate's name, to protect counsel's own collateral in litigation in which counsel is itself a named defendant, warrants the Court's scrutiny. The Arch Entities reserve all rights in that regard.

**8. There Can Be No Harm Because Dismissal or Conversion is the Only Realistic Outcome in this Case.**

There can be no harm to the Debtor's reorganization because the record does not support the prospect of a confirmable plan and instead points to eventual conversion or dismissal. A court must convert or dismiss a bankruptcy where "cause" exists "so long as [conversion or dismissal] is in the best interest of both the creditors and the estate." *In re JJ Arch LLC.*, 663 B.R. 258, 275 (Bankr. S.D.N.Y. 2024) (internal marks and citations omitted), *motion for relief from judgment denied sub nom. In re JJ Arch LLC*, 676 B.R. 675 (Bankr. S.D.N.Y. 2025), and *aff'd sub nom. In re JJ Arch LLC*, No. 24-CV-08649 (JAV), 2026 WL 1622865 (S.D.N.Y. June 5, 2026).

The Bankruptcy Court dismissed the JJ Arch case—filed by Simpson on JJ Arch's behalf in violation of court orders—for "[s]ubstantial or continuing loss to or diminution of the estate accompanied by an "absence of a reasonable likelihood of rehabilitation ...."; gross mismanagement; and bad faith.

All are present here. Even allowing (which the Arch Entities do not concede) that there could be a legitimate purpose to Simpson's individual bankruptcy case beyond his serial record of forum shopping cases away from the state court and threats to file this very bankruptcy case for that very purpose, which with regard to another action the Debtor sought to remove on account of his bankruptcy filing, District Judge Vargas denied lifting an anti-removal injunction based upon his "baseless attempts to remove [another state court action] to federal court and ***his repeated and frivolous efforts to delay state court proceedings***,… ***to say nothing of his threats to file for personal bankruptcy to thwart state court jurisdiction***… ***would make a mockery of the Court.***" *Simpson v. Chassen*, No. 25-cv-4004 (JAV) [ECF No. 84], June 2, 2026 Memorandum Opinion & Order at 4 (internal marks and citations omitted) (emphasis added).

There clearly has been gross mismanagement and a substantial and continuing loss leading to diminution. The record is clear that Mr. Simpson is not looking to maximize a recovery for his creditors, but rather has taken on a scorched earth "Simpson against the world" grievance campaign to litigating and relitigating every conceivable issue. A responsible fiduciary of an estate with less than $10,000 cash on hand would not have incurred $500,000 in legal fees through the first four and a half months of the case to litigate those grievances (the last available monthly operating report is June, 2026; the Debtor is once again behind). In his September 11 email, *supra*, the Debtor himself conceded $600,000 was incurred with nothing to show for it. There is simply nothing but a substantial and continuing loss and nothing to reorganize here.

If anything, the mere filing of this adversary proceeding—which required extensive papers to prepare—as his latest act of forum shopping again shows the length and expense this Debtor

will take to focus the estate's resources on anything but their preservation for the benefit of creditors.

And then comes the barrage of brazen violations of this Court's Cease and Desist Order, where the Debtor himself made clear he has no intention to follow these Court orders. In one of the dozens of communications sent by the Debtor in violation of this Court's orders, the Debtor makes perfectly clear what he thinks about this Court's orders:

> So go ahead sanction me go ahead do whatever you want to do to me but let's get people in the room and let's start talking and let's get everything on the table of all the impropriety, mistakes that are intentional, judge problems, lawyer conflicts, governmental agencies ignoring issues that are illegal. Let's do it right now and I hope it ruins your weekend because by life is ruined thanks to you all. Shame on each one of you to call yourself judicial, wrong guy… yes I am the wrong guy for this to happen to you so you're not going to shut me up because of some stupid order where you think you can take away my constitutional rights. Take it all the way up , let's go, when the facts come out , it's unquestionable who will be correct here. You want to get the Marshalls involved as you mentioned in a hearing? What are they going to do? Take away my abilities to communicate??? there is no lawyer that will do this for the hundredth time and I've been telling you all for almost 2 years now and you just don't listen so yes this is my turn again . do what it us you have to do by your job and I'm going to do mine and I'm going to keep smearing it over and over again until I'm heard."

Email of Jeffrey Simpson embedded in 9/11/26 Email to Your Honor's Chambers, with copies to several recipients, including Alec Ostrow, the Honorable Joel M. Cohen, the Office of the United States Trustee, the United States Department of Justice, the Honorable Jesse Furman, the Honorable John P. Mastando, III, and the Honorable Jeanine A. Vargas. ECF 165-1 Ex. 1 PDF 9-10.

The Debtor also makes clear what he thinks of the bankruptcy process: "This bankruptcy is a complete shit show it is a disaster and a worthless experience that is all because the court finds excuses to not maintain its responsibility to maintain law."

9/10/26 email of Jeffrey Simpson, embedded in 9/10/26 email to Your Honor's Chambers, with copies to Alec Ostrow and the Honorable Sean H. Lane. *Id.* ECF 165-1 Ex 1 at 6.

This is not the behavior of a fiduciary who will be able to confirm a plan. To the contrary, the Debtor's consistently shocking behavior demonstrates that he lacks the most basic capacity to follow orders of this Court and certainly cannot be counted upon to follow a confirmation order. To any party who has observed his shocking behavior in this case, with the vitriol the Debtor sends to anyone perceived to be standing in his way all in brazen violation of this Court's orders, all with nothing to show for reorganization progress, the mere fact this Debtor remains in possession is nothing short of astonishing and the notion that this Debtor is a responsible fiduciary with any possibility of confirming a plan flies in the face of the record. There can be no irreparable harm.

**Conclusion**

Because the Debtor has not demonstrated any imminent irreparable harm to the estate, the Arch Entities respectfully request that the Court deny the request for a temporary restraining order and set a schedule for briefing and a hearing on the Motion in the ordinary course.

We thank the Court for its consideration.

Respectfully submitted,

/s/ Jonathan T. Koevary
Jonathan T. Koevary

cc: All counsel of record (via ECF)