# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
Case No. 26-10359 (LGB)
Adv. Case No. 26-01079 (LGB)
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x
In the Matter of:

JEFFREY SOLOMON SIMPSON,

Debtor.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x
JEFFREY SOLOMON SIMPSON, as Debtor
and Debtor-in-Possession,
Plaintiff,
v.
GREAT AMERICAN INSURANCE COMPANY,
ARCH REAL ESTATE HOLDINGS, LLC,
JARED CHASSEN, WIGGIN AND DANA LLP,
GRIFFIN LLP, OFFIT KURMAN PA, and
JOHN DOES 1-10,
Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

United States Bankruptcy Court
One Bowling Green
New York, NY 10004-1408

Monday, September 28, 2026
3:01 PM

B E F O R E :
HON LISA G. BECKERMAN
U.S. BANKRUPTCY JUDGE

ECRO: UNKNOWN



HEARING re Conference

Transcribed by: Sonya Ledanski Hyde



A P P E A R A N C E S :

BECKER, GLYNN, MUFFLY, CHASSIN & HOSINSKI LLP
Attorney for Debtor
299 Park Avenue
16th Floor
New York, NY 10171

BY: ALEC P. OSTROW

OLSHAN FROME WOLOSKY LLP
Attorney for Arch Entities
1325 Avenue of the Americas
New York, NY 10019

BY: JONATHAN T. KOEVARY

OFFIT KURMAN PA
Attorney for Offit Kurman PA
590 Madison Avenue
Sixth Floor
New York, NY 10022-2524

BY: JULIE LEVINE



P R O C E E D I N G S

THE COURT: Good afternoon. This is Judge Beckerman. The Court is now in session. I'm going to go ahead and call the case, and when I do, I'll ask the parties to please put their appearances on the record and then also identify themselves again when speaking for the record.

Case Number 26-10197, Simpson v. Arch Real Estate Holdings LLC. May I have appearances, please?

MR. OSTROW: Good afternoon, Your Honor. Alec Ostrow, from Becker, Glynn, Muffly, Chassin, and Hosinski, representing Jeffrey Solomon Simpson, the Debtor and Debtor-in-Possession and the Plaintiff in the adversary proceeding.

MR. KOEVARY: Good afternoon, Your Honor. Jonathan Koevary, Olshan Frome Wolosky, for Defendant Arch Real Estate Holdings LLC and its Co-Defendant, affiliated Defendants, which I'll refer to collectively as the Arch entities or AREH.

THE COURT: Okay.

MS. LEVINE: Good afternoon, Julie Levine, from Offit Kurman, for Offit Kurman.

THE COURT: Okay. Any other appearances? All right. Mr. Ostrow and Mr. Koevary, so I suggested having a status conference because obviously I read the papers on Friday, and, Mr. Koevary, I've read your letter from today as well, and I guess I was not really understanding why this

was an emergency, and that was also just difficult for me to understand and how also it related in any emergency way for the Debtor.

So I was trying to understand why either -- the parties couldn't have worked out something where this was kind of on a normal schedule because it didn't seem to be that earth-shattering to me. It certainly has been happening before. There was already defaults according to parties. So I'm not really sure this seemed new. It also didn't seem to be -- I wasn't sure how this actually directly impacts the estate or its property.

So, but even so, I obviously -- the issue about for a TRO, which I didn't schedule a hearing on yet because I just really wasn't understanding the timing issues here and that didn't make sense to me why I had to enter an order today. I didn't get that, what the order to show cause was, and why so urgent, given that defaults have already happened, parties decided not to have representation then or couldn't get it. I don't think that's new. I was trying to understand what the timing issue was. So I thought a status conference was a better situation before I just scheduled something or didn't schedule something.

Mr. Ostrow?

MR. OSTROW: Yes, Your Honor. Obviously this application for a TRO is occasioned by the motion for a



default judgment and the motion for a default judgment was made in early September, originally returnable on September 11th. Then it was adjourned to October 2 with an answering date of September 24. There was a further adjournment that my firm's counsel in that case negotiated with counsel for the Plaintiff. We filed this on September 25. And the purpose is to avoid the consequences of a default judgment.

Now, Mr. Koevary addresses this in his letter and he basically says the consequence of a default judgment is an admission of liability and he further states that the non-Becker Glynn Defendants can still move to extend their time to appear or to set aside a default. But, Your Honor, there is nothing that requires the state court to grant such a motion, and thus the admission of liability may be undoable, which means that it is irreparable. And again, Mr. Koevary's letter suggests that this is an urgency of the Debtor's making. Again, we didn't respond to the filing of the complaint in June. We responded to the motion for a default judgment in September.

So it's not like we let a lot of time go by off the calendar, and we tried to get this done by the response date applicable to all Defendants of September 24. We missed it by a day. But there was a further adjournment which is arguably applicable to the other Defendants, so there's a return date of October 6.



Now, Your Honor, between now and October 6, before the return date, I don't know that there is any urgency between now and then. But once the return date happens, and if it's not stopped, then there is the distinct possibility that there will be a default, and the default as to liability may be undoable and therefore irreparable.

So how does this harm the estate? Well, it's clear that the non-Becker Glynn Defendants are sued in the state court as proxies for the Debtor. Paragraph 3 of the first amended complaint says, and I'm quoting, "Jeffrey Simpson, a non-Defendant currently in Chapter 11 bankruptcy, who is married to Defendant Y. Simpson, exercised complete dominion and control over the contract Defendants to orchestrate a series of insider transactions designed to shield assets or otherwise make them available for improper purpose."

The focal point of the state court action, Your Honor, is the guarantee and mortgage that was given to my firm by one of the non-Becker Glynn Defendants, also referred to in the complaint as a contract Defendant -- 1055 Park Avenue ST LLC, which I can refer to as ST LLC -- that owns a condominium unit at 1055 Park Avenue that was basically the source of my firm's compensation for representing the Debtor in this bankruptcy case. And Your Honor, you know very well because you held two hearings on



my firm's retention and we submitted a lot of papers, not just the original application but supplemental declarations, including the mortgage, the guarantee, the affidavit submitted by the Debtor's wife, Yael Simpson, who, by the way, is listening in to this hearing and is obviously concerned. But she's not a party to this adversary proceeding and she's obviously not represented by counsel.

But the whole point was to provide a basis for my firm to go forward to represent the Debtor in this Chapter 11 case, which is an exceedingly complex case for an individual, and the lawsuit seeks to invalidate the guarantee and the mortgage, which, of course, undermines the Debtor's ability to be represented by counsel and confirm a plan. That's a harm to the estate. The complaint alleges that the contract Defendants are indebted to the Arch entities because the Debtor used the Arch entities' personnel to do work for the Debtor, and that's the same claim that is being made against the Debtor in Oak's amended discharge ability complaint, and Oak of course now controls Arch.

So the state court action is seeking to establish a claim against the Debtor and when Oak amends its proof of claim to conform to its amended discharge ability complaint against the estate as well. That is a harm to the estate, and the lack of resources of the non-Becker Glynn Defendants

Defendants is a harm to the estate. As our motion papers make clear, the only resources that the non-Becker Glynn Defendants have -- historically have been the Debtor's resources, including the Debtor's insurance coverage, all of which have been shut off to the Debtor as a result of actions and decisions in pre-bankruptcy cases before Justice Cohen.

Now the Debtor's post-petition earnings are property of his estate under Section 1115 of the Bankruptcy Code and can't be used to pay a retainer or other compensation for an attorney for the Debtor's wife and the other non-Becker Glynn Defendants, which are entities that are -- some of which are co-owned by the Debtor and his wife and the equity in those entities is to the benefit of the Debtor and they're being sued over the Debtor's own pre-petition acts and the Debtor's estate property can't be used for this purpose without this Court's authorization.

So the Debtor's bankruptcy filing doesn't eliminate his obligation to support and protect his wife. And how is the Debtor supposed to work on the plan, the disclosure statement, the objections to claims, if he can't protect his wife and the assets that they jointly own? Your Honor, this situation is analogous to the cases involving corporations where suits against corporate executives of the Chapter 11 debtor based on the debtor's conduct have been



enjoined.

Here, the Debtor is not a corporation. The Debtor is an individual. But the underlying considerations are the same. And again, as the first amended complaint says, the Arch entities allege that the Debtor orchestrated a series of insider transactions designed to shield assets and other improper purposes. If this bankruptcy case doesn't stand in the way of this particular state court lawsuit against the Debtor's wife and against the entities that are co-owned by the Debtor and his wife, based on one such transaction that the Debtor did -- the one that gave Becker Glynn a guarantee and mortgage to represent the Debtor -- how many other lawsuits against the Debtor's wife and entities and family members are waiting in the wings?

If the Court doesn't stop this one, it's going to be open the floodgates, and it's a complete circumvention of what this case is supposed to be about, which is supposed to protect the Debtor with an automatic stay and other Debtor protections, including, ultimately, a fresh start when he confirms a plan.

So Your Honor, this clearly concerns the estate. There is an identity of interest under Queenie that's at the heart of this. It's obviously the -- you know, the allegation is the Debtor controlled all the entities that are the non-Becker Glynn Defendants. The Debtor is married



to Yael Simpson, the Debtor's wife. Of course there's an identity of interest and all of this, all of this is about preventing the Debtor from having the resources to prosecute the bankruptcy case and confirm a plan.

Now, just to respond to the rest of the stuff in Mr. Koevary's letter, I mean, he talks about Becker Glynn asking for extensions of time and then kind of using this motion to get an extension of time that they couldn't get. Becker Glynn is not making this application. The Debtor is.

Now I obviously am a member of Becker Glynn and the mortgage obviously concerns my firm and my firm's representation of the Debtor. But Becker Glynn has its own counsel in the state court and Becker Glynn's counsel is responding to the motion for a default judgment by the deadline of today. I have seen a draft of that opposition and I have been informed and expect that it will be filed today. So this is not Becker Glynn running into this Court. This is the Debtor.

And the other thing that I want to point out in response to Mr. Koevary's letter is his argument at the end that conversion or dismissal is the only realistic outcome. Not so. Because the Debtor is an individual Debtor can confirm a plan over the dissent of a class of creditors who are not paid in full by retaining property of the estate under Section 1115. That's 1129(b)(2)(B), for the benefit



of individual debtors.

