UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>JEFFREY SOLOMON SIMPSON,<br><br>Debtor. | Chapter 11<br><br>Case No. 26- |

## DECLARATION PURSUANT TO LOCAL BANKRUPTCY RULE 1007-2

Jeffrey Solomon Simpson hereby declares under penalty of perjury, pursuant to 28 U.S.C. § 1746(a), as follows:

1. I am the debtor in the within bankruptcy case. I am also a 50% equity holder of YJ Simco LLC ("YJ Simco"), which is currently a chapter 7 debtor in this Court, Case No. 25-10437 (LGB). A motion to dismiss the YJ Simco case is currently scheduled to be heard on March 24, 2026. Through YJ Simco I am also the controlling equity holder of JJ Arch LLC ("JJ Arch"), the chapter 11 case of which, filed in this Court on March 7, 2024, Case No. 24-10381 (JPM), was dismissed pursuant to a Memorandum Opinion and Order, dated October 11, 2024. As appeal from the dismissal order is pending in the district court, Case No. 24-cv-08649-JAV.

2. I submit this declaration pursuant to Local Bankruptcy Rule 1007-2. I am fully familiar with the facts as stated herein. As will be discussed below, because my access to my own documents was denied to me during the corporate control controversies that are at the heart of my financial difficulties, and not all of these documents have been returned to me, I do not have all the information necessary to present a complete and accurate description of the events set forth herein. The discussion that follows is presented to the best of my knowledge and ability under the circumstances.

3. The circumstances leading to the filing of the petition derive from my interest in and operation of a group of real estate holding and operating companies known as the "Arch Companies." At their peak, the Arch Companies managed or controlled real estate valued in excess of $1 billion across the United States. The Arch Companies are composed of numerous affiliated operating and investment entities, including an operating company and a holding company for each real property. In the aggregate, there were approximately 125,000 third-party investors in the Arch Companies' properties in addition to myself, my family, and other related parties. The structure of the Arch Companies necessarily required me to be a fiduciary for the benefit of all parties and there were provisions that limited AREH's Managing Member role to prevent its benefiting financially for itself or its members without the consent of other parties, except as expressly set forth in the applicable documents.

4. The following is a simplified version of a complex corporate structure for the Arch Companies. In general, the Arch Companies' properties were managed by Arch Real Estate Holdings LLC ("AREH"), as a non-member manager of the separate limited liability companies owning or operating the properties. Prior to the litigation described below, I was the sole person, corporately through JJ Arch, directing the operations of AREH and hence had direct supervision over all the Arch Companies' properties and business affairs.

5. AREH, in turn, had two members, JJ Arch, the managing member had an 80% interest, and 608941 NJ Inc., an investor member, had a 20% interest with a sunset provision after a 5-year exclusivity period. I refer to 608941 NJ Inc. as "Oak," which is subsidiary of 35 Oak Holdings Ltd. ("35 Oak"). In the Arch Companies' business model, Oak's purpose was not managerial. It had only the ability to veto certain major decisions and/or transactions. Its purpose was to provide loan guarantees and seed equity alongside funding provided by me, Jared

Chassen, a minor owner of JJ Arch, our families, and a few key employees. Oak's main benefit was to receive 50% of all property-related profits in return for the contractual obligations it undertook.

6. Oak is a New Jersey corporation with a principal place of business in Toronto, Canada. Its principals are Kevin Wiener, William Wiener, and Michael Weiner. In the corporate structure for each of the Arch Companies' properties, the holding company was owned by JJ Arch or a company controlled by JJ Arch and Oak or an affiliate of Oak or the Weiner family, and the property owner was owned by the holding company and several independent investors. The economics of the Arch Companies, including the distributions of profits, were controlled through a separate company, Arch Property Holdings I ("ARPH I"), which is a party to various operating agreements and of which Oak served as the Class A member, JJ Arch as the Class B member, which is the managing member, and two former key employees, Michelle Miller and Tristan Last, were Class C members. I also permitted a few other key employees to invest from time to time. ARPH I operated in conjunction with JJ Arch to control property-based distributions.

