**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

--------------------------------------------------------------------X

ARCH REAL ESTATE HOLDINGS LLC, ARCH ASSET MANAGEMENT LLC, and ARCH PROPERTY MANAGEMENT LLC,

Plaintiffs,

– against –

YJ SIMCO LLC, 1055 PARK AVE 1 LLC, 1055 PARK AVE PH LLC, 1055 PARK AVE ST LLC, 1055 PARK AVE 4 LLC, 266 WMTR LLC, YAEL SIMPSON, BECKER, GLYNN, MUFFLY, CHASSIN & HOSINSKI, LLP, and JANE DOES #1 – 10,

Defendants.

--------------------------------------------------------------------X

**MOTION SEQ. 001**

**HON. JOEL M. COHEN, J.S.C.**

**Index No.: 653216/2026**

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT**

FKB Furman Kornfeld & Brennan LLP

*Attorneys for Defendant*
Becker, Glynn, Muffly, Chassin & Hosinski, LLP

Wall Street Plaza
88 Pine Street, 32nd Floor, New York, NY 10005
Tel: 212-867-4100 Fax: 212-867-4118
www.fkblaw.com

Rachel Aghassi <raghassi@fkblaw.com>
Benjamin M. Oxenburg <boxenburg@fkblaw.com>

# TABLE OF CONTENTS

Page

**TABLE OF AUTHORITIES** .......... iii

**INTRODUCTION** .......... 1

**PRELIMINARY STATEMENT** .......... 1

**RELEVANT FACTUAL BACKGROUND** .......... 3

**RELEVANT PROCEDURAL HISTORY** .......... 5

**ARGUMENT** .......... 6

**POINT I:**
**BECKER GLYNN HAS STANDING TO BE HEARD ON THIS MOTION** .......... 6

**POINT II:**
**ENTRY OF ANY DEFAULT MUST BE DEFERRED UNTIL THE CLAIMS AGAINST BECKER GLYNN ARE LITIGATED AND DECIDED** .......... 7

**POINT III:**
**PLAINTIFFS HAVE NOT ESTABLISHED A RIGHT TO THE DECLARATORY RELIEF THEY SEEK, WHICH CANNOT BE ISSUED ON DEFAULT AND PLEADINGS ALONE** .......... 11

**CONCLUSION** .......... 13

**CERTIFICATION OF COMPLIANCE WITH 22 N.Y.C.R.R. §202.8-b** .......... 14

# TABLE OF AUTHORITIES

Page(s)

*Ashley Builders Corp. v. Town of Brookhaven*,
39 A.D.3d 442, 833 N.Y.S.2d 230 (2d Dept. 2007) ....................13

*Chain v. N. E. Freightways, Inc.*,
No. 16-cv3371 (JCM), 2020 WL 7481142 (S.D.N.Y. Dec. 18, 2020)....................8

*Frow v. De La Vega*,
82 U.S. 552 (1872)....................8

*Gannon v. Sadeghian*,
151 A.D.3d 1586, 57 N.Y.S.3d 252 (4th Dept. 2017) ....................8

*JBBNY, LLC v. Dedvukaj*,
171 A.D.3d 898, 98 N.Y.S.3d 221 (2d Dept. 2019) ....................8, 11, 12

*Madera v. New York City Mission Soc.*,
No. 153191/2025, 2025 WL 3619920 (Sup. Ct. N.Y. County Dec. 03, 2025)....................8, 9

*Merchants Ins. Co. of New Hampshire v. Long Island Pet Cemetery, Inc.*,
206 A.D.2d 827, 616 N.Y.S.2d 299 (4th Dept. 1994) ....................8, 11

*Progressive Cas. Ins. Co. v. Castro Hernandez*,
No. 607076/2020, 2021 WL 12443237 (N.Y. Sup. Ct. Aug. 18, 2021)....................8

*Sec. Pac. Nat. Bank v. Evans*,
31 A.D.3d 278, 820 N.Y.S.2d 2 (1st Dept. 2006)....................7

*Society of the Plastics Indus., Inc. v. County of Suffolk,*
77 N.Y.2d 761 (1991) ....................7

*Reger v. GMI Devs. Inc.*,
2025 WL 3440524, 2025 N.Y. Slip Op. 51879(U) (N.Y. Sup. Ct. 2025) ....................9, 10

