**Hearing Date: October 29, 2026 at 11:00a.m.**
**Objection Deadline: October 22, 2026 at 4:00p.m.**

OLSHAN FROME WOLOSKY LLP
1325 Avenue of the Americas
New York, New York 10019
(212) 451-2300
Jonathan T. Koevary
jkoevary@olshanlaw.com

*Counsel for Defendants*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>JEFFREY SOLOMON SIMPSON,<br><br>Debtor. | Chapter 11<br><br>Case No. 26-10359 (LGB) |
| JEFFREY SOLOMON SIMPSON, as Debtor and Debtor in Possession,<br><br>Plaintiff,<br><br>- against -<br><br>ARCH REAL ESTATE HOLDINGS LLC, ARCH ASSET MANAGEMENT LLC, and ARCH PROPERTY MANAGEMENT LLC,<br><br>Defendants. | Adversary No. 26-01097 (LGB) |

**DEFENDANTS' MOTION SEEKING DISSOLUTION OR RECONSIDERATION OF, OR IN THE ALTERNATIVE RELIEF FROM, THE SEPTEMBER 29, 2026 ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER [ADV. DKT. NO. 7]**

Table of Contents

Page

PRELIMINARY STATEMENT ........................................................................................1

FACTS ......................................................................................................................3

A. The State Court Action ..........................................................................3

B. The Adversary Proceeding, Conference, and TRO ...............................3

LEGAL STANDARD ...................................................................................................6

ARGUMENT ..............................................................................................................7

I. The Debtor Made No Showing Supporting a Restraint Beyond YJ Simco and the Watermill Entity ...........................................................................7

II. The TRO Does Not Satisfy FRCP 65 ........................................................8

(i) The TRO Exceeds the Time Limits of FRCP 65(b)(2) and Improperly Sets the Status Quo in the Plaintiff's Favor ...............................8

(ii) The TRO Does Not Satisfy the Requirements of FRCP 65(d)(1)(A)—(C) ..........................................................................10

CONCLUSION ........................................................................................................11

## Table of Authorities

Page

### Cases

*Arch Real Estate Holdings LLC et al. v. YJ Simco LLC et al.*,
Index No. 653216/2026 .......... 3

*Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers*,
415 U.S. 423 (1974) .......... 8, 10

*In re AMR Corp.*,
502 B.R. 23 (Bankr. S.D.N.Y. 2013) .......... 7

*In re Celsius Network LLC*,
2024 WL 4521045 (Bankr. S.D.N.Y. Oct. 17, 2024) .......... 7

*In re Richardson Foods, Inc.*,
667 B.R. 500 (Bankr. S.D.N.Y. 2025) .......... 7

*In re Wolf Fin. Grp., Inc.*,
No. 94-8884A, 1994 WL 913278 (Bankr. S.D.N.Y. Dec. 15, 1994) .......... 7

*Matarese v. LeFevre*,
801 F.2d 98 (2d Cir. 1986) .......... 7

*Pan Am. World Airways v. Flight Eng'rs' Ass'n*,
306 F.2d 840 (2d Cir. 1962) .......... 9

*Queenie, Ltd. v. Nygard Int'l*,
321 F.3d 282 (2d Cir. 2003) .......... 8

*Rosen v. Siegel*,
106 F.3d 28 (2d Cir. 1997) .......... 10

*Sampson v. Murray*,
415 U.S. 61 (1974) .......... 7, 8

*SP Special Opportunities, LLC v. LightSquared, Inc. (In re LightSquared, Inc.)*,
539 B.R. 232 (S.D.N.Y. 2015) .......... 10

*Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*,
956 F.2d 1245 (2d Cir. 1992) .......... 6