Now the plan has to satisfy the best interest test, which basically means that all classes get at least liquidation value. And if a creditor with an allowed claim objects, the Debtor has to provide value equal to his projected disposable income for at least five years. He has to pay all priority claims in full, but priority tax claims can be paid over five years from the filing date.

He has to pay U.S. trustee fees, which I believe he's been doing, and don't amount to that much. That leaves administration claims. The only administration claim that I'm aware of is my firm's fees, and, as of last month, they are in the vicinity of $600,000. These fees have to be paid when allowed, in cash, in full, unless there is some other agreement, and this is where the guarantee and the mortgage are front and center.

This is why the Arch entities' first amendment complaint interferes with the reorganization efforts. The only sources for payment of administrative fees, besides the guaranteed mortgage, are insurance, which is the subject of an adversary proceeding that was started last month, Adversary Proceeding 26-1079, other potential claims against others, the Debtor's post-petition earnings or exit financing.

Now I'm willing to work with the Debtor so that my

Page 14

firm's fees do not become an insurmountable obstacle to confirmation. That doesn't seem possible if the guarantee and mortgage are invalided. And, of course, the guarantee and mortgage are at the heart of the Arch entities' complaint.

For all these reasons, Your Honor, I believe this obviously concerns the estate. The Debtor is really the real party in interest. This really is interfering with the Debtor's ability to go forward with this case and ultimately confirm a Chapter 11 plan. It really is, when you look at the case law, especially the case law enjoining suits against executives of corporate debtors that don't let them give their attention to the bankruptcy cases, this is the analogous case for an individual.

But the Debtor really is the real party in interest. His name is all over that complaint. The only reason that these entities are being sued is because of him and it clearly is interfering with the Debtor's ability to prosecute this Chapter 11 case.

So for all these reasons, we think that the state court case ought to be stopped, and it ought to be stopped before there is an undoable default judgment as to liability. Thank you.

THE COURT: Mr. Ostrow, I just somehow think this falls into a few different categories, and they're not all

Page 15

the same. So I hear your argument. Maybe that's a valid point in terms of affecting the Debtor's interest in YJ Simco and the Debtor's interest in -- sorry, the entity that owns the house, where there's an argument about whether that's actually owned by the Debtor or not owned by the Debtor. Those are definitely things where the Debtor directly has some -- or indirectly has some interest in it. The other corporations that we're talking about, if any of them, it's clear the Debtor doesn't -- the Debtor's even testified he didn't have an interest in some of them and his wife owned them and other things. So I'm not really sure how that gets to the Debtor myself, even indirectly.

And the other issue that I have with this is when you did have your retention application before me, I think I was very clear that if it turned out, for example, that YJ Simco was the actual owner of this property -- which I wasn't determining at the time -- I was determining if there was a conflict. And what I determined is that it was likely that either the entity was owned by Ms. Simpson, as the testimony you all suggested, or, pursuant to that agreement -- people say those agreements -- it was owned by YJ Simco, which you don't represent, and therefore you had no conflict because you weren't representing them, that there wasn't an issue with your retention application proceeding.

I don't think I determined, for example, that no

Page 16

one could ever sue about the mortgage and the guarantee. That wasn't part of what I was asked to do. And if you look at the few case laws that exist about this where someone was given a mortgage or a guarantee from other parties -- which there's not that many, surprisingly, that actually exist when we were doing your retention application, I remember that -- the issue is really that that's a risk that the lawyer decides to take when they take a mortgage.

Sometimes it's a mortgage from the debtor, sometimes it's a mortgage from a non-debtor, and they take all risks associated with that if they decide to do it. That's part of it, and that's the case law that says that. And the issues that the case law has to determine is whether or not, for example, if the Debtor were giving you a mortgage, whether that means you'd have a conflict and couldn't represent the mortgage, or whether the Debtor's spouse or relative was giving someone a mortgage on property, whether that would cause a conflict.

That's what the case law says and that's what I ruled on at the time because it seemed to me that it was either what you all were arguing, which is that Ms. Simpson owns it, and that there was not very good evidence that Mr. Simpson owned it. That was for sure. Mr. Simpson was saying he didn't own it. There wasn't a lot of good documentation. It didn't seem likely to me -- even the

Page 17

other side wasn't arguing that at this point, and so it didn't seem to me that you could have a conflict because either you're getting the mortgage from an entity that's owned entirely by Ms. Simpson, in which case that's not a conflict because you're not representing Ms. Simpson or the entity, or you're getting it -- you won't have one because it actually is owned by YJ Simco and Ms. Simpson wouldn't have the right to give the mortgage. Only YJ Simco would, and you're not representing YJ Simco, so no conflict.

I don't think I precluded anything else from happening. I understand what you're saying. But I don't think that was part of what I did. And then you have a bunch of corporations or entities that aren't the Debtor, that clearly the Debtor doesn't own directly and they aren't the Debtor. Even the Debtor, like I said, has testified some of those.

So I have a hard time understanding how that impacts things here either. Unfortunately, as you know, when people are married, sometimes one person files for bankruptcy, sometimes both people file for bankruptcy because if they're liable on debts, that's what they have to do sometimes. It does occur. That just does happen, and Mr. Simpson and Ms. Simpson together control some of these corporations and that's also something that they could determine what they wanted to do with those as well.

Page 18

And I recall, properly or improperly, that either the property that we're talking about and that's owned arguably by the LLC that's either owned by the Simpsons directly or owned by YJ Simco that owns the house, that there was a million dollars that people thought of equity in that house. That's what even the trustee thought was true and JPMorgan thought was true and a lot of people thought it was true. That's why I extended the stay for a while, to try to figure out what was going to happen with it because it seemed like there could be some value to YJ Simco. It wasn't clear whether it was YJ Simco's or Mr. and Ms. Simpson directly, but there was value.

So again, you know, I'm here today. I have an individual Debtor case in front of me. That's what I have and I have to figure out how does this relate to that individual. And I can see that there might be an argument with respect to the two entities that are owned, according to Mr. Simpson's schedules, 50 percent by him, and that may be the issue is if the judgment was entered against that entity, that that could affect the underlying equity of that party. There's at least some tie to it, but I have a very hard time seeing the ties to the rest.

I really am not seeing it because, again, as I said to you, there's different legal entities. There's different persons. If it was intended to preclude Mr.

Page 19

Simpson from having counsel, you knew there was a risk when you took this representation that it wasn't even owned by Ms. Simpson, that there was a whole argument that it was actually owned by YJ Simco. So I'm not really sure why that's urgent either.

I get your point that maybe a judgment against parties that could have an impact on the Debtor's estate directly could do something like that. That's why I understand there's a couple of legal entities in the contract parties that might fall into that. But I'm not seeing that with everybody else. So that's just my -- I'm not seeing it.

Mr. Koevary?

MR. KOEVARY: Thank you, Your Honor, and good afternoon again. Well, Your Honor, I don't really have much to add. I think Your Honor clearly read our papers. Your Honor clearly hit the nail on the head of what I think the most pertinent issues are. I'm happy if Your Honor would like to walk through a little bit more of the timing issues and what's going on in the state court, if Your Honor thinks that would be helpful.

I would say just a couple of quick responses. I heard a lot from Mr. Ostrow, a lot of mays, if this doesn't happen, this might happen, this might not happen. That's generally not the risk -- that's not the imminent sort of

Page 20

harm that the cases talk about. I think we're months away, realistically, from any default judgment being entered because with the return date on October 6th, it's not like federal court. That just means it's fully submitted. Who knows how long the courts sit on that. And then there's, even if the clerk can't enter it, there's an inquest for damages. So it's hard-pressed to think that we're even going to have a judgment this year. I won't say it can't happen. But it's a process.

Your Honor, as far as Your Honor raised the point that conceivably two entities would be affected, the Debtor claims the interest -- it's under dispute, but claims the interest in the Watermill property. The Debtor also claims -- I don't think it's under dispute -- a 50 percent interest in YJ Simco. Those are facts.

But there's also a Queenie standard there which I don't think has been -- in theory something could be shown, but I don't think any -- the Queenie standard is an immediate adverse economic consequence for the Debtor's estate. So any showing, it's not just -- I'm sorry?

THE COURT: But what about liability issues? You know, in fairness, Mr. Ostrow's raised a point, which is correct, that a lot of this is -- pardon me for describing it this way -- regurgitation of things that are already in front of me in other circumstances. That's my word for it,

Page 21

so in proofs of claim, in litigation, in other things in front of me, and so those things haven't been determined by me and they are in front of me.

So having someone have an admission of liability in connection with that, if it does actually implicate matters that are in front of me, or, for that matter, the estate itself and the estate, Mr. Simpson's estate, in fairness, as Mr. Ostrow said, and I don't think he's wrong about this, is made up of a very small amount of things here. It's made up of any post earnings that he has as of since he filed for his bankruptcy proceeding. It's made up of any insurance coverage that I -- that ultimately is determined to belong to him, any amounts out of that interpleader amount that's been deposited. So that's an issue. It involves his ownership interests in entities, and his schedules only list two basically, and those two that I haven't ruled on that he still has, are YJ Simco and the entity that owns their house.

And so if there's an admission of some kind of liability that's already the subject of a dispute regarding Mr. Simpson's conduct in a proof of claim, an adversary, more than one adversary, then I don't know how that doesn't impact both the Debtor's estate indirectly, again, true, but it also impacts other litigation that's in front of this Court that's already pending that involves Mr. Simpson

Page 22

directly that's been brought because it's identical. Again, where it involves parties that aren't in front of me and it doesn't involve property of Mr. Simpson, whether directly or indirectly, I'm not seeing that argument. But where it does, I can see the argument that it can impact that if there was an admission against liability because I haven't determined there's any liability on proofs of claim in adversary proceedings and it's all the same conduct, so.

MR. KOEVARY: Your Honor, I have two responses. May I -- I have two responses to that that I think are important.

THE COURT: Okay.