7. From the outset and at all relevant times, I was majority owner of JJ Arch. The minority owner was Mr. Chassen. As discussed below, Mr. Chassen's interest in JJ Arch was initially modified by amendment in 2021 and then divested in 2023, pursuant to the terms of the JJ Arch operating agreement, which I have referred to as both a resignation and a deemed resignation, based on his non-compliance with his financial obligations and his relationship with Oak, which was not permitted by his agreement with JJ Arch, and manifested by his Common Interest, Joint Prosecution and Joint Defense Agreement with 35 Oak, dated August 6, 2023, but made effective *nunc pro tunc* as of August 3, 2023, an agreement I did not see until it was

produced to me in litigation about two years after it was entered into. As discussed below, I also fired him. (The interplay among resignation, deemed resignation, and firing has been the subject of considerable litigation filings, and need not be elaborated in this declaration.) Although I maintained my managerial control of JJ Arch, my ownership interest in JJ Arch was transferred to YJ Simco in 2022. My ownership interests in certain JJ Arch directly owned entities, not related to AREH, in which Mr. Chassen and I had an ownership interests, were also transferred to YJ Simco in 2023.

8. As the relationship with Oak was reaching its contractual sunset, I began the process of establishing myself as the sole future guarantor for AREH's properties. My lawyers, accountants, and internal team helped me start to build up a family office structure using YJ Simco, along with a proposed family trust for the benefit of my wife and children. Given the need to have a bankable balance sheet for institutional lenders' financial requirements, I started purchasing properties directly with my wife and through JJ Arch.

9. Starting in late 2022, owing to financial turmoil in the global real estate investment and lending markets due to high inflation and interest rate growth, and coincidentally as Oak's period of exclusivity was ending, substantial disagreement developed among the major players in the Arch Companies. In particular, I took part in a presentation to Oak that demonstrated significant future capital needs which Oak would be required to fund pursuant to its agreements and loan guarantee obligations. Despite its contractual obligations, Oak refused to provide the required funding. I spent six months working with outside counsel, Y. David Scharf of Morrison Cohen, my internal team, and separate lender and investor groups trying to find solutions for Oak's unwillingness to fund. By mid-2023, the lack of funding of equity caused a lack of lender fundings. Oak nevertheless demanded that the projects continue, and this

resulted in $25 million of unpaid obligations across the AREH portfolio within 90 days. I also worked with an outside corporate attorney, Len Breslow of Breslow & Walker, who suggested that the only options for AREH were to source a new partner, dissolve, or to file for bankruptcy. I hired a broker to explore the first two options. Oak was aware of this, and I believe that Oak worked to sabotage the broker's efforts.

10. As a result, I proposed exploring a possible bankruptcy filing of AREH and related entities. Since I could not come to terms with Oak, Oak gave me two options: (1) Give the keys to the properties back to their respective lenders to allow Oak to seek guarantee relief; and (2) Oak would borrow funds, but I had to change the distribution waterfall on the properties to Oak's benefit (and to the detriment of the independent investors), a change that was prohibited by the relevant documents. In mid-July 2023, Oak decided that it would push me out of the Arch Companies and use Mr. Chassen to implement this plan, a maneuver that would result in substantial defaults under the lender and investor agreements. This caused an immediate conflict between Mr. Chassen and me. Mr. Chassen refused my request to say "no" to Oak, and I fired him, because I felt I had no choice. Oak's principals resisted the bankruptcy filings for AREH and related entities because they believed that bankruptcy filings would trigger numerous corporate and personal guarantees they had issued in connection with the Arch Companies' properties. Subsequently, 35 Oak and Mr. Chassen entered into the Common Interest, Joint Prosecution and Joint Defense Agreement, described above, to allow their attorneys to share confidential attorney-client matter because they determined that their economic interests were aligned and contrary to mine. Litigation over the control of the Arch Companies eventually ensued. Some, but not all, of this litigation and the activities in the litigation will be described below.