*Touro Coll. v. Novus Univ. Corp.*,
146 A.D.3d 679, 45 N.Y.S.3d 458 (1st Dept. 2017)....................13

*Woodson v. Mendon Leasing Corp.*,
100 N.Y.2d 62 (2003) ....................11

## STATUTORY LAWS

CPLR §3016(b)....................6

CPLR §3211(a)(1) ....................6

CPLR §3211(a)(7) ....................6

CPLR §3215(d) ....................8, 9

DCL §273(a)(1) ....................1, 5, 10

DCL §273(a)(2) ....................1, 5, 10

DCL §274(a) ....................1, 5, 10

DCL §276-a ....................10, 12

## INTRODUCTION

Defendant BECKER, GLYNN, MUFFLY, CHASSIN & HOSINSKI, LLP ("Becker Glynn") respectfully submits this memorandum of law in opposition to Plaintiffs' motion for default judgment (Dkt. 29, *et seq*.).[1]

## PRELIMINARY STATEMENT[2]

Plaintiffs' motion for default judgment must be denied because it seeks to resolve the precise issue that Becker Glynn is actively litigating in this case and would plainly negatively affect the rights of the only appearing defendant in this matter to date.

Plaintiffs ask the Court not merely to grant a default judgment with respect to the non-appearing defendants, but to issue broad declaratory relief that could foreclose Becker Glynn's rights by resolving the very disputes at the heart of the case. In particular, Plaintiffs ask the Court to declare that (1) YJ Simco owns 100% of the membership interests in Park ST, (2) any purported transfers of those interests away from YJ Simco never occurred or are void ab initio, (3) any such transfers to Y. Simpson should be avoided under Debtor and Creditor Law ("DCL") §§273(a)(1), 273(a)(2), and 274(a), and (4) Y. Simpson should be enjoined from asserting any ownership rights over those interests. Each of these declarations would resolve the disputed ownership question that underlies Plaintiffs' claims against Becker Glynn and would effectively nullify the Mortgage and Guaranty before Becker Glynn's pending motion to dismiss is decided (and, if denied, before Becker Glynn is able to join issue and contest the disputed questions of fact and law).

The declaratory relief Plaintiffs seek would improperly resolve core elements of the claims they assert without affording Becker Glynn the opportunity to litigate them. Plaintiffs' claims

[1] Citations to "Dkt. ____" refer to the numbered filings on the NYSCEF docket for this action.
[2] For simplicity purposes, all undefined and capitalized terms used herein shall have the same meaning ascribed to them in the First Amended Complaint ("FAC").

against Becker Glynn rest entirely on the disputed question of who owned Park ST at the time the Mortgage and Guaranty were executed, and Plaintiffs allege that those instruments are void or voidable because Y. Simpson lacked authority to bind Park ST, because any transfer of Park ST's membership interests to her was invalid, and because the instruments were created without reasonably equivalent value and with fraudulent intent. By asking the Court to declare that YJ Simco owns Park ST, that any purported transfers to Y. Simpson never occurred or are void, and that such transfers must be avoided under the DCL, Plaintiffs seek to have the Court decide the very ownership, authority, insolvency, reasonably equivalent value, and good-faith issues that Becker Glynn is actively contesting. Although Plaintiffs assert that their motion does not seek relief against Becker Glynn, the declaratory findings they request would, as a practical matter, nullify the Mortgage and Guaranty and adjudicate the merits of the claims against the only appearing defendant before its motion to dismiss is decided.

The Court should deny the motion for default and decline to make the requested declaratory findings for two independent reasons, each dispositive on their own. **First**, under New York law, where a plaintiff seeks declaratory relief on default which clearly affects the rights of an appearing party not in default, the relief should not be granted. **Second**, courts do not grant declaratory judgments on the pleadings and default alone. The movant must establish its right to the declaratory findings, and Plaintiffs have not even attempted to do so here. Given that Becker Glynn is actively contesting the legal sufficiency of the complaint and disputes the allegations that undergird Plaintiffs' claims against the non-appearing defendants because they implicate Becker Glynn's own rights, Plaintiffs should not be permitted to circumvent their obligation to establish those facts with respect to Becker Glynn, irrespective of the non-appearance of the other parties.