### Statutes

11 U.S.C. § 105(a) .......... 8

Page

OTHER AUTHORITIES

Fed. R. Bankr. P. 7054 .......... 1, 6

Fed. R. Bankr. P. 7065 .......... 1, 6

Fed. R. Bankr. P. 9023 .......... 1, 6

Fed. R. Bankr. P. 9024 .......... 1, 7

Fed. R. Civ. P. 54 .......... 1, 6, 7

Fed. R. Civ. P. 59 .......... 1, 6, 7

Fed. R. Civ. P. 60 .......... 1, 7

Fed. R. Civ. P. 65 .......... passim

Local Bankruptcy Rule 9023-1(a) .......... 6

Defendant Arch Real Estate Holdings LLC, for itself and for its defendant affiliates Arch Asset Management LLC and Arch Property Management LLC (collectively, "AREH"), by and through undersigned counsel, hereby submits this motion (the "Motion") pursuant to Federal Rules of Civil Procedure 65 and 54(b), made applicable by Rules 7065 and 7054 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and, in the alternative, Federal Rules of Civil Procedure 59(e) and 60(b), made applicable by Bankruptcy Rules 9023 and 9024, seeking an order substantially in the form of **Exhibit A** hereto providing or the dissolution this Court's September 29, 2026 *Order to Show Cause for Preliminary Injunction and Temporary Restraining Order* [Adv. Dkt. No. 7] (the "TRO"), and alternatively, reconsideration of such TRO. In support of the Motion, AREH respectfully states as follows:

## PRELIMINARY STATEMENT[1]

"On 2 days' notice to the party who obtained the order without notice—or on shorter notice set by the court—the adverse party may appear and move to dissolve or modify the order. ***The court must then hear and decide the motion as promptly as justice requires***." Fed.R.Civ.P. 65(b)(4) (emphasis added).

No hearing on the TRO was ever scheduled. One business day after this proceeding and accompanying request for emergency relief was filed, on September 28, 2026, this Court conducted a status conference concerning the Debtor's request for an order temporarily enjoining AREH from pursuing a pending state court action against eight non-debtor parties. At that conference, the Court repeatedly opined that Debtor had not made a connection to his estate except perhaps as to two parties: YJ Simco LLC ("YJ Simco") and 266 WMTR LLC (the "Watermill

[1] Capitalized terms not otherwise defined in this introduction shall have the meanings ascribed to them in the body of the Motion.

Entity"). The TRO, however, restrains AREH from prosecuting the action in its entirety against all entities.

Justice requires that the TRO be promptly dissolved for that reason and because it also fails to comply with several requirements of Rule 65 of the Federal Rules of Civil Procedure ("FRCP"). Under FRCP 65(b)(2), a temporary restraining order cannot exceed 28 days, but the TRO by its terms is indefinite in scope—it remains in effect until the preliminary injunction motion is determined—thus lacking in compliance and improperly shifting the status quo in favor of the Debtor, despite the relief being granted in its favor was at a conference held on an emergency basis on one business day's notice. This inversion of the status quo unjustly favors the Debtor as movant, who despite having all of the burdens to obtain the extraordinary relief he seeks, is now incentivized to press for a prolonged and protracted evidentiary hearing on his preliminary injunction motion. The time limitations of FRCP 65, however, anticipates that it is the ***movant*** who will need to act quickly to prove his or her case, lest the TRO expire. The shift in incentives on account of the indefinite relief has already been manifested through his counsel's pronouncement at an October 8, 2026 discovery conference that he intended to call a dozen witnesses and anticipates a multi-day hearing. FRCP 65's 28 day maximum requirement simply does not allow for this incentive shift.

Additionally, as set forth below, the TRO does not comply with the specificity requirements concerning findings of the Court and identifying precisely what is restrained.

For these reasons, the TRO should be dissolved.

## FACTS

### A. The State Court Action

1. Jeffrey Solomon Simpson (the "Debtor") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on February 19, 2026. He is the debtor and debtor in possession in Case No. 26-10359 (LGB) pending before this Court.

2. On June 1, 2026, AREH commenced *Arch Real Estate Holdings LLC et al. v. YJ Simco LLC et al.*, Index No. 653216/2026, in the Supreme Court of the State of New York, County of New York (the "State Court Action"). AREH filed a first amended complaint on June 5, 2026. The Debtor is not a party to the State Court Action.

3. The State Court Action names YJ Simco and five special purpose vehicles consisting of the Watermill Entity, 1055 Park Ave 1 LLC, 1055 Park Ave PH LLC, 1055 Park Ave ST LLC , and 1055 Park Ave 4 LLC as "Contract Defendants," against which AREH seeks money damages for breach of contract, or in the alternative, unjust enrichment. The State Court Action also seeks to avoid transfers, by way of declaratory judgment or alternatively, the New York Debtor Creditor law, against "Transfer Defendants" Yael Simpson and Becker, Glynn, Muffly, Chassin & Hosinski LLP ("Becker Glynn"), along with unnamed "Jane Doe" defendants. The State Court Action also seeks the award of costs against the Transfer Defendants.