MR. KOEVARY: Okay. I'll get to the admission point second, or how it affects the other case, how it affects the case second. But first there's the issue of, as Your Honor said, there's a number of questions about whether that would ultimately flow. These are damages against non-Debtor entities and there are questions about whether anything would flow to the estate, and in fact, with YJ Simco, there is an argument that our action enhances the estate because our argument that gets a default judgment against Ms. Simpson --

THE COURT: Entities who afford to hire their own counsel? So that that's really like a great deep pocket, Mr. Koevary?

Page 23

MR. KOEVARY: No, Your Honor. It's not a judgment against Ms. Simpson. There's a -- the action seeks a declaratory judgment. One part of the default judgment is a declaratory judgment that Park ST or the ST LLC belongs to YJ Simco and not her. That's the -- there's no money judgment. The only money judgment sought against Ms. Simpson is legal fees in connection with fraudulent transfer. The judgment sought against Ms. Simpson is a declaratory judgment that the interest in Park IV and the interest in Park ST belong to the YJ Simco. If we win on that issue, the estate, by virtue of its 50 percent interest, is enhanced. So I would argue, Your Honor, for the Queenie standard to be met, it's not simply enough to say, well, there might be a judgment and that a dollar judgment against YJ Simco.

THE COURT: It's not the dollar judgment I'm focusing on, Mr. Koevary. Let's just go back for a second. It's the liability dispute and how it overlaps things that are already before me, and where it doesn't touch the Debtor, no disrespect, I'm not sure how I could extend it to not to the Debtor. But where it does touch the Debtor, and it does touch the Debtor indirectly, but it touches the Debtor because this is property of his estate. I mean, you know, he has a 50 percent interest that no one disputes in YJ Simco. You just said you don't even dispute that.

Page 24

So okay, we've got 50 percent of YJ Simco that's his and we've got issues about the house and whether it's owned by YJ Simco, in which case, or it's owned directly -- that entity that owns it is owned by YJ Simco -- I should have been clearer -- or it's owned by Mr. Simpson and Ms. Simpson. There is, at least on the basis of his schedules, which are prima facie evidence at this point, until it's ultimately disproved, or not at this point, that this is what it is. And I understand that's a dispute. There's no question. It was before me before. I'm not unmindful of that.

But what I'm saying to you is if those entities admit that he owed -- that these things happen and he owed money because they don't -- they default, that does affect the litigation that's going to be brought to me relating to that, and it does affect those entities which are part of the estate. If there is an admission against interest involving somebody who is not in any way part of the estate because they're not directly or directly owned by Mr. Simpson or it's not Mr. Simpson because we don't have Mr. Simpson in this litigation -- that litigation in state court -- then I get the point.

But where it could impact it, yeah, I do think that I have to figure out first of all if there are merits to this or not. And I'm not sure that this litigation is

Page 25

the right forum for it when I already have proofs of claim and adversary proceedings, and that does bother me.

I don't think that's appropriate and it does seem like an end around or a way that the Court could be -- the estate could be adversely impacted by something that's going on in state court, and that does concern me.

Again, I don't mean to say I'm not concerned about things that happened to the other parties, including Ms. Simpson, but I -- Ms. Simpson is not before me legally. Mr. Simpson is, and so are Mr. Simpson's assets, and that is what I have to look at here, and so I am really concerned about the fact that I have two entities that, while I -- look, I have some questions certainly about with respect to one of them about what maybe would make more sense to do here, but that doesn't matter.

What matters to me is that I have to look at is this going to impact the estate, and it is going to impact the estate if there's a default judgment that relates to those parties because it impacts the assets potentially -- you're saying in a good way, I could see in a bad way, but it also impacts -- arguably it could impact the litigation that's in front of me already in multiple ways.

So I'm not sure I'm getting to the same point there that there's no basis under Queenie for this. I grant you that it's not as crystal clear as if Mr. Simpson owned

Page 26

the -- it was a piece of property that Mr. Simpson owned and you were doing a foreclosure or something else on it. It's not like that.

But I do acknowledge that there is some argument here about that impacting it, both because of matters that are before the Court that haven't been determined, that the parties have put before the Court and that will have to be decided in due course. And I don't think a default judgment that goes against these entities has no effect on those entities. It does, and so I do have a concern about that. Again, I don't think every contract party or non-contract party, whatever they're called -- not Mr. Becker, not Mr. Ostrow's firm -- are the same.

But I do think that this is a problem here, and so I really don't -- I really think I'm going to actually have to consider what remedies and how the harm would be. My understanding -- and you can tell me if Mr. Ostrow's wrong - - that at some point after October 6th there would be a default judgment that would be entered and maybe it would -- or there'd be an admission of liability that happens if that date passes at some point, whether it's on the 6th or some other point. What's your view on when that happens?

MR. KOEVARY: Well, Your Honor, my view is that that likely, as I mentioned earlier, probably doesn't happen for months because the first step is not a default judgment

Page 27

because we seek damages against the contract Defendants and there has to be an inquest of the damages.

THE COURT: Well, to actually enter the judgment, but what about the admission of liability? When does that happen?

MR. KOEVARY: I don't think -- I don't -- Your Honor, I don't think that -- oh, when is it deemed admitted? I don't have an answer. I don't -- it is not my -- I could be wrong, Your Honor. It's not my understanding that defaulting constitutes an admission. I might be wrong on that. I don't think that it is -- it's simply a default.

THE COURT: Okay. Well, I know you could say that. But the way that it would work here in federal court and I'm sure it's not the same. But I'm just going to explain this from my perspective -- and maybe state court is different -- is that what would happen is you'd have the default. You're saying the defaults already happened. That's what I understand from you --

MR. KOEVARY: Correct.

THE COURT: -- because they didn't answer, so that's a default. Okay. Then our clerk would issue as a default because you didn't answer and you were served.

MR. KOEVARY: Right.

THE COURT: I know. I'm just explaining what happens here.

Page 28

MR. KOEVARY: Right.

THE COURT: I'm not saying this is what happens in state court. Then you'd have someone move for a default judgment, that's right, and they'd have to put out all the basis for the default judgment and that would have to be in a pleading, and then I'd have to grant the default judgment, and then, if I couldn't determine the amount of money that was owed at that point, I would have to then have another hearing or process, an inquest or something else to deal with the dollar amounts, sometimes a whole trial, depending on what it is, and that's the way that would work. What's your understanding about how that works in state court?

MR. KOEVARY: My understanding is that it's not all that different. I don't think the clerk enters anything. The clerk -- my understanding, is that the clerk simply is then going to -- it goes to an inquest because -- and there's scheduled an inquest and we have to put briefing on an inquest, and when that will happen, we -- even when we find out about the inquest -- and it's not a guarantee of an inquest. But that's the most likely thing that will happen, and then that that will take several months. That's my understanding.

THE COURT: Mr. Ostrow, what's your understanding?

MR. OSTROW: Your Honor, I'm not a regular practitioner in state court.

Page 29

THE COURT: Nope, and neither was I ever. So that's why I'm asking these questions. That's not my expertise.

MR. OSTROW: But I have read the CPLR and it does seem that the state court judge has an enormous amount of discretion as to what he can do. And the fact that he has discretion to direct an inquest doesn't mean he has to. The fact that he has discretion to postpone things doesn't mean he has to. I think he has discretion to do something that would be potentially undoable and irreparable.

THE COURT: Okay. I understand. Okay. So I think everyone agreed that there's no urgency before the 6th, and I think, Mr. Koevary, where I am on this is, I don't -- you know, I think there is a concern that I have and I think I'm going to have a full-blown hearing with respect to any entities that are actually owned by this estate, and that's where I have a concern here. I don't think that it's appropriate that liabilities are asserted against those entities and the value of those entities are being eroded, because they are potentially, by virtue of the fact that there isn't -- you know, there hasn't been a response to.

So I think I'm going to have a full-blown hearing to figure out what I'm going to do with respect to that. So I think, in the meantime, honestly, I'm going to have to

stay the matter with respect to those entities because I don't see if anything is going to take place because I think that that would be a problem for the reasons that I've articulated on the record so far.

So I think that's where I would end up here, and I guess the question just is I have some limits to my schedule in October. This is not new, but I've said this publicly on the record already in a number of hearings, not necessarily with you all, but otherwise. I have cataract surgery coming up. So my schedule isn't great in October. It's just not, and it's not intentional. It's just something that can't be avoided, and it's going to have to happen.

So I basically have nothing before the 6th, which is my problem. I'm pretty busy the next two days and I don't have anything before the 6th. I have a hearing on this on the 7th on Zoom, that day. I'm also -- I've got a full hearing on the 9th that I'm doing from San Diego where I'll be for NCBJ, and then I know I'll also be there on the 7th, but I have a mega case contested or a second day hearing.

So, and then I'm not doing any hearings the following week because of -- in part because of my first surgery, and then I have limited hearings both the next two -- the next week because of my schedule. That's just what it is. It's not my normal schedule and it's not my normal



availability either, unfortunately.

So I think either the parties could decide they're going to adjourn things themselves, or I'm going to have to, at least with those parties that I've raised an issue with, set up a schedule that makes sense for my schedule and that's probably going to delay your schedule, Mr. Koevary, because of my situation, and I just -- I understand that, but that's just where I am at this point, and I don't see how else I can't -- at least with those two matters, those two parties, I don't see how I'm not going to have a full-blown hearing.

I'm going to have a full-blown hearing as to everybody else, but I'm not sure I'm enjoining anything as to anybody else because I'm not sure I have any basis for that. But I have a concern about those entities.

MR. KOEVARY: Your Honor, a few things. First of all, just speaking, I'm sure, on behalf of my client too, just want to wish you the best of luck with your surgery. I too am planning on being at NCBJ, traveling --

THE COURT: Yeah.

MR. KOEVARY: -- on the 7th. That sort of has also affected the schedule in the state court, has affected scheduling that we've dealt with on we have other motions in this case. But so that becomes difficult. I would say, Your Honor, that if the order Your Honor is considering is



crafting is clear as to staying as to specifically those two entities which are YJ Simco and the Watermill entity and no other stay pending a full-blown hearing is offered, I think I don't see the rush on our end to have the full-blown hearing. I understand the Court's issue as far as those two Debtors are concerned. I don't know if we need to rush to get it in before NCBJ or if we do it when Your Honor's recovered if we're clear that we're staying as to those two entities.