11. After I fired Mr. Chassen on August 5, 2023, in furtherance of his plan with Oak, he took several unauthorized actions against me in connection with the Arch Companies. In particular, he misled a banking institution into removing my access to the bank accounts of AREH, JJ Arch, YJ Simco, and affiliated companies, and amazingly, the accounts belonging to me and my family, at First Republic Bank, he misled an information technology consultant into removing my access to company email and electronic records, and he arranged to deactivate my physical access to the Arch Companies' office.

12. Oak initiated litigation against me in the District Court for the Southern District of New York on August 10, 2023, alleging, among other things, breach of fiduciary duties, tortious interference with prospective business advantage, and defamation, This case was later withdrawn by Oak, approximately six months after it was commenced.

13. On August 14, 2023, I commenced an action individually and derivatively as managing member of JJ Arch, and in turn, derivatively as managing member of AREH against Mr. Chassen and First Republic Bank in the Supreme Court of the State of New York County of New York, Index No. 158055/2023 (the "158055 Action"), which sought to restore my access to the Arch Companies' accounts and re-establish my control over AREH. Oak was not named in this action, although it later intervened. I came to learn that Oak had funded Mr. Chassen's legal fees in this action, in excess of $250,000 to start.

14. After I achieved some initial success in the 158055 Action in restoring my access and managerial rights, Oak intervened and sought the temporary appointment of a receiver and a preliminary injunction to be installed as the managing member of AREH, while continuing to resist its obligations to fund the Arch Companies and continuing to make threats against me when I pressed the possibility of an AREH bankruptcy petition. Even though Mr. Chassen

admitted to his "self-help" initiatives, the state court allowed him back in the business and enjoined me from removing him. Oak ultimately persuaded Justice Joel M. Cohen of the state court to issue a preliminary injunction to install Oak as the managing member of AREH and enjoined me from engaging in managerial activities for AREH. The results of Oak's management of AREH have been catastrophic. Bills have gone unpaid and Arch Companies' properties have gone into foreclosure or been disposed of through deeds in lieu of foreclosure, engineered by Oak in exchange for guarantee relief, transactions prohibited by the relevant agreements in the absence of consent from investors as well as from me in my capacity as the representative of the managing member of the relevant entities in the corporate structure. Moreover, notwithstanding the corporate structure described above, Oak, acting through Mr. Chassen, purported to exercise rights belonging to JJ Arch and its affiliates, including taking actions that require the consent of JJ Arch or its affiliates, which could only have been supplied by me. Independent investors have lost significant money and have threatened actions, including against me. JJ Arch and its own third-party investors also lost significant money.

15. In an effort to preserve the value of JJ Arch and the possibility of an overall restructuring of the Arch Companies, as the managing member of JJ Arch, I authorized and directed the filing of JJ Arch's voluntary chapter 11 filing on March 7, 2024, initially as a subchapter V case, but later amended to remove the subchapter V designation. I also authorized the removal of the 158055 Action in the JJ Arch bankruptcy case. Unfortunately, these efforts were not successful. On June 10, 2024, Judge Mastando issued proposed findings of facts and conclusions of law to the district court to recommend the remand of the 158055 Action to determine the corporate control disputes between Mr. Chassen and me, and also issued an order granting motions filed by AREH (as controlled by Oak) and Mr. Chassen confirming that the

automatic stay did not apply to certain corporate governance disputes or alternatively, lifting the automatic stay regarding certain corporate governance disputes, conditioned upon the district court's ruling on remand motion. The district court did not reach the merits of the remand motion, because on October 11, 2024, Judge Mastando issued a Memorandum Opinion and Order on Jared Chassen and ARCH Holdings LLC's Joint Motion to Dismiss the Chapter 11 Case for the Debtor's failure to Comply with its Obligations, which dismissed the JJ Arch chapter 11 case and, as a consequence, also dismissed all pending adversary proceedings in the case. An appeal of the dismissal order in the JJ Arch case is pending in the district court. On December 2, 2025, Judge Mastando denied JJ Arch's motion for an indicative ruling for relief from the dismissal order.