Accordingly, Becker Glynn submits this limited opposition. It addresses only whether the Court should enter declaratory relief now, when doing so would effectively resolve the claim pending against Becker Glynn. For the reasons set forth below, it should not, and Plaintiffs' motion for default must be denied.

## RELEVANT FACTUAL BACKGROUND

Becker Glynn respectfully refers the Court to its pending motion to dismiss for a fuller statement of the facts. *See* Dkt. 43 (Affirmation in Support), Dkt. 69 (Memorandum of Law in Support).

The facts relevant to Plaintiffs' motion and this opposition concern the single disputed question of whether Y. Simpson was authorized to grant the Mortgage and Guaranty on behalf of Park ST. On March 12, 2026, Park ST granted Becker Glynn two instruments securing non-party J. Simpson's promise to compensate Becker Glynn for representing him in his Chapter 11 personal bankruptcy proceeding. These instruments consisted of a Guaranty of up to $500,000 in fees, and a $250,000 Mortgage on the property owned by Park ST (FAC ¶31).[3] Y. Simpson executed both Instruments on Park ST's behalf as its authorized signatory (*id*., ¶32). The Mortgage and Guaranty were fully disclosed to the bankruptcy court as part of J. Simpson's application to retain Becker Glynn (*id*. ¶¶ 34-35). At the present time, the bankruptcy court has not been asked to approve, and has not approved, any fees or reimbursement of expenses to Becker Glynn for its representation of J. Simpson.

Plaintiffs' claims against Becker Glynn rest on the premise that Y. Simpson did not own Park ST when the Mortgage and Guaranty were executed. Plaintiffs allege that in October 2021, J. Simpson and Y. Simpson executed Contribution Agreements purporting to transfer their

[3] The Mortgage and Guaranty shall be referred to together as the "Instruments."

purported interests in Park ST and other entities to YJ Simco (FAC ¶¶20-21). Plaintiffs assume these agreements were valid and the statements contained therein accurate, and, based on those assumptions, allege that Y. Simpson lacked authority to act on behalf of Park ST in granting the Mortgage and Guaranty, and contend that both Instruments are void ab initio. (*see id*. ¶76).

As the FAC acknowledges, these allegations and claims are disputed. J. Simpson avers that the Contribution Agreements were never implemented and were improperly seized and disclosed (*see id*. ¶36). J. Simpson's bankruptcy schedules identify Y. Simpson as the 100% owner of Park ST (*see id*. ¶29). Y. Simpson has attested under oath to the bankruptcy court that she has been Park ST's sole member since its formation (Dkt. 64).

The Mortgage and Guaranty were also fully disclosed to the bankruptcy court in connection with J. Simpson's retention of Becker Glynn. Dkt. 55, p. 6; Dkt. 55, Attorney Ostrow Decl., p. 5-6; Dkt. 61. Plaintiffs themselves appeared in J. Simpson's bankruptcy proceeding and filed a Statement and Reservation of Rights asserting that the Instruments constituted a voidable transfer under the DCL. Dkt. 60, p. 1. The bankruptcy judge required supplemental declarations concerning Park ST's formation and ownership, reviewed the Contribution Agreements dispute, and held a hearing on the Instruments. Dkt. 62. After receiving sworn declarations from both Y. Simpson and Park ST's counsel (Dkt. 53, Dkt. 64), the bankruptcy court overruled all objections and statements, including Plaintiff AREH's, authorized Becker Glynn's retention, and accepted the Instruments as valid security arrangements. Dkt. 65. Notably, moreover, Plaintiffs did not oppose the Simco Trustee's motion to dismiss YJ Simco's bankruptcy case after the Simco Trustee declined to bring claims to enforce the Contribution Agreements, despite Plaintiffs urging that the Simco Trustee do so. FAC ¶24; Dkt. 47, p. 16-17; Dkt. 49.

Plaintiffs now seek to revive these same issues through state-court default practice.

Whether Y. Simpson owns Park ST is accordingly a contested question at the center of Plaintiffs' claims against Becker Glynn, a question that Becker Glynn is actively litigating. It is the same question that Plaintiffs now ask this Court to resolve on default against the non-appearing co-Defendants.