### B. The Adversary Proceeding, Conference, and TRO

4. On Friday, September 25, 2026, the Debtor commenced this adversary proceeding seeking a permanent injunction enjoining the State Court Action, together with a temporary restraining order and a preliminary injunction motion (the "PI Motion") that also seeks to enjoin the State Court Action. On Monday, September 28, 2026, the Court conducted an emergency conference concerning the emergency request for a temporary restraining order (the "September

28 Conference"), without having scheduled a hearing. *See* September 28, 2026 Conference Transcript, attached as **Exhibit B** hereto (the "9/28 Conf. Trans.") at 5:21-6:3; 6:12-22.

5. At the September 28 Conference, the Court found that the Debtor made a showing as to a potential nexus between YJ Simco and the Watermill Entity that might give rise to irreparable harm as to those two entities, and expressed skepticism as to every other defendant in the State Court Action (the "Remaining Defendants"). As to the Remaining Defendants, the Court stated: "the Debtor's even testified he didn't have an interest in some of them and his wife owned them and other things. So I'm not really sure how that gets to the Debtor myself, even indirectly." 9/28 Conf. Tr. at 15:9-12. The Court explained: "I can see that there might be an argument with respect to the two entities that are owned, according to Mr. Simpson's schedules, 50 percent by him . . . . There's at least some tie to it, but I have a very hard time seeing the ties to the rest. I really am not seeing it because, again, as I said to you, there's different legal entities. There's different persons." 9/28 Conf. Tr. 18:16-25. It added that "where it involves parties that aren't in front of me and it doesn't involve property of Mr. Simpson, whether directly or indirectly, I'm not seeing that argument." 9/28 Conf. Tr. 22:2-4. The Court stated that it was "not sure I'm enjoining anything as to anybody else because I'm not sure I have any basis for that. But I have a concern about those entities." 9/28 Conf. Tr. 31:13-15. The Court further noted: "I think you understand my skepticism about all the other entities here myself and that I think there's other remedies that exist under the law." 9/28 Conf. Tr. 36:18-20.

6. During the September 28 Conference, taking into account (i) the Court's indication that it saw a basis to issue a temporary restraining order as to continued prosecution of against YJ Simco and the Watermill Entity and no others and (ii) the Court's availability during the month of October, counsel for AREH consented on the record to entry of a temporary restraining order

"staying as to specifically those two entities which are YJ Simco and the Watermill entity and no other stay pending a full-blown hearing." 9/28 Conf. Tr. 31:25-32:9. The Court noted that it lacked evidence from the other parties and a complete evidentiary record, 9/28 Conf. Tr. 34:16-35:17, but stated that it would enter an order staying the proceedings "against all the parties until that date," while noting its "skepticism about all the other entities here." 9/28 Conf. Tr. 36:11-20.

7. On September 29, 2026, the Court entered the TRO, which directs AREH to show cause at a hearing on October 29, 2026, at 11:00 a.m., why a preliminary injunction should not issue, and, "pending the hearing and determination of the [PI] Motion," restrains AREH "from continuing to prosecute the State Court Action." TRO at 2.

8. The record of the September 28 Conference does not support, and in fact contradicts, the grant of a temporary restraining order as to AREH's claims against each of the Remaining Defendants.

9. Additionally, the TRO does not comply with several requirements of FRCP 65. The TRO indefinitely retrains AREH "pending determination of the [PI] Motion," which is an indefinite period and not the maximum 28 days allowable by FRCP 65. The TRO further does not comply with any of the requirements of FRCP 65(d)(1) as it does not (A) state the reasons why it issued; (B) state its terms specifically; or (C) describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required.

10. For all of these reasons, the TRO should be lifted no later than October 29, 2026, the date of the scheduled evidentiary hearing, and not be allowed to continue pending the determination of the preliminary injunction motion should that determination not occur on such date.

## LEGAL STANDARD

11. The TRO is an interlocutory order that operates only "pending the hearing and determination of the [PI] Motion." TRO at 2. The Court may modify it under any of the following overlapping rules.

12. First, FRCP 65(b)(4), made applicable by Bankruptcy Rule 7065, permits the party bound by a temporary restraining order to "appear and move to dissolve or modify the order," and requires the court to "hear and decide the motion as promptly as justice requires." Fed. R. Civ. P. 65(b)(4). Although the rule speaks to orders obtained without notice, it applies with at least equal force where, as here, the TRO was sought on an expedited basis, opposed only by letter, with a status conference and no hearing ever having been scheduled, and entered on a record the Court described as incomplete. 9/28 Conf. Tr. 34:16-35:17. AREH respectfully requests that the Court decide this Motion on October 29, 2026.