THE COURT: Mr. Ostrow?

MR. OSTROW: Your Honor, look, I understand that your initial inclination focuses on those two entities and not anything else. But I think that with a full-blown hearing, we should have the opportunity to convince you that this applies not just to those two entities but to other entities and potentially to Ms. Simpson as well. Again, I don't see --

THE COURT: You do realize there are other options for some of those entities too, or parties? Just saying, you know, again, you know, retaining counsel is not the only thing here.

MR. OSTROW: Your Honor, I understand.

THE COURT: Sometimes you know you have to do other things.

MR. OSTROW: Yeah, I understand, and if Your Honor



is suggesting a bankruptcy for other entities, there still is the issue of lack of resources. The issue of lack of resources --

THE COURT: Yeah. That’s true.

MR. OSTROW: The issue of lack of resources isn't going away.

THE COURT: True, but you know, Mr. Ostrow, it's hard for me to feel sorry about that in some ways, for something where I have had multiple parties tell me there's a lot of equity in this particular entity, for example, if they actually owned it. So again, I hear you. But you know, just saying, so okay, I get that, where we are. So what is your proposal on the schedule?

MR. OSTROW: You Honor, look, I think I'm sure everybody on this call wishes Your Honor a very successful surgery, and --

THE COURT: I doubt that, given some of the remarks that were made in my Court last week. But we'll just go on with that.

Mr. Ostrow, what is your proposal for scheduling?

MR. OSTROW: Your Honor, look, I don’t think there is any --

THE COURT: Let's just talk about a schedule.

MR. OSTROW: Sorry?

THE COURT: Let's just talk about a  schedule

then. What's your proposal?

MR. OSTROW: Your Honor, I think -- look, my proposal is that you stay everything until this can be sorted out, and I don't see that there is any particular urgency in the state court on the timing of anything, especially, as Mr. Koevary says, he doesn't expect a judgment for many, many months.

I think it gives Your Honor the opportunity to sort everything out with a full-blown hearing, and it can be done at everybody's convenience because I don't think there is any urgency to whatever Mr. Koevary is trying to get done in the state court. There's not a lot of difference between October 6th or some six weeks after that. So I think in order to give Your Honor the full and complete opportunity to sort everything out, everything should be stayed.

THE COURT: Mr. Ostrow, let me ask you a question. How am I supposed to determine something based on the record you provided me so far? And I don't mean that rudely, but a lot of these entities aren't just Mr. Simpson. There are other entities, and there's another person, and I don't have evidence from any of those parties in what you provided me.

So you've asked me for a TRO. You asked me for a preliminary injunction. You're trying to convince me on how these are related somehow to the estate and in some cases that's easier, but I don't know what you have in mind. So



this is my question because, again, I have limited choices. I can do a hearing on October 7th on Zoom, which is my only day I have time at NCBJ to possibly do it, and I already have got some things on my calendar. Like I said, my hearing on the 9th is going to be very busy because it's -- you know, it's a giant mega case. So not happening, and then if I don't do it then, I could certainly do it in any of my other slots that I have, some in person, some not. I would need to pull up my calendar to figure out that at the moment.

But I don't know. If I'm going to do what you're saying, which I have questions about, I'll just say, then I, A, need to have a date that makes sense to me that's not holding up Mr. Koevary for six weeks. I don't think that's fair to Mr. Koevary. I don’t. I don't think that's right. And I also have to have an evidentiary record that is complete, which I don't think I do now.

So I'm just noting that for the record, having read everything on my train ride home from DC on Friday night and here today, so, and over the weekend. But nevertheless, that's my schedule. So you are going to have to bear with me for a minute while I pull up my calendar, which takes me a few minutes to get through all of our different federal government requirements.

Okay. So one possibility would be October 19th.



I would have to -- it probably couldn't start until like 11:00, but that would be -- and it would have to be in person because I'm assuming I'm having an evidentiary hearing with people testifying and being cross-examined. Okay. Then alternatively, similar thing, 11:00 on the 29th. That's all my days in October.

MR. KOEVARY: Your Honor, the October 29th works well for my side.

THE COURT: Mr. Ostrow?

MR. OSTROW: October 29th is fine.

THE COURT: All right. So I'm going to go ahead and enter an order today staying the proceedings, Mr. Koevary, against all the parties until that date, and I'm going to -- I don't really think that 21 days -- well, 23 days, whatever it is -- makes that much of a difference and I'm going to allow the parties to give me argument on everything.

I think you understand my skepticism about all the other entities here myself and that I think there's other remedies that exist under the law. But nevertheless, I will allow everyone their day in court to try to convince me and I will expect a full-blown evidentiary record. And remember, it's not just the immediate and irreparable harm issue that we're talking about. We're also talking about likelihood of success on the merits.



So that really is going to involve, for preliminary injunction, some evidence of the likelihood of success on the merits on some of these things. That gets into a lot of facts, and I note for the record that some of those facts are things that I have avoided ruling on before but might not be able to not rule on in the context of determining whether there's likelihood of success on the merits, and my ruling on that could impact other things.

It could certainly impact issues about who owns what to whom, at least my view on that, and I haven't done that up to this point where I didn't need to. And again, there is not a lot of -- this is not meant disrespectfully, this is just meant as my view of things -- that there is not a lot of good organizational information here.

There's not a lot of good paperwork in a lot of these entities. There's a lot of contrary paperwork in these entities, and it doesn't seem like there's -- and there's often missing paperwork in these entities. And that doesn't necessarily mean that I'm going to be able to determine that I have sufficient evidence to show something, and I have some evidence that is actually signed by parties.

So that's all maybe going to have to come to a head, at least in the context of my determining whether there is likelihood of success on the merits on some of these things because half of this is that issue. That's

part of it. The other part of it is, of course, the claim and those I do obviously have some concerns about.

But again, those are going to have to be addressed if it's in part of this likelihood of success on the merits for the preliminary injunction, and that's going to have to be at least some evidence on those and whether or not there's a good cause or not a good cause of action there against these entities.

And, Mr. Koevary, I'll just say for your sake, just like I've expressed my skepticism about some things to Mr. Ostrow, the one thing I actually have some skepticism about reading your papers and reading Mr. Ostrow's papers are how it's possible that some of these, even if legally it was possible for these entities to actually be on the hook for certain things that they actually utilized a greater up to your entity for help with -- that's my word for that -- that in those cases, in that case, even if that was true, the amount of money we're talking about, I mean, again, I just sit and think about this from my perspective. If you have an LLC that owns a house, you don't rent it out, you don't do anything with it. What do you have someone doing with respect to the LLC? Yes, they have to file a tax return. Yes, they have to maybe issue a K-1. Yes, they might have to worry about getting insurance.

I'm trying to think of all the things you could



have someone have to do. It's not hundreds of thousands of dollars. It can't be. I just don't believe it. It just seems highly skeptical to me that that's possible. This isn't -- we're not talking about a business that was operating, doing things. I'd get it if it's an entity that operates and does things. But that's not what we're talking about here.

We're talking about entities that own a single apartment. I mean, and you're talking about that entity's liability, not Mr. Simpson's liability. Even if that entity could be liable under the documents, there'd have to be some evidence that they would be liable for stuff they actually were called upon -- that entity was called upon to do. That's what the argument is. Some of these entities don't operate. They don't do anything.

So I just -- I don't -- I'm not sure how these particular entities end up with so much liability. So again, that's my skepticism about that on the likelihood of merits, just saying to you.

All right. With that, I will go ahead and enter an order today, and I will see you all at 11 o'clock in person on the 29th.

MR. KOEVARY: Thank you, Your Honor.

MR. OSTROW: Thank you, Your Honor.

THE COURT: Okay. I hope everybody has a good



rest of the day. Court is now adjourned.

MR. KOEVARY: Thank you, Your Honor..

(Whereupon, at 3:59 PM, these proceedings were concluded)



C E R T I F I C A T I O N

I, Sonya Ledanski Hyde, certified that the foregoing transcript is a true and accurate record of the proceedings.



Sonya Ledanski Hyde

Veritext Legal Solutions
330 Old Country Road
Suite 300
Mineola, NY 11501

Date: October 2, 2026

**&**

**&** 4:3

**1**

**1** 38:23
**1-10** 1:20
**10004-1408** 2:3
**10019** 4:14
**10022-2524** 4:22
**10171** 4:7
**1055** 8:20,22
**11** 8:11 9:10 10:25 14:10,19 39:21
**1115** 10:9 12:25
**1129** 12:25
**11501** 41:23
**11:00** 36:2,5
**11th** 7:3
**12151** 41:7
**1325** 4:13
**16th** 4:6
**19th** 35:25

**2**

**2** 7:3 12:25 41:25
**2026** 2:5 41:25
**21** 36:14
**23** 36:14
**24** 7:4,22
**25** 7:6
**26-01079** 1:4
**26-10197** 5:7
**26-10359** 1:3
**26-1079** 13:22
**28** 2:5
**299** 4:5
**29th** 36:5,7,10 39:22

**3**

**3** 8:9
**300** 41:22
**330** 41:21
**3:01** 2:6
**3:59** 40:3

**5**

**50** 18:18 20:14 23:11,24 24:1
**590** 4:20

**6**

**6** 7:25 8:1
**600,000** 13:13
**6th** 20:3 26:18 26:21 29:13 30:13,15 34:13

**7**

**7th** 30:16,19 31:21 35:2

**9**

**9th** 30:17 35:5

**a**

**ability** 9:13,19 9:23 14:9,18
**able** 37:6,19
**accurate** 41:4
**acknowledge** 26:4
**action** 8:17 9:21 22:20 23:2 38:7
**actions** 10:6
**acts** 10:16
**actual** 15:16
**actually** 6:10 15:5 16:5 17:7 19:4 21:5 26:15 27:3 29:16 33:11 37:21 38:11,14 38:15 39:12
**add** 19:16
**addressed** 38:3
**addresses** 7:8
**adjourn** 31:3
**adjourned** 7:3 40:1
**adjournment** 7:4,23
**administration** 13:11,11
**administrative** 13:19
**admission** 7:10 7:14 21:4,19 22:6,13 24:17 26:20 27:4,10
**admit** 24:13
**admitted** 27:7
**adv** 1:4
**adversary** 5:12 9:6 13:21,22 21:21,22 22:8 25:2
**adverse** 20:19
**adversely** 25:5
**affect** 18:20 24:14,16
**affected** 20:11 31:22,22
**affecting** 15:2
**affects** 22:14,15
**affidavit** 9:3
**affiliated** 5:15
**afford** 22:23
**afternoon** 5:2,9 5:13,19 19:15
**agreed** 29:12
**agreement** 13:15 15:20
**agreements** 15:21
**ahead** 5:4 36:11 39:20
**alec** 4:9 5:9
**allegation** 11:24