16. Also in 2024, the liability insurance policy issued by Great American Insurance Company ("GAIC") to AREH with a $3 million aggregate limit and as to which I am an insured person, because of my role in AREH and its operating entities, became the subject of litigation in state court. GAIC had funded the defense of claims against me, which included attorneys that I had hired to represent myself, JJ Arch, AREH (when it was under my control), and YJ Simco. After AREH sued GAIC to prevent the payment of fees to JJ Arch's counsel and Mr. Chassen made claims for coverage under the GAIC policy, on June 25, 2024, GAIC instituted an interpleader action against AREH, Mr. Chassen, the JJ Arch lawyers, and me in the Supreme Court of the State of New York, County of New York, Index No. 653208/2024 (the "Interpleader Action"). That action is pending before Justice Cohen. According to the complaint in the Interpleader Action, after the advance of costs on my behalf, the remaining aggregate coverage limit in the policy was in excess of $2.1 million.

17. In the 158055 Action back before Justice Cohen, on March 8, 2025, the state court granted the motion of Mr. Chassen to appoint a receiver, and by Order Appointing Temporary Receiver, dated March 11, 2025, appointed Eric Huebscher, who had served as the subchapter V trustee of JJ Arch while the subchapter V designation was in effect, as the Receiver over certain specific entities controlled by JJ Arch (the "JJ Arch Controlled Entities") and certain specific real properties and one business assets (the "JJ Arch Controlled Properties"). In this order, the Receiver was given authority to "manage, rent, lease, sell or develop the JJ Arch Controlled Properties, and take any other steps reasonably necessary to maximize the remaining equity belonging to the JJ Arch Controlled Entities." Unfortunately, the Receiver's use of this authority to dispose of assets has also in a significant loss of value to both Independent Investors, and ultimately, through the corporate structure to me. Actions currently proposed to be taken by the Receiver threaten to cause substantial diminution in value and an increase in my personal liabilities. One such action, the closing down of an operating vintage auto dealer business, Rever Motors, on property that was thereafter zoned to prohibit such use (with the existing use grandfathered), would have the effect of diminishing the value of the property for resale, because the existing use would lapse. My indirect equity in the property, through the corporate structure, would be lost, and I would be exposed to increased liabilities, because the property's value, once it becomes subject to the zoning restrictions, may be less than the amount of the mortgage debt.

18. On March 9, 2025, YJ Simco filed its chapter 11 petition. Although my wife and I authorized the petition to be filed, the petition was signed by David Goldwasser as chief restructuring officer, and I was not offered a review of the schedules and statement of financial affairs signed by Mr. Goldwasser before they were filed. I believe these documents contained errors, and so informed Mr. Goldwasser and counsel for YJ Simco, who was selected by Mr.

Goldwasser, but they refused to change the schedules. After the case was converted to chapter 7, I supplied to Judge Beckerman what I believe contained a more accurate description of the assets of YJ Simco. On May 14, 2025, Judge Beckerman granted the motion of the United States Trustee to extend of converting the YJ Simco case to chapter 7. On May 15, 2025, Gregory Messer was appointed as chapter 7 trustee, and he thereafter hired the firm of LaMonica Herbst & Maniscalco LLP as his counsel. In response to the motion of the lender on the two properties listed in the Debtor's schedules signed by Mr. Goldwasser, the YJ Simco trustee abandoned such properties. On December 15, 2025, the YJ Simco trustee, through his counsel, filed a status report, which discussed the trustee's investigative activities in the case and, despite my encouraging the trustee to pursue further investigations and litigation claims on behalf of YJ Simco, the trustee recommended dismissal of the case. On January 15, 2026, the YJ Simco trustee filed a motion to dismiss the case, which is currently scheduled to be heard on March 24, 2026. I have requested certain relief that is inconsistent with the dismissal of the case, and my requests are currently scheduled to be heard on March 10, 2026.