## RELEVANT PROCEDURAL HISTORY

Plaintiffs commenced this action on June 1, 2026 (Dkt. 1, Dkt. 2). Before any defendant appeared, Plaintiffs filed the First Amended Complaint ("FAC") on June 5, 2026 (Dkt. 10). The FAC asserts claims for breach of contract and unjust enrichment against YJ Simco, Park 1, Park PH, Park ST, Park 4, and WMTR (the "Contract Defendants"). The FAC also asserts claims for declaratory judgment and various violations of the DCL against Y. Simpson and Becker Glynn (*see* FAC ¶¶62-99).

On July 2, 2026, Becker Glynn appeared in the case. Dkt. 25. Becker Glynn obtained Plaintiffs' consent to extend the deadline to respond to the FAC; that deadline was subsequently extended to September 8, 2026. Dkt. 25, Dkt. 27, Dkt. 28.

On September 3, 2026, Plaintiffs moved for default judgment on all claims asserted against the Contract Defendants and Y. Simpson (*see* Dkt. 29, *et seq*.). Plaintiffs' motion acknowledges that Becker Glynn is the only named defendant to have appeared and states the motion "does not seek relief against [Becker Glynn]" (Koevary Aff., ¶1, n.1). Despite this disclaimer, Plaintiffs seek a declaration against Y. Simpson that YJ Simco owns, among other things, all membership interests in Park ST and that any transfer of those interests are void ab initio; alternatively, avoidance of those transfers under DCL §§ 273(a)(1), 273(a)(2), and 274(a); an injunction barring Y. Simpson from asserting ownership of those interests, and attorneys' fees (*see* Koevary Aff., ¶5; Wiener Aff., p. 5). This relief, if granted, would necessarily impair Becker Glynn's rights.

In support of the motion for default, Plaintiffs submit an affirmation from Kevin Wiener, EVP and general counsel of OAK, AREH's acting managing member (Dkt. 30). Wiener alleges, in a conclusory fashion and without citing to any supporting evidence, that Becker Glynn accepted the Mortgage and Guaranty with "actual knowledge" of Plaintiffs' claims, and that Plaintiffs seek to avoid or otherwise "declare a nullity" the Mortgage and Guaranty (*id*. ¶¶10-11).

On September 8, 2026, Becker Glynn moved to dismiss all claims against it pursuant to CPLR §3016(b), CPLR §3211(a)(1), and CPLR §3211(a)(7) (*see* Dkt. 42, *et seq*.). That motion is currently being briefed and is pending before this Court.

By stipulation dated September 23, 2026, Becker Glynn's time to respond to the default motion was extended to September 28, 2026 (*see* Dkt. 72).

## ARGUMENT

## POINT I:

## BECKER GLYNN HAS STANDING TO BE HEARD ON THIS MOTION

Plaintiffs' position is that Becker Glynn may not be heard to contest their requested relief because their motion purportedly does not seek relief against Becker Glynn (Koevary Aff., ¶1, n.1). However, that argument is true in form only, not in substance, because Plaintiffs' motion makes clear that they seek declarations which would deprive Becker Glynn of its rights. Plaintiffs' Third Cause of Action is a claim for declaratory relief asserted against Y. Simpson and Becker Glynn, the so-called Transfer Defendants (FAC ¶¶75-80). The declaration Plaintiffs seek against Y. Simpson, if granted on default, would establish that: (i) YJ Simco owns 100% of Park ST and that any transfer away from YJ Simco to Becker Glynn never occurred or is void, (ii) any transfer from Park ST to Y. Simpson is void under the DCL, and that (iii) Y. Simpson is precluded from asserting ownership rights in Park ST (*see* Dkt. 41, Plaintiffs' proposed default judgment).

This relief, if granted on default, would void the Mortgage and Guaranty. Indeed, Plaintiffs' supporting affirmation confirms that Becker Glynn is the true intended target of the relief they seek. The affirmation asserts that Becker Glynn accepted the Instruments with "actual knowledge" of Plaintiffs' claims, and states that Plaintiffs seek a declaration that the Mortgage and Guaranty are a nullity (Wiener Aff., ¶¶10-11).

Plaintiffs' request for a declaration that YJ Simco owns Park ST is not collateral to the claims against Becker Glynn: it is the very predicate on which every claim against Becker Glynn depends. Granting that declaration now would adjudicate the core merits of Becker Glynn's defenses without affording Becker Glynn the opportunity to litigate them.