13. Second, FRCP 54(b), made applicable by Bankruptcy Rule 7054, provides that any order adjudicating fewer than all the claims "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). The TRO adjudicates nothing and is therefore revisable at any time. Reconsideration of an interlocutory order is warranted where there is "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992).

14. Third, and in the alternative, FRCP 59(e), made applicable by Bankruptcy Rule 9023, permits a motion to alter or amend a judgment. Although FRCP 59(e) arguably does not reach a non-final order, Local Bankruptcy Rule 9023-1(a) expressly anticipates motions for reargument of a court order determining a motion, to be served within fourteen days of entry and to identify the matters or controlling decisions the movant believes the Court has not considered.

This Motion, served by October 13, 2026, is timely. Moreover, to the extent the TRO, which will remain in effect beyond the period FRCP 65(b)(2) permits, "must be treated as a preliminary injunction", and is therefore a judgment under FRCP 54(a). *See Sampson v. Murray*, 415 U.S. 61, 86–88 (1974). Under FRCP 59(e), courts consider "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *In re Richardson Foods, Inc.*, 667 B.R. 500, 512 (Bankr. S.D.N.Y. 2025) (citations omitted).

15. Fourth, and also in the alternative, FRCP 60(b), made applicable by Bankruptcy Rule 9024, permits relief from an order for "(1) mistake, inadvertence, surprise, or excusable neglect" or "(6) any other reason that justifies relief." "All orders of the bankruptcy court are subject to [FRCP] 60." *In re Celsius Network LLC*, 2024 WL 4521045, at *2 (Bankr. S.D.N.Y. Oct. 17, 2024). Courts have broad discretion to grant relief under FRCP 60(b)(6) when appropriate to accomplish justice. *Id.* (quoting *Matarese v. LeFevre*, 801 F.2d 98, 106 (2d Cir. 1986)).

16. Under each framework, relief is warranted to correct clear error and prevent manifest injustice: as shown below, the TRO's scope exceeds the record, and its duration and form do not comply with FRCP 65.

## ARGUMENT

### I. The Debtor Made No Showing Supporting a Restraint Beyond YJ Simco and the Watermill Entity

17. Emergency injunctive relief is an "extraordinary and drastic remedy" available only upon a "clear showing" that the movant has "carrie[d] the burden of persuasion." *In re AMR Corp.*, 502 B.R. 23, 32 (Bankr. S.D.N.Y. 2013). A "[m]ovant must establish a clear and unequivocal right" to emergency injunctive relief. *In re Wolf Fin. Grp., Inc.*, No. 94-8884A, 1994 WL 913278, at *3 (Bankr. S.D.N.Y. Dec. 15, 1994). "[T]he burden is on the party seeking injunctive relief to establish with persuasive evidence that the extraordinary remedy is warranted . . . . It is the burden

of the party seeking a preliminary injunction to show that it is entitled to one, not the burden of the other party to show that the movant is not entitled." Bankr. Evid. Manual § 301:47 (2025 ed.).

18. An injunction under section 105(a) of the Bankruptcy Code reaching non-debtor litigation requires an immediate adverse economic consequence to the estate or an identity of interests so substantial that the Debtor is the real party in interest. *See Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282, 287-88 (2d Cir. 2003). The lack of findings concerning the Remaining Defendants are addressed in the Facts section, *supra*, and are incorporated by reference.

19. Here, the Court found again and again that the Debtor had made no such showing as to the Remaining Defendants. For that reason, the TRO should be lifted to allow AREH to pursue its claims as to the Remaining Defendants.

## II. The TRO Does Not Satisfy FRCP 65

### (i) The TRO Exceeds the Time Limits of FRCP 65(b)(2) and Improperly Sets the Status Quo in the Plaintiff's Favor

20. FRCP 65(b)(2) provides that a temporary restraining order "expires at the time after entry—not to exceed 14 days—that the court sets, unless before that time the court, for good cause, extends it for a like period or the adverse party consents to a longer extension," and that "[t]he reasons for an extension must be entered in the record." Fed. R. Civ. P. 65(b)(2). Absent consent, a temporary restraining order therefore may last no more than fourteen days plus one fourteen-day extension.

21. A temporary restraining order continued beyond the period FRCP 65(b) permits "must be treated as a preliminary injunction, and must conform to the standards applicable to preliminary injunctions." *Sampson*, 415 U.S. at 86. Notice and a hearing do not extend it; the rule "contemplates that notice and hearing shall result in an appropriate adjudication, *i.e.*, the issuance or denial of a preliminary injunction, not in extension of the temporary stay." *Granny Goose*

*Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 443-444 (1974) (*quoting Pan Am. World Airways v. Flight Eng'rs' Ass'n*, 306 F.2d 840, 842 (2d Cir. 1962)).