**allege** 11:5
**alleges** 9:14
**allow** 36:16,21
**allowed** 13:4 13:14
**alternatively** 36:5
**amended** 8:10 9:18,23 11:4
**amendment** 13:17
**amends** 9:22
**american** 1:16
**americas** 4:13
**amount** 13:10 21:9,14 28:7 29:5 38:18
**amounts** 21:13 28:10
**analogous** 10:23 14:14
**answer** 27:8,20 27:22
**answering** 7:3
**anybody** 31:14
**apartment** 39:9
**appear** 7:12
**appearances** 5:5,8,21
**applicable** 7:22 7:24
**application** 6:25 9:2 12:9 15:14,24 16:6
**applies** 32:15
**appropriate** 25:3 29:18
**arch** 1:17 4:12 5:7,14,16 9:15 9:16,20 11:5 13:17 14:4
**areh** 5:17
**arguably** 7:24 18:3 25:21
**argue** 23:12
**arguing** 16:21 17:1
**argument** 12:20 15:1,4 18:16 19:3 22:4,5,20,21 26:4 36:16 39:14
**articulated** 30:4
**aside** 7:12
**asked** 16:2 34:22,22
**asking** 12:7 29:2
**asserted** 29:18
**assets** 8:15 10:22 11:6 25:10,19
**associated** 16:11
**assuming** 36:3
**attention** 14:13
**attorney** 4:4,12 4:19 10:11
**authorization** 10:17
**automatic** 11:18
**availability** 31:1
**available** 8:15
**avenue** 4:5,13 4:20 8:21,22
**avoid** 7:7
**avoided** 30:12 37:5
**aware** 13:12

**b**

**b** 2:21 12:25,25
**back** 23:17
**bad** 25:20
**bankruptcy** 1:1 2:1,23 8:11,24 10:6,9,18 11:7 12:4 14:13 17:20,20 21:11 33:1
**based** 10:25 11:10 34:17
**basically** 7:9 8:23 13:3 21:16 30:13
**basis** 9:8 24:6 25:24 28:5 31:14
**bear** 35:22
**becker** 4:3 5:10 7:11 8:8,19 9:25 10:2,12 11:11,25 12:6 12:9,10,12,13 12:17 26:12
**beckerman** 2:22 5:3
**behalf** 31:17
**believe** 13:9 14:6 39:2
**belong** 21:13 23:10
**belongs** 23:4
**benefit** 10:14 12:25
**best** 13:2 31:18
**better** 6:21
**bit** 19:19
**blown** 29:15,23 31:11,12 32:3 32:4,13 34:9 36:22
**bother** 25:2
**bowling** 2:2
**briefing** 28:17
**brought** 22:1 24:15
**bunch** 17:13
**business** 39:4
**busy** 30:14 35:5

**c**

**c** 4:1 5:1 41:1,1
**calendar** 7:21 35:4,9,22
**call** 5:4 33:15
**called** 26:12 39:13,13
**case** 1:3,4 5:4,7 7:5 8:24 9:10 9:10 11:7,17 12:4 14:9,11 14:11,14,19,21 16:3,12,13,19 17:4 18:14 22:14,15 24:3 30:19 31:24 35:6 38:17
**cases** 10:6,23 14:13 20:1 34:24 38:17
**cash** 13:14
**cataract** 30:9
**categories** 14:25
**cause** 6:16 16:18 38:7,7
**center** 13:16
**certain** 38:15
**certainly** 6:7 25:13 35:7 37:9
**certified** 41:3
**chapter** 8:11 9:9 10:25 14:10,19
**chassen** 1:18
**chassin** 4:3 5:10
**choices** 35:1
**circumstances** 20:25
**circumvention** 11:16
**claim** 9:18,22 9:23 13:4,11 21:1,21 22:7 25:1 38:1
**claims** 10:21 13:7,7,11,22 20:12,12,13
**class** 12:23
**classes** 13:3
**clear** 8:8 10:2 15:9,15 18:11 25:25 32:1,8
**clearer** 24:5
**clearly** 11:21 14:18 17:14 19:16,17
**clerk** 20:6 27:21 28:14,15 28:15
**client** 31:17
**code** 10:10
**cohen** 10:7
**collectively** 5:16
**come** 37:22
**coming** 30:9
**company** 1:16
**compensation** 8:23 10:11
**complaint** 7:18 8:10,20 9:14 9:19,23 11:4 13:18 14:5,16
**complete** 8:12 11:16 34:14 35:17
**complex** 9:10
**conceivably** 20:11
**concern** 25:6 26:10 29:14,17 31:15
**concerned** 9:6 25:7,11 32:6
**concerns** 11:21 12:11 14:7 38:2
**concluded** 40:4
**condominium** 8:22
**conduct** 10:25 21:21 22:8
**conference** 3:1 5:23 6:21
**confirm** 9:13 12:4,23 14:10
**confirmation** 14:2
**confirms** 11:20
**conflict** 15:18 15:22 16:15,18 17:2,5,9
**conform** 9:23
**connection** 21:5 23:7
**consequence** 7:9 20:19
**consequences** 7:7
**consider** 26:16
**considerations** 11:3
**considering** 31:25
**constitutes** 27:10
**contested** 30:19
**context** 37:6,23
**contract** 8:13 8:20 9:15 19:10 26:11,11 27:1
**contrary** 37:16
**control** 8:13 17:23
**controlled** 11:24
**controls** 9:19
**convenience** 34:10

**conversion** 12:21
**convince** 32:14 34:23 36:21
**corporate** 10:24 14:12
**corporation** 11:2
**corporations** 10:24 15:8 17:13,24
**correct** 20:23 27:19
**counsel** 7:5,5 9:7,13 12:13 12:13 19:1 22:24 32:20
**country** 41:21
**couple** 19:9,22
**course** 9:12,19 12:1 14:3 26:8 38:1
**court** 1:1 2:1 5:2,3,18,21 7:13 8:9,17 9:21 11:8,15 12:13,17 14:21 14:24 19:20 20:4,21 21:25 22:12,23 23:16 24:21 25:4,6 26:6,7 27:3,12 27:13,15,20,24 28:2,3,12,23,25 29:1,5,11 31:20,22 32:10 32:18,23 33:4 33:7,17,18,23 33:25 34:5,12 34:16 36:9,11 36:21 39:25 40:1
**court's** 10:17 32:5
**courts** 20:5
**coverage** 10:4 21:12
**cplr** 29:4
**crafting** 32:1
**creditor** 13:4
**creditors** 12:23
**cross** 36:4
**crystal** 25:25
**currently** 8:11

**d**

**d** 5:1
**damages** 20:7 22:17 27:1,2
**dana** 1:18
**date** 7:4,22,25 8:2,3 13:8 20:3 26:21 35:13 36:13 41:25
**day** 7:23 30:16 30:19 35:3 36:21 40:1
**days** 30:14 36:6 36:14,15
**dc** 35:19
**deadline** 12:15
**deal** 28:9
**dealt** 31:23
**debtor** 1:10,12 1:13 4:4 5:11 5:11 6:3 8:9,24 9:9,16,17,18,22 10:5,13,15,20 10:25 11:2,2,5 11:10,11,12,18 11:18,24,25 12:3,9,12,18,22 12:22 13:5,25 14:7,15 15:5,6 15:6,9,12 16:9 16:10,14 17:13 17:14,15,15 18:14 20:11,13 22:18 23:20,21 23:21,22,23
**debtor's** 7:17 9:4,13 10:3,4,8 10:11,15,16,18 10:25 11:9,13 12:1 13:23 14:9,18 15:2,3 15:9 16:16 19:7 20:19 21:23
**debtors** 13:1 14:12 32:6
**debts** 17:21
**decide** 16:11 31:2
**decided** 6:18 26:8
**decides** 16:8
**decisions** 10:6
**declarations** 9:2
**declaratory** 23:3,4,9
**deemed** 27:7
**deep** 22:24
**default** 7:1,1,7 7:9,12,19 8:5,5 12:14 14:22 20:2 22:21 23:3 24:14 25:18 26:8,19 26:25 27:11,17 27:21,22 28:3 28:5,6
**defaulting** 27:10
**defaults** 6:8,17 27:17
**defendant** 5:14 5:15 8:11,12 8:20
**defendants** 1:21 5:16 7:11 7:22,24 8:8,13 8:19 9:15,25 10:1,3,12

11:25 27:1
**definitely** 15:6
**delay** 31:6
**depending** 28:10
**deposited** 21:14
**describing** 20:23
**designed** 8:14 11:6
**determine** 16:13 17:25 28:7 34:17 37:20
**determined** 15:18,25 21:2 21:13 22:7 26:6
**determining** 15:17,17 37:7 37:23
**diego** 30:17
**difference** 34:12 36:15
**different** 14:25 18:24,25 27:16 28:14 35:24
**difficult** 6:1 31:24
**direct** 29:7
**directly** 6:11 15:7 17:14 18:4,12 19:8 22:1,3 24:3,19 24:19
**discharge** 9:19 9:23
**disclosure** 10:21
**discretion** 29:6 29:7,8,9
**dismissal** 12:21
**disposable** 13:6
**disproved** 24:8
**dispute** 20:12 20:14 21:20 23:18,25 24:9
**disputes** 23:24
**disrespect** 23:20
**disrespectfully** 37:12
**dissent** 12:23
**distinct** 8:4
**district** 1:2
**documentation** 16:25
**documents** 39:11
**doing** 13:10 16:6 26:2 30:17,21 38:21 39:5
**dollar** 23:14,16 28:10
**dollars** 18:5 39:2
**dominion** 8:13
**don't** 33:21 35:15
**doubt** 33:17
**draft** 12:15
**due** 26:8