19. Since I was removed from my position of control of the Arch Companies, I have not had the substantial income that I previously enjoyed. I have been earning a small amount of income as the sole proprietor of a business restoring classic automobiles, a business different from Rever Motors, the one described above that is under the control of the Receiver. What was once a hobby is currently my sole and substantially diminished source of income. The actions described above have destroyed my reputation as a real estate investor and developer that I had worked hard to achieve for more than 20 years.

20. I have filed this chapter 11 case, because since my removal from control of the Arch Companies, I have been subjected to a substantial amount of litigation, which is increasing

due to the activities of AREH, as controlled by Oak, and the Receiver, because of the assertion of claims against me by Independent Investors. Personal guarantees that I gave with respect to properties that had substantial value, which is now being undermined by the activities of AREH and the Receiver, are in danger of being called. To the greatest extent possible, I seek a centralization of this litigation and a breathing spell offered by the automatic stay. I emphasize that despite the installation of Oak in control of AREH and the Receiver in control of JJ Arch properties, there has never been a final adjudication on the merits of my rights and claims. The installation of Oak was pursuant to a preliminary injunction. The order appointing the Receiver is styled "Order Appointing Temporary Receiver." I have not had the opportunity to conduct depositions of the principals of Oak or of Mr. Chassen to refute the allegations that they have made in multiple lawsuits. Because of the litigation against GAIC and the Interpleader Action, I have lost the ability to retain counsel to defend me through the insurance I initially procured as the manager of AREH for that purpose. I believe that a chapter 11 filing will not only provide me the opportunity for a fresh start, it will provide a vehicle for the maximization of value of my direct and indirect interests in property for the benefit of my real creditors through a confirmable chapter 11 plan.

21. I am filing my bankruptcy case originally under chapter 11. There is no prior case under any other chapter in which I am the debtor. There is also no committee of which I am aware that was formed prior to the order for relief under chapter 11.

22. The list of my 20 largest creditors is being filed contemporaneously with the filing of the chapter 11 petition.

23. I have no secured creditors.

24. A summary of my assets and liabilities is as follows. As discussed above, my principal assets are my equity through YJ Simco and otherwise in various entities that own or operate real property. My interest in the GAIC D&O insurance policy, discussed above, is another significant asset. In addition, I own building tools, equipment, machinery, automobiles in inventory for business purposes, and auto parts for my business of restoring classic automobiles, and some of which are on the premises of 1640 Motors LLC in the custody of the Receiver. I have a bank account and own household furnishings, clothing, and personal items of jewelry. I have potential claims against Oak, AREH, Mr. Chassen, and others relating to their conduct in removing me from the Arch Companies and otherwise damaging my reputation and other business interests. I also have potential damage claims against First Republic Bank or its successor-in-interest for denying me access to my bank accounts, and against GAIC for denying me insurance coverage. My liabilities are principally guarantees issued during my tenure at the Arch Companies' business and in connection with other real property investments, including those for entities that own the residences that I occupy with my wife. In the litigation described above, Oak, AREH, Mr. Chassen, and others have asserted claims against me, which are contingent, unliquidated, and above all, disputed.

25. The following is a summary of my property in the possession or custody of any custodian: As described above, I was denied access to my electronic records in the possession of the Arch Companies. Although I have received access to many of my records, I believe there are electronic records of mine that have not been returned to me, but may be in the custody of persons installed at AREH or JJ Arch, pursuant to orders of the state court in the 158055 Action, including Oak and the Receiver. Some of these records may have been shared with the YJ Simco trustee and his counsel. In addition, the Receiver has custody of items of personal

property belonging to me that were on the premises of Rever Motors, from which I have been excluded, including machinery, automobiles, tools, and possibly, intellectual property.

26. The location of my substantial assets is New York State. The location of my books and records is New York City. Other than the possibility that records of mine may be in the possession of Oak in Canada, I have no assets outside the territorial limits of the United States.

27. A list of the actions and proceedings where a judgment against me or a seizure of my property is imminent is attached as Exhibit A.