"The most critical requirement of standing…is the presence of 'injury in fact – an actual legal stake in the matter being adjudicated.'" *Sec. Pac. Nat. Bank v. Evans*, 31 A.D.3d 278, 279, 820 N.Y.S.2d 2, 3 (1st Dept. 2006), *quoting Society of the Plastics Indus., Inc. v. County of Suffolk,* 77 N.Y.2d 761, 772 (1991). Becker Glynn has a clear legal stake in this aspect of this litigation because if Plaintiffs obtain the relief they seek on default, Becker Glynn's rights in the Instruments would effectively be extinguished. Becker Glynn plainly has standing to oppose the motion for default judgment, and in particular the request for declaratory relief, for these reasons and the reasons set forth below.

## **POINT II**:

## **ENTRY OF ANY DEFAULT MUST BE DEFERRED UNTIL THE CLAIMS AGAINST BECKER GLYNN ARE LITIGATED AND DECIDED**

This Court should not enter default and issue the declaratory relief sought by Plaintiffs because doing so would unmistakably affect the rights of Becker Glynn. Instead, this Court should defer any default judgment proceedings until after the claims against Becker Glynn are fully adjudicated.

For over 150 years, courts have recognized that where defendants are alleged to be jointly implicated in the same claim, a default judgment against one should not issue in a form that could conflict with the adjudication of the claim against those who are defending it. *See Frow v. De La Vega*, 82 U.S. 552, 554 (1872); *see also Chain v. N. E. Freightways, Inc.*, No. 16-cv3371 (JCM), 2020 WL 7481142, at *16 (S.D.N.Y. Dec. 18, 2020) (explaining that the Second Circuit applies *Frow* prospectively, and that the preferred practice is "to postpone decision on a default judgment until the case against the litigating defendants concludes.") (internal quotation and citation omitted).

This same principle is reflected in the CPLR. CPLR §3215(d) provides that where certain defendants have not appeared but another has, the court may direct that proceedings for the entry of default judgment be conducted at the time of or following the disposition of the action against the defendant who has appeared. The purpose of this subsection is to prevent inconsistent judgments where default relief would affect the rights of non-defaulting parties. *See Gannon v. Sadeghian*, 151 A.D.3d 1586, 1588 (4th Dept. 2017); *Merchants Ins. Co. of New Hampshire v. Long Island Pet Cemetery, Inc.*, 206 A.D.2d 827, 828 (4th Dept. 1994); *Madera v. New York City Mission Soc.*, 2025 WL 3619920 (Sup. Ct. N.Y. County Dec. 03, 2025) (deferring damage inquest against defaulting defendants to avoid inconsistent judgments) (Kingo, J.); *Progressive Cas. Ins. Co. v. Castro Hernandez*, 2021 WL 12443237 (N.Y. Sup. Ct. Aug. 18, 2021) (same); *see also JBBNY, LLC v. Dedvukaj*, 171 A.D.3d 898, 902 (2d Dept. 2019) (default declaratory relief cannot be granted where the movant fails to establish entitlement to the declaration). For that reason, courts deny declaratory relief on default where "the declaratory relief requested clearly affects the rights of other parties not alleged to be in default." *Merchants*, 206 A.D.2d at 828.

CPLR §3215(d) is not merely a procedural convenience; it is a safeguard against adjudicating substantive rights of appearing defendants through default practice. *See Madera,* 2025 WL 3619920, at *2 (CPLR §3215(d) "exists to avoid inconsistent judgments, duplicative damage findings, and prejudice to appearing defendants."). Because the requested declaration would extinguish Becker Glynn's rights and resolve the dispositive ownership issue, deferral is the most logical course of action. Ownership of Park ST is the threshold issue. Until that question is adjudicated, the Court cannot determine whether the Mortgage and Guaranty are valid, whether Becker Glynn has any security interests, or whether Plaintiffs have standing to pursue avoidance claims. Plaintiffs' attempt to resolve this threshold issue through default practice is improper and would short-circuit the adversarial process.

The Mortgage and Guaranty were also fully disclosed to, scrutinized by, and accepted by the bankruptcy court in connection with J. Simpson's retention of Becker Glynn. Plaintiffs challenged those Instruments in that forum and were unsuccessful. Plaintiffs now seek to invalidate the same Instruments through state-court default practice, which would constitute an improper collateral attack on matters already presented to and resolved in bankruptcy court. Default practice cannot be used to circumvent the bankruptcy process or to obtain state-court findings that contradict the bankruptcy court's acceptance of the Instruments.