22. Here the TRO is essentially a preliminary injunction indefinite in scope. While the 30 days from its entry to evidentiary hearing accommodates the Court's and parties' schedules, the TRO does not expire by its terms on October 29, 2026. Rather, it expires "pending the hearing and determination of the [Preliminary Injunction] Motion." TRO at 2. That date is uncertain. Among other things, it does not allow for a possibility of an adjournment for unseen circumstances; it does not allow for the possibility that an evidentiary hearing might exceed one day; and it does not allow for anytime that the Court might take post-hearing to make its ruling.

23. Moreover, the burden to continue emergency relief is clearly meant to be on the Debtor as movant. FRCP 65 inherently prohibits incentivizing the status quo created in a movant's favor, by creating an outer limit of 28 days. Under this incentive structure set by the Federal Rules, it is the movant who must be concerned about concluding the preliminary injunction in a prompt fashion. The movant must promptly be put to his or her proof in a tight time frame in order to preserve the extraordinary relief as a restraint. But the TRO's indefinite nature has inverted the incentive structure and improperly shifted the burden upon AREH to press forward to move quickly, while the Debtor is now incentive to stall and to expand the scope of the evidentiary hearing.

24. And this incentive manifested itself during an October 8, 2026 discovery conference on this matter, where counsel for the Debtor asserted:

> I've discussed with the debtor having a dozen
> witnesses, and I think that the –– a dozen witnesses, depending
> upon the issues at stake, is legitimate.
> ***
> So I think that, depending upon what we're going to be
> doing at this hearing and how many days we're going to be

> having of testimony —— because I hardly think that —— even if there's a limitation of the number of witnesses, it strikes me that even the debtor's testimony alone and the testimony of one or more of the Wieners would probably take more than a day.

October 8 Conference Transcript at 9:3-5; 17-22, attached as **Exhibit C** hereto. These requests demonstrate how the Debtor as movant has, on account of the improper indefinite end date on the TRO, become completely incentivized to drag out and prolong determination of the PI Motion as much as possible, where FRCP 65 squarely contemplates that the burden for ensuring a prompt hearing falls on a movant.

25. The TRO is thus functionally a preliminary injunction in that it is indefinite in scope and does not comply with FRCP 65.

**(ii) The TRO Does Not Satisfy the Requirements of FRCP 65(d)(1)(A)—(C)**

26. FRCP 65(d)(1) requires that "[e]very order granting an injunction and every restraining order must: (A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1). The TRO does none of these things.

27. The TRO recites only "good cause and the reasons stated on the record at the September 28 Conference." TRO at 2. But appellate courts consistently require specificity in findings made and actions deterred" to be found in the order itself. *See Rosen v. Siegel*, 106 F.3d 28 (2d Cir. 1997); *SP Special Opportunities, LLC v. LightSquared, Inc. (In re LightSquared, Inc.)*, 539 B.R. 232 (S.D.N.Y. 2015).

28. Because a restraining order is enforceable through contempt, the parties bound are entitled to know from its face what it prohibits. *See Granny Goose*, 415 U.S. at 444 ("one basic principle built into FRCP 65 is that those against whom an injunction is issued should receive fair and precisely drawn notice of what the injunction actually prohibits."). The TRO lacks sufficient

clarity. It restrains AREH from prosecuting the State Court Action, but it does not explain what the state court can do or if other parties are restrained from acting. While it seems clear to AREH that the Court's intent was to enjoin the action in its entirety, a state court judge or clerk may come to a different interpretation, for example, one that allows for Becker Glynn to act but not AREH.

## CONCLUSION

WHEREFORE, for the reasons set forth herein, AREH seeks an order dissolving the restraint set forth in that order no later than October 29, 2026.

Dated: New York, New York
October 13, 2026

OLSHAN FROME WOLOSKY LLP

By: /s/ Jonathan T. Koevary

Jonathan T. Koevary
1325 Avenue of the Americas
New York, New York 10019
Tel: (212) 451-2300
Email: jkoevary@olshanlaw.com

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on October 13, 2026, a true and correct copy of the foregoing document was served electronically by the Court's CM/ECF system on all parties entitled to such notice.

/s/ Jonathan T. Koevary
Jonathan T. Koevary



13414751-1