**e**

**e** 2:21,21 4:1,1 5:1,1 41:1
**earlier** 26:24
**early** 7:2
**earnings** 10:8 13:23 21:10
**earth** 6:7
**easier** 34:25
**economic** 20:19
**ecro** 2:25
**effect** 26:9
**efforts** 13:18
**either** 6:4 15:19 16:21 17:3,18 18:1,3 19:5 31:1,2
**eliminate** 10:19
**emergency** 6:1 6:2
**enhanced** 23:12
**enhances** 22:20
**enjoined** 11:1
**enjoining** 14:11 31:13
**enormous** 29:5
**enter** 6:15 20:6 27:3 36:12 39:20
**entered** 18:19 20:2 26:19
**enters** 28:14
**entirely** 17:4
**entities** 4:12 5:17 9:16,16 10:12,14 11:5 11:9,13,24 13:17 14:4,17 17:13 18:17,24 19:9 20:11 21:15 22:18,23 24:12,16 25:12 26:9,10 29:16 29:19,19 30:1 31:15 32:2,9 32:12,15,16,19 33:1 34:19,20 36:19 37:16,17 37:18 38:8,14 39:8,14,17
**entity** 15:3,19 17:3,6 18:20 21:18 24:4 32:2 33:10 38:16 39:5,10 39:13
**entity's** 39:9
**equal** 13:5

**equity** 10:14 18:5,20 33:10
**eroded** 29:20
**especially** 14:11 34:6
**establish** 9:21
**estate** 1:17 5:7 5:15 6:11 8:7 9:14,24,24 10:1,9,16 11:21 12:24 14:7 19:7 20:20 21:7,7,7 21:23 22:19,21 23:11,23 24:17 24:18 25:5,17 25:18 29:17 34:24
**everybody** 19:11 31:13 33:15 39:25
**everybody's** 34:10
**evidence** 16:22 24:7 34:21 37:2,20,21 38:6 39:12
**evidentiary** 35:16 36:3,22
**examined** 36:4
**example** 15:15 15:25 16:14 33:10
**exceedingly** 9:10
**executives** 10:24 14:12
**exercised** 8:12
**exist** 16:3,5 36:20
**exit** 13:23
**expect** 12:16 34:6 36:22
**expertise** 29:3
**explain** 27:15
**explaining** 27:24
**expressed** 38:10
**extend** 7:11 23:20
**extended** 18:8
**extension** 12:8
**extensions** 12:7

**f**

**f** 2:21 41:1
**facie** 24:7
**fact** 22:19 25:12 29:6,8 29:21
**facts** 20:15 37:4,5
**fair** 35:15
**fairness** 20:22 21:8
**fall** 19:10
**falls** 14:25
**family** 11:13
**far** 20:10 30:4 32:5 34:18
**federal** 20:4 27:13 35:24
**feel** 33:8
**fees** 13:9,12,13 13:19 14:1 23:7
**figure** 18:9,15 24:24 29:24 35:9
**file** 17:20 38:22
**filed** 7:6 12:16 21:11
**files** 17:19
**filing** 7:17 10:18 13:8
**financing** 13:24
**find** 28:19
**fine** 36:10
**firm** 8:19 9:9 12:11 26:13
**firm's** 7:5 8:23 9:1 12:11 13:12 14:1
**first** 8:10 11:4 13:17 22:15 24:24 26:25 30:22 31:16
**five** 13:6,8
**floodgates** 11:16
**floor** 4:6,21
**flow** 22:17,19
**focal** 8:17
**focuses** 32:12
**focusing** 23:17
**following** 30:22
**foreclosure** 26:2
**foregoing** 41:3
**forum** 25:1
**forward** 9:9 14:9
**fraudulent** 23:7
**fresh** 11:19
**friday** 5:24 35:19
**frome** 4:11 5:14
**front** 13:16 18:14 20:25 21:2,3,6,24 22:2 25:22
**full** 12:24 13:7 13:14 29:15,23 30:17 31:10,12 32:3,4,13 34:9 34:14 36:22
**fully** 20:4
**further** 7:4,10 7:23

**g**

**g** 2:22 5:1
**generally** 19:25
**getting** 17:3,6 25:23 38:24
**giant** 35:6
**give** 14:13 17:8 34:14 36:16
**given** 6:17 8:18 16:4 33:17
**gives** 34:8
**giving** 16:14,17
**glynn** 4:3 5:10 7:11 8:8,19 9:25 10:2,12 11:11,25 12:6 12:9,10,12,17
**glynn's** 12:13
**go** 5:3 7:20 9:9 14:9 23:17 33:19 36:11 39:20
**goes** 26:9 28:16
**going** 5:3 11:15 18:9 19:20 20:8 24:15 25:5,17,17 26:15 27:14 28:16 29:15,23 29:24,25 30:2 30:12 31:3,3,6 31:10,12 33:6 35:5,11,21 36:11,14,16 37:1,19,22 38:3,5
**good** 5:2,9,13 5:19 16:22,24 19:14 25:20 37:14,15 38:7 38:7 39:25
**government** 35:24
**grant** 7:13 25:24 28:6
**great** 1:16 22:24 30:10
**greater** 38:15
**green** 2:2
**griffin** 1:19
**guarantee** 8:18 9:3,12 11:11 13:15 14:2,3 16:1,4 28:19
**guaranteed** 13:20
**guess** 5:25 30:6

**h**

**half** 37:25
**happen** 17:22 18:9 19:24,24 19:24 20:9 24:13 26:24 27:5,16 28:18 28:20 30:12
**happened** 6:18 25:8 27:17
**happening** 6:8 17:11 35:6
**happens** 8:3 26:20,22 27:25 28:2
**happy** 19:18
**hard** 17:17 18:22 20:7 33:8
**harm** 8:7 9:14 9:24 10:1 20:1 26:16 36:23
**head** 19:17 37:23
**hear** 15:1 33:11
**heard** 19:23
**hearing** 3:1 6:13 9:5 28:9 29:15,23 30:15 30:17,20 31:11 31:12 32:3,5 32:14 34:9 35:2,5 36:4
**hearings** 8:25 30:8,21,23
**heart** 11:23 14:4
**held** 8:25
**help** 38:16
**helpful** 19:21
**highly** 39:3
**hire** 22:23
**historically** 10:3
**hit** 19:17
**holding** 35:14
**holdings** 1:17 5:8,15
**home** 35:19
**hon** 2:22
**honestly** 29:25
**honor** 5:9,13 6:24 7:12 8:1 8:18,25 10:23 11:21 14:6 19:14,15,16,17 19:18,20 20:10 20:10 22:9,16 23:1,12 26:23 27:7,9 28:24 31:16,25,25 32:11,22,25 33:14,15,21 34:2,8,14 36:7 39:23,24 40:2
**honor's** 32:7
**hook** 38:14
**hope** 39:25
**hosinski** 4:3 5:10
**house** 15:4 18:4 18:6 21:18 24:2 38:20
**hundreds** 39:1

**hyde** 3:25 41:3 41:9

**i**

**identical** 22:1
**identify** 5:6
**identity** 11:22 12:2
**immediate** 20:19 36:23
**imminent** 19:25
**impact** 19:7 21:23 22:5 24:23 25:17,17 25:21 37:8,9
**impacted** 25:5
**impacting** 26:5
**impacts** 6:11 17:18 21:24 25:19,21
**implicate** 21:5
**important** 22:11
**improper** 8:15 11:7
**improperly** 18:1
**inclination** 32:12
**including** 9:3 10:4 11:19 25:8
**income** 13:6
**indebted** 9:15
**indirectly** 15:7 15:12 21:23 22:4 23:22
**individual** 9:11 11:3 12:22 13:1 14:14 18:14,16
**information** 37:14
**informed** 12:16
**initial** 32:12
**injunction** 34:23 37:2 38:5
**inquest** 20:6 27:2 28:9,16 28:17,18,19,20 29:7
**insider** 8:14 11:6
**insurance** 1:16 10:4 13:20 21:12 38:24
**insurmounta...** 14:1
**intended** 18:25
**intentional** 30:11
**interest** 11:22 12:2 13:2 14:8 14:16 15:2,3,7 15:10 20:12,13 20:14 23:9,10 23:12,24 24:17
**interests** 21:15
**interferes** 13:18
**interfering** 14:8,18
**interpleader** 21:14
**invalidate** 9:11
**invalided** 14:3
**involve** 22:3 37:1
**involves** 21:15 21:25 22:2
**involving** 10:23 24:18
**irreparable** 7:15 8:6 29:10 36:23
**issue** 6:12,20 15:13,24 16:7 18:19 21:15 22:15 23:11 27:21 31:4 32:5 33:2,2,5 36:24 37:25 38:23
**issues** 6:14 16:13 19:18,19 20:21 24:2 37:9
**iv** 23:9

**j**

**jared** 1:18
**jeffrey** 1:8,12 5:11 8:10
**john** 1:20
**jointly** 10:22
**jonathan** 4:16 5:14
**jpmorgan** 18:7
**judge** 2:23 5:2 29:5
**judgment** 7:1,1 7:7,9,19 12:14 14:22 18:19 19:6 20:2,8 22:21 23:1,3,3 23:4,6,6,8,9,14 23:15,16 25:18 26:8,19,25 27:3 28:4,5,6 34:7
**julie** 4:24 5:19
**june** 7:18
**justice** 10:6

**k**

**k** 38:23
**kind** 6:6 12:7 21:19
**knew** 19:1
**know** 8:2,25 11:23 17:18 18:13 20:22 21:22 23:24

27:12,24 29:14 29:21 30:18 32:6,20,20,23 33:7,12 34:25 35:6,11
**knows** 20:5
**koevary** 4:16 5:13,14,22,24 7:8 19:13,14 22:9,13,25 23:1,17 26:23 27:6,19,23 28:1,13 29:13 31:6,16,21 34:6,11 35:14 35:15 36:7,13 38:9 39:23 40:2
**koevary's** 7:16 12:6,20
**kurman** 1:19 4:18,19 5:20 5:20