28. I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 19, 2026

Jeffrey Solomon Simpson

**Exhibit A**

**Litigation**

| | Case Title | Nature of this case | Court or agency | Status |
|---|---|---|---|---|
| 1. | Simpson v. Chassen et al<br>Case Number: 158055-2023 | Control over Arch Companies<br>In defense of 1:23-cv-07089<br>in SDNY | NYS Supreme Court Part 3<br>60 Centre Street<br>New York, NY 10017 | Pending<br>Receiver<br>Appointed |
| 2. | Simpson v. Chassen<br>Case Number: 25-CV-04004 | Removed version of item 1 | New York Southern District Court<br>500 Pearl Street<br>New York, NY 10017 | Sanctions<br>Judgment<br>On Appeal |
| 3. | Great American Insurance Company vs. Arch Real Estate Holdings, LLC et al<br>Case Number: 653208-2024 | D&O insurance of Debtor was halted because of competing claims, filed Interpleader | NYS Supreme Court Part 3<br>60 Centre Street<br>New York, NY 10017 | Pending |
| 4. | Nicholas Gao et al v.<br>Jeffrey Simpson<br>Case Number: 100897/2025 | L/T Dispute | New York County Supreme Court<br>60 Centre Street<br>New York, NY 10017 | Pending |
| 5. | 146 89 Street Funding LLC<br>v. 146 E 89 Borrower 1 LLC et al<br>Case Number: 850010/2024 | Real property mortgage F/C action<br>Debtor has personal gaurantee | New York County Supreme Court<br>60 Centre Street<br>New York, NY 10017 | Active |
| 6. | JPMorgan Chase Bank,<br>National Association v. 1055 Park Ave<br>4 LLC et al<br>Case Number: 850253/2025 | Real property mortgage F/C action<br>Debtor has personal gaurantee<br>Debtor in occupancy | New York County Supreme Court<br>60 Centre Street<br>New York, NY 10017 | Active |

| | | | |
|---|---|---|---|
| 7. Watermill Capital Holdings LLC v. 1640 Montauk LLC et al<br>Case Number: 623575/2024 | Real property mortgage F/C action<br>1640 Montauk Hwy, Water Mill, NY | Suffolk County Supreme Court<br>1 Court Street<br>Riverhead, NY 11901 | Active |
| 8. New York 555 LLC v. 1055 Park Ave 1 LLC et al<br>Case Number: 1:25-cv-01687 | Creditor dispute of UCC F/C | New York Southern District Court<br>500 Pearl Street<br>New York, NY 10017 | Active |
| 9. New York 555 LLC v. 1055 Park Ave PH LLC et al<br>Case Number: 1:25-cv-01823 | Creditor dispute of UCC F/C | New York Southern District Court<br>500 Pearl Street<br>New York, NY 10017 | Active |
| 10. Nextgear Capital Inc. v. Jeffrey S. Simpson<br>Case Number: 29D03-2512-PL-013931 | PG action against Debtor as a result of Receiver action at 1640 Motors | Hamilton County Courts<br>1 Hamilton County Square<br>Suite 313<br>Noblesville, IN 46060 | |
| 11. JP Morgan Chase v. 266 WMTR LLC<br>Case Number: 623340/2024 | Real property mortgage F/C, Debtor is guarantor, named defendant and in occupancy. | Suffolk County Supreme Court<br>1 Court Street<br>Riverhead, NY 11901 | Active |
| 12. JP Morgan Chase v. 1055 Park Ave 4 LLC et al<br>Case Number: 850253/2025 | Real property mortgage F/C, Debtor is guarantor, named defendant and in occupancy. | New York County Supreme Court<br>60 Centre Street<br>New York, NY 10017 | Active |

| | | | | |
|---|---|---|---|---|
| 13. | 146 89 Street Funding LLC v. 146 E 89 Borrower LLC et al. Case Number: 850010/2024 | Real Property Mortgage F/C action related entity, Debtor has PG and named defendant | New York County Supreme Court 60 Centre Street New York, NY 10017 | Active |