In *Reger v. GMI Devs. Inc.*, the court applied these same principles on nearly parallel facts. There, the plaintiff sought a default declaration that a deed and all subsequent encumbrances were void, and an appearing mortgagee whose lien derived from that chain of title opposed. *See Reger v. GMI Devs. Inc.*, 2025 WL 3440524, 2025 N.Y. Slip Op. 51879(U), at *2-4 (N.Y. Sup. Ct. 2025). While plaintiff had demonstrated a prima facie case of default, the court deferred entry of judgment because the declaration "implicate[d] the appearing defendants' mortgage and ownership claims,"

and because entering the declaration would "effectively decide those issues in advance of trial." *Id*. at *4. The *Reger* court therefore directed that entry of judgment await disposition of the claims against the appearing defendants. *See id*.

Just as the *Reger* court deferred entry of judgment until the claims against the appearing defendants were resolved, so too should this Court refrain from issuing declaratory relief until the claims against Becker Glynn are fully adjudicated. The declarations Plaintiffs seek are the threshold issues in their claims against Becker Glynn and would effectively adjudicate the core merits of Plaintiffs' claims against Becker Glynn, depriving it of its rights by voiding the Mortgage and Guaranty.

The declaratory relief would also resolve the elements of Plaintiffs' DCL claims against Becker Glynn, including insolvency, reasonably equivalent value, actual intent, and good faith. Plaintiffs allege that the Mortgage and Guaranty are voidable because Park ST was insolvent, received no value, and acted with fraudulent intent, and that Becker Glynn lacked good faith. Avoidance under DCL §§273(a)(1), 273(a)(2), and 274(a) requires findings on each of these issues, and granting declaratory relief on default would improperly decide them against Becker Glynn.

Finally, Plaintiffs seek attorneys' fees under DCL §276-a, which requires affirmative findings of actual intent, insolvency, value, and good faith, the same issues Plaintiffs assert against Becker Glynn. Any such findings made on default against Y. Simpson would necessarily prejudice Becker Glynn's defenses and constitute an improper merits determination.

For all these reasons, the Court should exercise its discretion and defer any proceedings for entry of default judgment until after the claims against Becker Glynn are fully adjudicated.

## POINT III:

## PLAINTIFFS HAVE NOT ESTABLISHED A RIGHT TO THE DECLARATORY RELIEF THEY SEEK, WHICH CANNOT BE ISSUED ON DEFAULT AND PLEADINGS ALONE

The declaratory relief Plaintiffs seek should also be denied for the independent reason that it may not be issued on default and the pleadings alone.

A "default judgment in a declaratory judgment action will not be granted on the default and pleadings alone for it is necessary that [the party seeking default] establish a right to a declaration." *JBBNY, LLC*, 171 A.D.3d at 902 (internal quotation omitted); *see also Merchants*, 206 A.D.2d at 828. This is in addition to the movant's general burden to submit proof of the facts constituting the claim sufficient to show a viable cause of action. *See Woodson v. Mendon Leasing Corp.*, 100 N.Y.2d 62, 70-71 (2003). Even where that required showing is made, a grant of declaratory relief remains discretionary, and "discretion must be exercised judicially and with care." *Merchants*, 206 A.D.2d at 828.

Plaintiffs have not made that required showing. Here, the Koevary Aff. addresses only service and procedural history (Koevary Aff). The Wiener Aff. asserts "personal knowledge" (Wiener Aff., ¶1) yet is wholly conclusory and cites no evidentiary proof. Mr. Wiener is an EVP and general counsel of OAK, which took control over AREH's management only in November of 2023, more than two years after the October 2021 Contribution Agreements on which Plaintiffs' ownership theory rests (*see* FAC ¶¶17, 20-21; Wiener Aff. ¶1). The contents of Mr. Wiener's affirmation are essentially a restatement of the FAC (*compare*, Wiener Aff., ¶¶ 6-11, *with* FAC ¶¶1-3, 5-7). As for the dispositive question of ownership, Mr. Wiener does not commit to any version of events. Mr. Wiener swears only that J. Simpson and Y. Simpson acted "to either (i) orchestrate the transfer" of the membership interests to Y. Simpson "or (ii) otherwise claim" that

she owns them (Wiener Aff. ¶9). Mr. Wiener's entire showing on his affirmation is that "[a] dispute exists" and that "[f]or the reasons set forth above and in the [FAC]," YJ Simco owns Park ST and any contrary transfer was "void ab initio as a matter of law" (*id*. ¶¶14-15). The FAC's own allegations that no transfer occurred are themselves made "[u]pon information and belief" (FAC ¶¶37).