**l**

**lack** 9:25 33:2 33:2,5
**law** 14:11,11 16:12,13,19 36:20
**laws** 16:3
**lawsuit** 9:11 11:8
**lawsuits** 11:13
**lawyer** 16:8
**leaves** 13:10
**ledanski** 3:25 41:3,9
**legal** 18:24 19:9 23:7 41:20
**legally** 25:9 38:13
**letter** 5:24 7:8 7:16 12:6,20
**levine** 4:24 5:19 5:19
**lgb** 1:3,4
**liabilities** 29:18
**liability** 7:10 7:14 8:6 14:23 20:21 21:4,20 22:6,7 23:18 26:20 27:4 39:10,10,17
**liable** 17:21 39:11,12
**likelihood** 36:25 37:2,7 37:24 38:4 39:18
**likely** 15:18 16:25 26:24 28:20
**limited** 30:23 35:1
**limits** 30:6
**liquidation** 13:4
**lisa** 2:22
**list** 21:16
**listening** 9:5
**litigation** 21:1 21:24 24:15,21 24:21,25 25:21
**little** 19:19
**llc** 1:17 5:8,15 8:21,21 18:3 23:4 38:20,22
**llp** 1:18,19 4:3 4:11
**long** 20:5
**look** 14:10 16:2 25:11,13,16 32:11 33:14,21 34:2
**lot** 7:20 9:1 16:24 18:7 19:23,23 20:23 33:10 34:12,19 37:4,12,14,15 37:15,16
**luck** 31:18

**m**

**made** 7:2 9:18 21:9,10,11 33:18
**madison** 4:20
**make** 6:15 8:15 10:2 25:14
**makes** 31:5 35:13 36:15
**making** 7:17 12:9
**married** 8:12 11:25 17:19
**matter** 1:6 21:6 25:15 30:1
**matters** 21:6 25:16 26:5 31:9
**mays** 19:23
**mean** 12:6 23:23 25:7 29:7,8 34:18 37:19 38:18 39:9
**means** 7:15 13:3 16:15 20:4
**meant** 37:12,13
**mega** 30:19 35:6
**member** 12:10
**members** 11:14
**mentioned** 26:24
**merits** 24:24 36:25 37:3,8 37:24 38:4 39:19

**met** 23:13
**million** 18:5
**mind** 34:25
**mineola** 41:23
**minute** 35:22
**minutes** 35:23
**missed** 7:23
**missing** 37:18
**moment** 35:10
**monday** 2:5
**money** 23:5,6 24:14 28:7 38:18
**month** 13:12,21
**months** 20:1 26:25 28:21 34:7
**mortgage** 8:18 9:3,12 11:12 12:11 13:15,20 14:3,4 16:1,4,8 16:9,10,15,16 16:17 17:3,8
**motion** 6:25 7:1 7:14,18 10:1 12:8,14
**motions** 31:23
**move** 7:11 28:3
**muffly** 4:3 5:10
**multiple** 25:22 33:9

**n**

**n** 4:1 5:1 41:1
**nail** 19:17
**name** 14:16
**ncbj** 30:18 31:19 32:7 35:3
**necessarily** 30:8 37:19
**need** 32:6 35:9 35:13 37:11
**negotiated** 7:5
**neither** 29:1
**nevertheless** 35:21 36:20
**new** 1:2 2:3 4:7 4:14,22 6:9,19 30:7
**night** 35:20
**non** 7:11 8:8,11 8:19 9:25 10:2 10:12 11:25 16:10 22:17 26:11
**nope** 29:1
**normal** 6:6 30:25,25
**note** 37:4
**noting** 35:18
**number** 5:7 22:16 30:8
**ny** 2:3 4:7,14 4:22 41:23

**o**

**o** 2:21 5:1 41:1
**o'clock** 39:21
**oak** 9:19,22
**oak's** 9:18
**objections** 10:21
**objects** 13:5
**obligation** 10:19
**obstacle** 14:1
**obviously** 5:23 6:12,24 9:5,7 11:23 12:10,11 14:7 38:2
**occasioned** 6:25
**occur** 17:22
**october** 7:3,25 8:1 20:3 26:18 30:7,10 34:13 35:2,25 36:6,7 36:10 41:25
**offered** 32:3
**offit** 1:19 4:18 4:19 5:20,20
**oh** 27:7
**okay** 5:18,21 22:12,13 24:1 27:12,21 29:11 29:11 33:12 35:25 36:5 39:25
**old** 41:21
**olshan** 4:11 5:14
**once** 8:3
**open** 11:16
**operate** 39:15
**operates** 39:6
**operating** 39:5
**opportunity** 32:14 34:8,14
**opposition** 12:15
**options** 32:18
**orchestrate** 8:14
**orchestrated** 11:5
**order** 6:15,16 31:25 34:14 36:12 39:21
**organizational** 37:14
**original** 9:2
**originally** 7:2
**ostrow** 4:9 5:9 5:10,22 6:23 6:24 14:24 19:23 21:8 28:23,24 29:4 32:10,11,22,25 33:5,7,14,20,21 33:24 34:2,16 36:9,10 38:11 39:24

**ostrow's** 20:22 26:13,17 38:12
**ought** 14:21,21
**outcome** 12:21
**overlaps** 23:18
**owed** 24:13,13 28:8
**own** 10:15,22 12:12 16:24 17:14 22:23 39:8
**owned** 10:13 11:9 15:5,5,11 15:19,21 16:23 17:4,7 18:2,3,4 18:17 19:2,4 24:3,3,4,5,19 25:25 26:1 29:16 33:11
**owner** 15:16
**ownership** 21:15
**owns** 8:22 15:4 16:22 18:4 21:18 24:4 37:9 38:20

**p**

**p** 4:1,1,9 5:1
**pa** 1:19 4:18,19
**paid** 12:24 13:8 13:13
**papers** 5:23 9:1 10:1 19:16 38:12,12
**paperwork** 37:15,16,18
**paragraph** 8:9
**pardon** 20:23
**park** 4:5 8:21 8:22 23:4,9,10
**part** 16:2,12 17:12 23:3 24:16,18 30:22 38:1,1,4
**particular** 11:8 33:10 34:4 39:17
**parties** 5:4 6:5 6:9,18 16:4 19:7,10 22:2 25:8,19 26:7 31:2,4,10 32:19 33:9 34:21 36:13,16 37:21
**party** 9:6 14:8 14:15 18:21 26:11,12
**passes** 26:21
**pay** 10:10 13:7 13:9
**payment** 13:19
**pending** 21:25 32:3
**people** 15:21 17:19,20 18:5 18:7 36:4
**percent** 18:18 20:14 23:11,24 24:1
**person** 17:19 34:20 35:8 36:3 39:22
**personnel** 9:17
**persons** 18:25
**perspective** 27:15 38:19
**pertinent** 19:18
**petition** 10:8 10:16 13:23
**piece** 26:1
**place** 30:2
**plaintiff** 1:14 5:12 7:6
**plan** 9:14 10:20 11:20 12:4,23 13:2 14:10
**planning** 31:19
**pleading** 28:6
**please** 5:5,8
**pm** 2:6 40:3
**pocket** 22:24
**point** 8:17 9:8 12:19 15:2 17:1 19:6 20:10,22 22:14 24:7,8,22 25:23 26:18,21 26:22 28:8 31:8 37:11
**possession** 1:13 5:12
**possibility** 8:4 35:25
**possible** 14:2 38:13,14 39:3
**possibly** 35:3
**post** 10:8 13:23 21:10
**postpone** 29:8
**potential** 13:22
**potentially** 25:19 29:10,20 32:16
**practitioner** 28:25
**pre** 10:6,15
**preclude** 18:25
**precluded** 17:10
**preliminary** 34:23 37:2 38:5
**pressed** 20:7
**pretty** 30:14
**preventing** 12:3
**prima** 24:7
**priority** 13:7,7
**probably** 26:24 31:6 36:1
**problem** 26:14 30:3,14

**proceeding** 5:12 9:7 13:21 13:22 15:24 21:11
**proceedings** 22:8 25:2 36:12 40:3 41:4
**process** 20:9 28:9
**projected** 13:6
**proof** 9:22 21:21
**proofs** 21:1 22:7 25:1
**properly** 18:1
**property** 6:11 10:9,16 12:24 15:16 16:18 18:2 20:13 22:3 23:23 26:1
**proposal** 33:13 33:20 34:1,3
**prosecute** 12:3 14:19
**protect** 10:19 10:22 11:18
**protections** 11:19
**provide** 9:8 13:5
**provided** 34:18 34:21
**proxies** 8:9
**publicly** 30:7
**pull** 35:9,22
**purpose** 7:7 8:16 10:17
**purposes** 11:7
**pursuant** 15:20
**put** 5:5 26:7 28:4,17

**q**

**queenie** 11:22 20:16,18 23:13 25:24
**question** 24:10 30:6 34:16 35:1
**questions** 22:16 22:18 25:13 29:2 35:12
**quick** 19:22
**quoting** 8:10

**r**

**r** 2:21 4:1 5:1 41:1
**raised** 20:10,22 31:4
**read** 5:23,24 19:16 29:4 35:19
**reading** 38:12 38:12
**real** 1:17 5:7,15 14:8,15
**realistic** 12:21
**realistically** 20:2
**realize** 32:18
**really** 5:25 6:9 6:14 14:7,8,10 14:15 15:11 16:7 18:23 19:4,15 22:24 25:11 26:15,15 36:14 37:1
**reason** 14:17
**reasons** 14:6,20 30:3
**recall** 18:1
**record** 5:5,6 30:4,8 34:17 35:16,18 36:22 37:4 41:4
**recovered** 32:8
**refer** 5:16 8:21
**referred** 8:20
**regarding** 21:20
**regular** 28:24
**regurgitation** 20:24
**relate** 18:15
**related** 6:2 34:24
**relates** 25:18
**relating** 24:15
**relative** 16:17
**remarks** 33:18
**remedies** 26:16 36:20
**remember** 16:6 36:23
**rent** 38:20
**reorganization** 13:18
**represent** 9:9 11:12 15:22 16:16
**representation** 6:18 12:12 19:2
**represented** 9:7 9:13
**representing** 5:11 8:24 15:23 17:5,9
**requirements** 35:24
**requires** 7:13
**resources** 9:25 10:2,4 12:3 33:2,3,5
**respect** 18:17 25:13 29:16,24 30:1 38:22
**respond** 7:17 12:5
**responded** 7:18
**responding** 12:14