Plaintiffs do not submit a single piece of evidence establishing ownership – no corporate records, no schedules, no sworn testimony, no documentary proof of any transfer to YJ Simco, and no proof that J. Simpson ever owned 50% of Park ST that could have been contributed in the first instance. Their motion asks the Court to declare ownership based solely on allegations made "upon information and belief," which is insufficient even on a motion for default, and particularly insufficient for declaratory relief.

Plaintiffs also cannot obtain any declaratory relief premised on the DCL because they have not plausibly alleged that they are creditors of Park ST or YJ Simco. As set forth in Becker Glynn's pending motion to dismiss, Plaintiffs' claimed right to payment rests solely on the AREH Operating Agreement, a contract that neither names nor binds any Contract Defendant and does not create any enforceable obligation running from Park ST or YJ Simco to any Plaintiff. Dkt. 69, Memorandum of Law in Support, p. 6-9. Plaintiffs allege no separate agreement, and their unjust enrichment theory is entirely conclusory. Without a cognizable right to payment, Plaintiffs do not qualify as creditors under DCL §§ 270–276 and cannot obtain DCL-based declaratory relief on default.

Nor can Plaintiffs invoke the rule that a defaulting defendant is deemed to have admitted the complaint's allegations. A defaulting defendant's "admissions" do not replace the proof required for declaratory relief. *See JBBNY, LLC*, 171 A.D.3d at 902. Plaintiffs have simply not

supplied the degree of proof necessary to support the declaratory findings it wishes this Court to make.

Declaratory relief is also unavailable because Plaintiffs have not suffered any present injury or prejudice from the Mortgage or Guaranty. Becker Glynn has not foreclosed on the Mortgage, enforced the Guaranty, or sought approval of any fees in the bankruptcy court. The Instruments are merely security interests that have not resulted in any harm to Plaintiffs. Declaratory relief cannot be granted where the plaintiff has suffered no actual injury and seeks only to adjudicate hypothetical or contingent disputes. *See Touro Coll. v. Novus Univ. Corp.*, 146 A.D.3d 679, 680 (1st Dept. 2017); *see also Ashley Builders Corp. v. Town of Brookhaven*, 39 A.D.3d 442, 443 (2d Dept. 2007). Accordingly, because Plaintiffs have not established a right to the declarations they seek, the request should be denied.

## CONCLUSION

For the foregoing reasons, Defendant BECKER, GLYNN, MUFFLY, CHASSIN & HOSINSKI, LLP respectfully requests that the Court deny Plaintiffs' motion for default judgment in its entirety, or in the alternative defer any proceedings for entry of default judgment until after disposition of the claims against Becker Glynn, together with such other and further relief as this Court deems just and proper.

Dated: September 28, 2026
New York, New York

Respectfully Submitted,

**FURMAN KORNFELD & BRENNAN LLP**

By: /s/ *Benjamin M. Oxenburg*
Rachel Aghassi
Benjamin M. Oxenburg
*Attorneys for Defendant*

Becker, Glynn, Muffly, Chassin & Hosinski, LLP
Wall Street Plaza
88 Pine Street, 32nd Floor
New York, New York 10005
Tel.: (212) 867-4100
Fax: (212) 867-4118
Email: <raghassi@fkblaw.com>
<boxenburg@fkblaw.com>

**CERTIFICATION OF COMPLIANCE WITH 22 N.Y.C.R.R. §202.8-b**

I certify that this Memorandum of Law in Opposition complies with 22 N.Y.C.R.R. §202.8-b. This Memorandum contains, exclusive of the caption, table of contents, table of authorities, and signature block, **3,866** words as calculated by Microsoft Word.

Dated: September 28, 2026
New York, New York

Respectfully Submitted,

**FURMAN KORNFELD & BRENNAN LLP**

By: /s/ *Benjamin M. Oxenburg*
Benjamin M. Oxenburg