**response** 7:21 12:20 29:22
**responses** 19:22 22:9,10
**rest** 12:5 18:22 40:1
**result** 10:5
**retainer** 10:10
**retaining** 12:24 32:20
**retention** 9:1 15:14,24 16:6
**return** 7:25 8:2 8:3 20:3 38:23
**returnable** 7:2
**ride** 35:19
**right** 5:22 17:8 25:1 27:23 28:1,4 35:15 36:11 39:20
**risk** 16:7 19:1 19:25
**risks** 16:11
**road** 41:21
**rudely** 34:18
**rule** 37:6
**ruled** 16:20 21:17
**ruling** 37:5,8
**running** 12:17
**rush** 32:4,6

**s**

**s** 4:1 5:1
**sake** 38:9
**san** 30:17
**satisfy** 13:2
**saying** 16:24 17:11 24:12 25:20 27:17 28:2 32:19 33:12 35:12 39:19
**says** 7:9 8:10 11:4 16:12,19 34:6
**schedule** 6:6,13 6:22 30:6,10 30:24,25 31:5 31:5,6,22 33:13,23,25 35:21
**scheduled** 6:21 28:17
**schedules** 18:18 21:16 24:6
**scheduling** 31:23 33:20
**second** 22:14 22:15 23:17 30:19
**section** 10:9 12:25
**see** 18:16 22:5 25:20 30:2 31:8,10 32:4 32:17 34:4 39:21
**seeing** 18:22,23 19:11,12 22:4
**seek** 27:1
**seeking** 9:21
**seeks** 9:11 23:2
**seem** 6:6,10 14:2 16:25 17:2 25:3 29:5 37:17
**seemed** 6:9 16:20 18:10
**seems** 39:3
**seen** 12:15
**sense** 6:15 25:14 31:5 35:13
**september** 2:5 7:2,2,4,6,19,22
**series** 8:14 11:5
**served** 27:22
**session** 5:3
**set** 7:12 31:5
**several** 28:21
**shattering** 6:7
**shield** 8:15 11:6
**show** 6:16 37:20
**showing** 20:20
**shown** 20:17
**shut** 10:5
**side** 17:1 36:8
**signature** 41:7
**signed** 37:21
**simco** 15:3,16 15:21 17:7,8,9 18:4,10 19:4 20:15 21:17 22:20 23:5,10 23:15,25 24:1 24:3,4 32:2
**simco's** 18:11
**similar** 36:5
**simply** 23:13 27:11 28:16
**simpson** 1:8,12 5:7,11 8:11,12 9:4 12:1 15:19 16:21,23,23 17:4,5,7,23,23 18:12 19:1,3 21:25 22:3,22 23:2,7,8 24:5,6 24:20,20,21 25:9,9,10,25 26:1 32:16 34:19
**simpson's** 18:18 21:7,21 25:10 39:10
**simpsons** 18:3

**single** 39:8
**sit** 20:5 38:19
**situation** 6:21 10:23 31:7
**six** 34:13 35:14
**sixth** 4:21
**skeptical** 39:3
**skepticism** 36:18 38:10,11 39:18
**slots** 35:8
**small** 21:9
**solomon** 1:8,12 5:11
**solutions** 41:20
**somebody** 24:18
**sonya** 3:25 41:3 41:9
**sorry** 15:3 20:20 33:8,24
**sort** 19:25 31:21 34:9,15
**sorted** 34:4
**sought** 23:6,8
**source** 8:23
**sources** 13:19
**southern** 1:2
**speaking** 5:6 31:17
**specifically** 32:1
**spouse** 16:17
**st** 8:21,21 23:4 23:4,10
**stand** 11:7
**standard** 20:16 20:18 23:13
**start** 11:19 36:1
**started** 13:21
**state** 7:13 8:9 8:17 9:21 11:8 12:13 14:20 19:20 24:21 25:6 27:15 28:3,12,25 29:5 31:22 34:5,12
**statement** 10:21
**states** 1:1 2:1 7:10
**status** 5:23 6:20
**stay** 11:18 18:8 30:1 32:3 34:3
**stayed** 34:15
**staying** 32:1,8 36:12
**step** 26:25
**stop** 11:15
**stopped** 8:4 14:21,21
**stuff** 12:5 39:12
**subject** 13:20 21:20
**submitted** 9:1,4 20:4
**success** 36:25 37:3,7,24 38:4
**successful** 33:15
**sue** 16:1
**sued** 8:8 10:15 14:17
**sufficient** 37:20
**suggested** 5:22 15:20
**suggesting** 33:1
**suggests** 7:16
**suite** 41:22
**suits** 10:24 14:11
**supplemental** 9:2
**support** 10:19
**supposed** 10:20 11:17,17 34:17
**sure** 6:9,10 15:11 16:23 19:4 23:20 24:25 25:23 27:14 31:13,14 31:17 33:14 39:16
**surgery** 30:9,23 31:18 33:16
**surprisingly** 16:5

**t**

**t** 4:16 41:1,1
**take** 16:8,8,10 28:21 30:2
**takes** 35:23
**talk** 20:1 33:23 33:25
**talking** 15:8 18:2 36:24,24 38:18 39:4,6,8 39:9
**talks** 12:6
**tax** 13:7 38:22
**tell** 26:17 33:9
**terms** 15:2
**test** 13:3
**testified** 15:10 17:15
**testifying** 36:4
**testimony** 15:20
**thank** 14:23 19:14 39:23,24 40:2
**that's** 33:4
**theory** 20:17
**thing** 12:19 28:20 32:21 36:5 38:11
**things** 15:6,11 17:18 20:24 21:1,2,9 23:18 24:13 25:8

29:8 31:3,16 32:24 35:4 37:3,5,8,13,25 38:10,15,25 39:5,6
**think** 6:19 14:20,24 15:14 15:25 17:10,12 19:16,17 20:1 20:7,14,17,18 21:8 22:10 24:23 25:3 26:8,11,14,15 27:6,7,11 28:14 29:9,12 29:13,14,15,18 29:23,25 30:2 30:5 31:2 32:3 32:13 33:14,21 34:2,8,10,13 35:14,15,17 36:14,18,19 38:19,25
**thinks** 19:20
**thought** 6:20 18:5,6,7,7
**thousands** 39:1
**tie** 18:21
**ties** 18:22
**time** 7:12,20 12:7,8 15:17 16:20 17:17 18:22 35:3
**timing** 6:14,20 19:19 34:5
**today** 5:24 6:16 12:15,17 18:13 35:20 36:12 39:21
**together** 17:23
**took** 19:2
**touch** 23:19,21 23:22
**touches** 23:22
**train** 35:19
**transaction** 11:10
**transactions** 8:14 11:6
**transcribed** 3:25
**transcript** 41:4
**transfer** 23:8
**traveling** 31:19
**trial** 28:10
**tried** 7:21
**tro** 6:13,25 34:22
**true** 18:6,7,8 21:23 33:4,7 38:17 41:4
**trustee** 13:9 18:6
**try** 18:9 36:21
**trying** 6:4,19 34:11,23 38:25
**turned** 15:15
**two** 8:25 18:17 20:11 21:16,16 22:9,10 25:12 30:14,23 31:9 31:10 32:1,5,8 32:12,15

**u**

**u.s.** 2:23 13:9
**ultimately** 11:19 14:9 21:12 22:17 24:8
**under** 10:9 11:22 12:25 20:12,14 25:24 36:20 39:11
**underlying** 11:3 18:20
**undermines** 9:12
**understand** 6:2 6:4,20 17:11 19:9 24:9 27:18 29:11 31:7 32:5,11 32:22,25 36:18
**understanding** 5:25 6:14 17:17 26:17 27:9 28:12,13 28:15,22,23
**undoable** 7:15 8:6 14:22 29:10
**unfortunately** 17:18 31:1
**unit** 8:22
**united** 1:1 2:1
**unknown** 2:25
**unmindful** 24:10
**urgency** 7:16 8:2 29:12 34:5 34:11
**urgent** 6:17 19:5
**used** 9:16 10:10 10:16
**using** 12:7
**utilized** 38:15

**v**

**v** 1:15 5:7
**valid** 15:1
**value** 13:4,5 18:10,12 29:19
**veritext** 41:20
**vicinity** 13:13
**view** 26:22,23 37:10,13
**virtue** 23:11 29:20

**w**

**waiting** 11:14
**walk** 19:19
**want** 12:19 31:18
**wanted** 17:25
**watermill** 20:13 32:2
**way** 6:2 9:5 11:8 20:24 24:18 25:4,20 25:20 27:13 28:11
**ways** 25:22 33:8
**we've** 24:1,2 31:23
**week** 30:22,24 33:18
**weekend** 35:20
**weeks** 34:13 35:14
**wife** 9:4 10:11 10:13,19,22 11:9,10,13 12:1 15:11
**wiggin** 1:18
**willing** 13:25
**win** 23:10
**wings** 11:14
**wish** 31:18
**wishes** 33:15
**wolosky** 4:11 5:14
**word** 20:25 38:16
**work** 9:17 10:20 13:25 27:13 28:11
**worked** 6:5
**works** 28:12 36:7
**worry** 38:24
**wrong** 21:8 26:17 27:9,10

**x**

**x** 1:5,11,22

**y**

**y** 8:12
**yael** 9:4 12:1
**yeah** 24:23 31:20 32:25 33:4
**year** 20:8
**years** 13:6,8
**yj** 15:2,15,21 17:7,8,9 18:4 18:10,11 19:4 20:15 21:17 22:19 23:5,10 23:15,25 24:1 24:3,4 32:2
**york** 1:2 2:3 4:7,14,22

**z**

**zoom** 30:16 35:2